# UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
### SPRINGFIELD DIVISION

| | | |
|---|---|---|
| **STARLA SMITH, as administrator of the estate of DYLAN SCHLIEPER-CLARK,** | ) ) ) | |
| **Plaintiff,** | ) ) | |
| **vs.** | ) ) | **No. 23-cv-3137** |
| **COUNTY OF SANGAMON, et. al.,** | ) ) | **DEFENDANTS DEMAND TRIAL BY JURY ON ALL COUNTS** |
| **Defendants.** | ) | |

## DEFENDANTS' ANSWER TO COMPLAINT AND AFFIRMATIVE DEFENSES

NOW COME Defendants, Jacob Wayda and Clifford Buscher, by and through their attorneys, Steven C. Rahn and Nicholas Correll, Assistant Corporation Counsels for the City of Springfield, and for their Answer and Affirmative Defenses to the First Amended Complaint, state as follows:

### Preliminary Statement

1.      Dylan Schlieper-Clark (hereinafter, "Dylan") was taken into Sangamon County Police custody on April 13, 2022, and taken to the Sangamon County Jail for processing and holding as a pre-trial detainee.

**ANSWER:**      Defendants DENY Dylan was arrested by Sangamon County Police; Defendants

ADMIT Dylan was arrested by Springfield Police, and ADMIT the remaining

allegations in Paragraph 1 of the Complaint.

2.      Dylan reported and/or showed signs of severe headaches, neck pain, and other serious ailments to the arresting officers, Jacob Wayda and Clifford Buscher, and each of the other Defendants described herein.

**ANSWER:**      Defendants DENY the allegations in Paragraph 2 of the Complaint.

3.     When arresting officers Jacob Wayda and Clifford Buscher arrested Dylan, he was moaning and in poor physical condition; within one hour of his arrest, Dylan was complaining of headaches to these arresting officers.

**ANSWER:**   Defendants DENY the allegations in Paragraph 3 of the Complaint.

4.     Upon information and belief, Sergeant Earl Grigsby was then involved in the provision of medical care to Dylan, and the failure to properly treat Dylan for his serious medical condition of methicillin-resistant staphylococcus aureus meningoencephalitis (hereinafter referred to as "MRSA/meningitis") early in the intake process was a factor in contributing to Dylan's death. Sergeant Grigsby's role will be better ascertained through the discovery process as discovery progresses in this case.

**ANSWER:**   Defendants lack knowledge sufficient to either admit or deny the allegations in

Paragraph 4 of the Complaint.

5.     On April 14, 2022, Dylan was placed in a medical unit cell while awaiting transfer to another cell. While being held in the medical cell, Dylan's already serious medical condition worsened, and he became severely ill.

**ANSWER:**   Defendants lack knowledge sufficient to either admit or deny the allegations in

Paragraph 5 of the Complaint.

6.     According to Sangamon County policy, Dylan was housed alone while a committee decided where to place him because he identified as transgender.

**ANSWER:**   Defendants lack knowledge sufficient to either admit or deny the allegations in

Paragraph 6 of the Complaint.

7.     Dylan began losing motor control of his body and fell into the cell's walls multiple times. Dylan also began to struggle to get off the floor, visibly disturbing the appearance of the room. Dylan also began removing clothing in an apparent attempt to cool off from an increasing fever, and would start to become physically rigid while foaming at the mouth.

**ANSWER:**   Defendants lack knowledge sufficient to either admit or deny the allegations in

Paragraph 7 of the Complaint.

8.     During the time Dylan was on the floor of his medical cell in clear need of medical assistance for hours, he was being observed the entire time by Correctional Officer Christina Wheeler who was completing rounds.

**ANSWER:**     Defendants lack knowledge sufficient to either admit or deny the allegations in

Paragraph 8 of the Complaint.

9.     Officer Wheeler would pass by and observe Dylan on the ground, naked, writhing in pain several times and took no action whatsoever including but not limited to alerting medical personnel or her supervisor, opening the cell to investigate, or so much as verbally asking Dylan if he was okay.

**ANSWER:**     Defendants lack knowledge sufficient to either admit or deny the allegations in

Paragraph 9 of the Complaint.

10.     During the time Dylan was on the floor in clear need of medical assistance, he was being observed by Nurse Bradley and/or Nurse McCarty, who were mere yards away from Dylan's cell.

**ANSWER:**     Defendants lack knowledge sufficient to either admit or deny the allegations in

Paragraph 10 of the Complaint.

11.     After hours with no assistance, Officer Tim Howie (referred to herein as "Officer Howie") would eventually  witness  Dylan  on the ground  and immediately  call for medical assistance after seeing him naked on the ground, flailing and foaming at the mouth.

**ANSWER:**     Defendants lack knowledge sufficient to either admit or deny the allegations in

Paragraph 11 of the Complaint.

12.     Dylan was transported to Memorial Medical Center in Springfield on the evening of April 14, 2022.

**ANSWER:**     Defendants lack knowledge sufficient to either admit or deny the allegations in

Paragraph 12 of the Complaint.

13.    As a result of the delay, inaction, and deliberate indifference to Dylan's medical needs, Dylan died from MRSA/meningitis on April 17, 2022.

**ANSWER:**    Defendants lack knowledge sufficient to either admit or deny the allegations in

Paragraph 13 of the Complaint.

## Jurisdiction and Venue

14.    Plaintiff brings this civil rights lawsuit pursuant to the Constitution of the United States; the Civil Rights Act, 42 U.S.C. § 1983.

**ANSWER:**    Defendants ADMIT the allegations of Paragraph 14 of the Complaint.

15.    The Court has original jurisdiction pursuant to 28 U.S.C. § 1331, as this action arises under the Constitution and laws of the United States. The Court also has supplemental jurisdiction of Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a), as the claims are related to the claims arising under federal law so that they form part of the same case or controversy under Article III of the United States Constitution.

**ANSWER:**    Defendants ADMIT jurisdiction is proper.

16.    The violations of civil rights and other misconduct alleged herein occurred in Sangamon County, Illinois. Accordingly, this action properly lies in the United States District Court for the Central District of Illinois, Springfield Division, pursuant to 28 U.S.C. § 1391(b).

**ANSWER:**    Defendants ADMIT venue is proper, but DENY the remaining allegations of

Paragraph 16 of the Complaint.

## Parties

17.    At all relevant times, Dylan was a United States citizen and lived in Springfield, Sangamon County, Illinois. At the time of his death, Dylan was a pretrial detainee confined in the Sangamon County Jail. Dylan was 23 years old, never married, had no children, and is survived by his parents, Starla Smith and David Clark, and sisters, Hailey Piercy, Heaven Piercy, Samantha Williams, and Stephanie Williams.

**ANSWER:**    Defendants lack knowledge sufficient to either admit or deny the allegations of

Paragraph 17 of the Complaint.

18.     Starla Smith is the mother of the decedent, Dylan Schlieper-Clark, and was appointed Administrator of the of the Estate of Dylan Schlieper-Clark by the Circuit Court of the Seventh Judicial Circuit in Sangamon County Case No. 2023-PR-56. Ms. Smith brings this action in her capacity as Administrator of the Estate of Dylan Schlieper-Clark and for the benefit of Dylan's next of kin.

**ANSWER:**     Defendants lack knowledge sufficient to either admit or deny the allegations of

Paragraph 18 of the Complaint.

19.     At all relevant times, defendant Jack Campbell (hereinafter, "Sheriff Campbell") was the duly elected Sheriff of Sangamon County and the warden and chief administrator of the Sangamon County Jail. Sheriff Campbell was the final policy maker for Defendant Sangamon County with respect to the care and custody of inmates in the Sangamon County Jail. At all relevant times, Sheriff Campbell acted under color of law. Sheriff Campbell is sued in his individual and official capacity.

**ANSWER:**     Defendants lack knowledge sufficient to either admit or deny the allegations of

Paragraph 19 of the Complaint.

20.     At all relevant times, defendant Anthony Mayfield (hereinafter, "Chief Mayfield"), was entrusted with the responsibilities as second in command of the entire Sheriff's Office of Sangamon County, and therefore in charge of the day-to-day operations of the policy making for Defendant Sangamon County with respect to the care and custody of inmates in the Sangamon County Jail. At all relevant times, Chief Mayfield acted under color of law. Chief Mayfield is sued in his individual and official capacity.

**ANSWER:**     Defendants lack knowledge sufficient to either admit or deny the allegations of

Paragraph 20 of the Complaint.

21.     Defendant Jail Superintendent Larry Beck (hereinafter, "Jail Superintendent Beck") was the person employed by Sangamon County and/or Sheriff Campbell as the Jail Superintendent during Dylan's incarceration. Jail Superintendent Beck is sued in his individual and official capacity.

**ANSWER:**     Defendants lack knowledge sufficient to either admit or deny the allegations of

Paragraph 21 of the Complaint.

22.     Defendant Assistant Jail Superintendent William Smith (hereinafter, "Assistant Jail Superintendent Smith") is believed to have been the person employed by Sangamon County and/or

Sheriff Campbell as the Assistant Jail Superintendent during Dylan's incarceration. Assistant Jail Superintendent Smith is sued in his individual and official capacity.

**ANSWER:**   Defendants lack knowledge sufficient to either admit or deny the allegations of

Paragraph 22 of the Complaint.

23.   Defendant Christina Wheeler (referred to herein as "Officer Wheeler") was employed by Sangamon County and/or Sheriff Campbell as a Corrections Officer working in the Sangamon County Jail during Dylan's incarceration, including on the night he died. Officer Wheeler is sued in her individual capacity.

**ANSWER:**   Defendants lack knowledge sufficient to either admit or deny the allegations of

Paragraph 23 of the Complaint.

24.   Defendant Corey Hillen (referred to herein as "Officer Hillen") was employed by Sangamon County and/or Sheriff Campbell as a Corrections Officer working in the Sangamon County Jail during Dylan's incarceration, including on the night he died. Officer Hillen is sued in his individual capacity.

**ANSWER:**   Defendants lack knowledge sufficient to either admit or deny the allegations of

Paragraph 24 of the Complaint.

25.   Defendant Thomas Files (referred to herein as "Officer Files") was employed by Sangamon County and/or Sheriff Campbell as a Corrections Officer working in the Sangamon County Jail during Dylan's incarceration, including on the night he died. Officer Files is sued in his individual capacity.

**ANSWER:**   Defendants lack knowledge sufficient to either admit or deny the allegations of

Paragraph 25 of the Complaint.

26.   Defendant Tony Stoutamyer (referred to herein as "Sergeant Stoutamyer") was employed by Sangamon County and/or Sheriff Campbell as a Sergeant working in the Sangamon County Jail during Dylan's incarceration, including on the night he died. Sergeant Stoutamyer is sued in his individual capacity.

**ANSWER:**   Defendants lack knowledge sufficient to either admit or deny the allegations of

Paragraph 26 of the Complaint.

27.    Defendant Jennifer Ealey (referred to herein as "Officer Ealey") was employed by Sangamon County and/or Sheriff Campbell as a Corrections Officer working in the Sangamon County Jail during Dylan's incarceration, including on the night he died. Officer Ealey is sued in her individual capacity.

**ANSWER:**    Defendants lack knowledge sufficient to either admit or deny the allegations of

Paragraph 27 of the Complaint.


28.    Defendant Jarred Kirby (referred to herein as "Officer Kirby") was employed by Sangamon County and/or Sheriff Campbell as a Corrections Officer working in the Sangamon County Jail during Dylan's incarceration, including on the night he died. Officer Kirby is sued in his individual capacity.

**ANSWER:**    Defendants lack knowledge sufficient to either admit or deny the allegations of

Paragraph 28 of the Complaint.


29.    Defendant Vivian Brown (referred to herein as "Sergeant Brown") was employed by Sangamon County and/or Sheriff Campbell as a Sergeant working in the Sangamon County Jail during Dylan's incarceration, including on the night he died. Sergeant Brown is sued in her individual capacity.

**ANSWER:**    Defendants lack knowledge sufficient to either admit or deny the allegations of

Paragraph 29 of the Complaint.


30.    Defendant Britney Hicks (referred to herein as "P.O. Hicks") was employed by Sangamon County and/or Sheriff Campbell as a Probation Officer working in the Sangamon County Jail during Dylan's incarceration, including on the night he died. P.O. Hicks is sued in her individual capacity.

**ANSWER:**    Defendants lack knowledge sufficient to either admit or deny the allegations of

Paragraph 30 of the Complaint.


31.    Defendant Todd Krueger (referred to herein as "Sergeant Krueger") was employed by Sangamon County and/or Sheriff Campbell as a Sergeant working in the Sangamon County Jail during Dylan's incarceration, including on the night he died. Sergeant Krueger is sued in his individual capacity.

**ANSWER:**    Defendants lack knowledge sufficient to either admit or deny the allegations of

Paragraph 31 of the Complaint.

32.     Defendant Chris Unthank (referred to herein as "Sergeant Unthank") was employed by Sangamon County and/or Sheriff Campbell as a Sergeant working in the Sangamon County Jail during Dylan's incarceration, including on the night he died. Sergeant Unthank is sued in his individual capacity.

**ANSWER:**     Defendants lack knowledge sufficient to either admit or deny the allegations of

Paragraph 32 of the Complaint.


33.     Defendant Colleen Kerouac (referred to herein as "Officer Kerouac") was employed by Sangamon County and/or Sheriff Campbell as a Corrections Officer working in the Sangamon County Jail during Dylan's incarceration, including on the night he died. Officer Kerouac is sued in her individual capacity.

**ANSWER:**     Defendants lack knowledge sufficient to either admit or deny the allegations of

Paragraph 33 of the Complaint.


34.     Defendant Jack Miller (referred to herein as "Officer Miller") was employed by Sangamon County and/or Sheriff Campbell as a Corrections Officer working in the Sangamon County Jail during Dylan's incarceration, including on the night he died. Officer Miller is sued in her individual capacity.

**ANSWER:**     Defendants lack knowledge sufficient to either admit or deny the allegations of

Paragraph 34 of the Complaint.


35.     Defendant Tracy Bergae (referred to herein as "Sergeant Bergae") was employed by Sangamon County and/or Sheriff Campbell as a Sergeant working in the Sangamon County Jail during Dylan's incarceration, including on the night he died. Sergeant Bergae is sued in her individual capacity.

**ANSWER:**     Defendants lack knowledge sufficient to either admit or deny the allegations of

Paragraph 35 of the Complaint.


36.     Defendant Brad Meyer (referred to herein as "Officer Meyer") was employed by Sangamon County and/or Sheriff Campbell as a Corrections Officer working in the Sangamon County Jail during Dylan's incarceration, including on the night he died. Officer Meyer is sued in his individual capacity.

**ANSWER:**     Defendants lack knowledge sufficient to either admit or deny the allegations of

Paragraph 36 of the Complaint.

37.     Defendant Dave Fisher (referred to herein as "Officer Fisher") was employed by Sangamon County and/or Sheriff Campbell as a Corrections Officer working in the Sangamon County Jail during Dylan's incarceration, including on the night he died. Officer Fisher is sued in his individual capacity.

**ANSWER:**     Defendants lack knowledge sufficient to either admit or deny the allegations of

Paragraph 37 of the Complaint.

38.     Defendant Tom Ansell (referred to herein as "Officer Ansell") was employed by Sangamon County and/or Sheriff Campbell as a Corrections Officer working in the Sangamon County Jail during Dylan's incarceration, including on the night he died. Officer Ansell is sued in his individual capacity.

**ANSWER:**     Defendants lack knowledge sufficient to either admit or deny the allegations of

Paragraph 38 of the Complaint.

39.     Defendant Tammy Powell (referred to herein as "Sergeant Powell") was employed by Sangamon County and/or Sheriff Campbell as a Sergeant working in the Sangamon County Jail during Dylan's incarceration, including on the night he died. Sergeant Powell is sued in her individual capacity.

**ANSWER:**     Defendants lack knowledge sufficient to either admit or deny the allegations of

Paragraph 39 of the Complaint.

40.     Defendant Sangamon County is a governmental entity in the State of Illinois which funds and operates the Sangamon County Jail and, while Sheriff Campbell may be the actual employer of the individual jailers named herein, Sangamon County is a necessary party and is ultimately responsible for paying a judgment or settlement on behalf of the Sheriff or individual jailers and is joined in this action pursuant to *Carver v. Sheriff of LaSalle County*, 324 F.3d 947 (7th Cir. 2003).

**ANSWER:**     Defendants lack knowledge sufficient to either admit or deny the allegations of

Paragraph 40 of the Complaint.

41.     Defendant Jacob Wayda (referred to herein as "Officer Wayda") was employed by Sangamon County and/or Sheriff Campbell as an Officer who arrested Dylan. Officer Wayda is sued in his individual capacity.

**ANSWER:**     Defendants DENY Officer Wayda was employed by Sangamon County and/or

Sheriff Campbell, but ADMIT he was present at the arrest of Dylan.


42.     Defendant Clifford Buscher (referred to herein as "Officer Buscher") was employed by Sangamon County and/or Sheriff Campbell as an Officer who arrested Dylan. Officer Buscher is sued in his individual capacity.

**ANSWER:**     Defendants DENY Officer Buscher was employed by Sangamon County and/or

Sheriff Campbell, but ADMIT he was present at the arrest of Dylan.


43.     Defendant Earl Grigsby (referred to herein as "Sergeant Grigsby") was employed by Sangamon County and/or Sheriff Campbell as a Sergeant working in the Sangamon County Jail during Dylan's incarceration, including on the night he died. Sergeant Grigsby is sued in his individual capacity.

**ANSWER:**     Defendants lack knowledge sufficient to either admit or deny the allegations of

Paragraph 43 of the Complaint.


44.     At all relevant times, Defendant Advanced Correctional Healthcare (referred to herein as "ACH") was a corporation located in Franklin, Tennessee, in the business of providing healthcare services to incarcerated inmates. At all relevant times, ACH was supposed to provide 24-hour on-site healthcare, including nursing, to inmates in the Sangamon County Jail pursuant to a contract with Sangamon County and/or Sheriff Campbell. At all relevant times, ACH, by and through its employees and agents, was acting under color of law, and its employees and agents were acting in the course and scope of their employment or agency with ACH and/or Sangamon County and/or Sheriff Campbell.

**ANSWER:**     Defendants lack knowledge sufficient to either admit or deny the allegations of

Paragraph 44 of the Complaint.


45.     At all relevant times, Defendant Jessica Young (referred to herein as "CEO and President Young") at Advanced Correctional Healthcare, Inc., was the Chief Executive Officer and President and was responsible for medical healthcare services at the Sangamon County Jail, including providing adequate physician, nurse practitioner or physician assistant staffing. CEO and President Young was acting under color of law and in the course and scope of her employment

or agency with ACH and Sangamon County and/or Sheriff Campbell. CEO and President Young is sued in her official and individual capacities.

**ANSWER:**   Defendants lack knowledge sufficient to either admit or deny the allegations of

Paragraph 45 of the Complaint.


46.   At all relevant times, Defendant Carrie Bradley, RN (referred to herein as "Nurse Bradley"), was employed by ACH and/or Sangamon County and/or Sheriff Campbell as a Nurse working in the Sangamon County Jail during Dylan's incarceration, including on the night he died. Nurse Bradley is a nurse that was supposed to be monitoring Dylan as he was dying. Nurse Bradley is sued in her individual capacity. Nurse Bradley was acting under color of law and in the course and scope of her employment or agency with ACH.

**ANSWER:**   Defendants lack knowledge sufficient to either admit or deny the allegations of

Paragraph 46 of the Complaint.


47.   Defendant Suzett McCarty, RN (referred to herein as "Nurse McCarty"), was employed by ACH and/or Sangamon County and/or Sheriff Campbell as a Nurse working in the Sangamon County Jail during Dylan's incarceration, including on the night he died. Nurse McCarty is a nurse that was supposed to be monitoring Dylan as he was dying. Nurse McCarty is sued in her individual capacity. Nurse McCarty was acting under color of law and in the course and scope of her employment or agency with ACH.

**ANSWER:**   Defendants lack knowledge sufficient to either admit or deny the allegations of

Paragraph 47 of the Complaint.


48   Defendant Sarah Lehmann (referred to herein as "Administrator Lehmann") was the individual responsible for overseeing the healthcare of Dylan and other inmates at the Sangamon County Jail while he was in the custody at the Sangamon County Jail. At all relevant times, she was the Health Services Administrator for ACH. Administrator Lehmann is sued in her individual capacity. Administrator Lehmann was acting under color of law and in the course and scope of her employment or agency with ACH.

**ANSWER:**   Defendants lack knowledge sufficient to either admit or deny the allegations of

Paragraph 48 of the Complaint.


49.   The aforementioned defendants are collectively referred to as the "Defendants".

**ANSWER:**   Defendants ADMIT the allegations of Paragraph 49 of the Complaint.

50.     Officer Wheeler, Officer Hillen, Officer Files, Sergeant Stoutamyer, Officer Ealey, Officer Kirby, Sergeant Brown, P.O. Hicks, Sergeant Krueger, Sergeant Unthank, Officer Kerouac, Officer Miller, Sergeant Bergae, Officer Meyer, Officer Fisher, Officer Ansell, Sergeant Powell, Assistant Jail Superintendent Smith, Officer Wayda, Officer Buscher and Sergeant Grigsby are hereinafter referred to as the "Custodial Defendants".

**ANSWER:**     Defendants ADMIT the allegations of Paragraph 50 of the Complaint.

51.     At all relevant times, the Custodial Defendants acted under color of law in the course and scope of his or her employment as employees or agents of Sangamon County and/or Sheriff Campbell

**ANSWER:**     Defendants Wayda and Buscher ADMIT they were acting under color of law during the arrest of Dylan; they DENY the remaining allegations of Paragraph 51 of the Complaint as they may pertain to said defendants.

52.     Nurse Bradley, Nurse McCarty and Administrator Lehmann are hereinafter referred to as the "Medical Defendants"..

**ANSWER:**     Defendants lack knowledge sufficient to either admit or deny the allegations of Paragraph 52 of the Complaint.

53.     Sheriff Campbell, Chief Mayfield, Jail Superintendent Beck, and CEO and President Young are hereinafter referred to as the "Sangamon County Sheriff and His Leadership".

**ANSWER:**     Defendants lack knowledge sufficient to either admit or deny the allegations of Paragraph 53 of the Complaint.

## Statement of Claim

54.     On April 13, 2022, Dylan was taken into custody by the Sangamon County Police Department..

**ANSWER:**     Defendants ADMIT Dylan was arrested on said date but DENY the remaining allegations of Paragraph 54 of the Complaint.

55.     Dylan was fully compliant and followed all instructions given to him by law enforcement as they took him into custody.

**ANSWER:**    Defendants ADMIT the allegations of Paragraph 55 of the Complaint.


56.     On April 13, 2022, Dylan was taken to the Sangamon County Jail.

**ANSWER:**    Defendants ADMIT the allegations of Paragraph 56 of the Complaint.


57.     Before Dylan arrived at Sangamon County Jail, he complained of severe headaches to the officer transporting him to the jail.

**ANSWER:**    Defendants lack knowledge sufficient to either admit or deny the allegations of

Paragraph 57 of the Complaint.


58.     Upon information and belief, when Dylan arrived at the Jail, he was given a  medical examination to determine if he was fit for confinement.

**ANSWER:**    Defendants lack knowledge sufficient to either admit or deny the allegations of

Paragraph 58 of the Complaint.


59.     Upon information and belief, that medical examination failed to be a complete intake of Dylan's history that would have permitted a proper diagnosis of MRSA/meningitis in Dylan.

**ANSWER:**    Defendants lack knowledge sufficient to either admit or deny the allegations of

Paragraph 59 of the Complaint.


60.     These failures prevented a life-saving course of treatment to be followed, such as providing antibiotics to Dylan.

**ANSWER:**    Defendants lack knowledge sufficient to either admit or deny the allegations of

Paragraph 60 of the Complaint.

61.     Sangamon County Jail should have attempted to learn about Dylan's medical conditions before accepting him into its custody, and/or should have known to investigate Dylan's medical conditions as a result of his strange behavior and complaints.

**ANSWER:**     Defendants lack knowledge sufficient to either admit or deny the allegations of

Paragraph 61 of the Complaint.

62.     Dylan appeared physically rough including bruises on face and arms as observed upon booking on April 13, 2022.

**ANSWER:**     Defendants lack knowledge sufficient to either admit or deny the allegations of

Paragraph 62 of the Complaint.

63.     Furthermore, Officer Fisher observed that Dylan was unusually slow to react during the booking process. Officer Fisher's response was merely to write a report for mental health due to the Sangamon County Jail's transgender policy because Dylan identified as transgendered.

**ANSWER:**     Defendants lack knowledge sufficient to either admit or deny the allegations of

Paragraph 63 of the Complaint.

64.     Dylan was processed by officers and placed in a DUI observatory cell on the evening of April 13, 2022.

**ANSWER:**     Defendants lack knowledge sufficient to either admit or deny the allegations of

Paragraph 64 of the Complaint.

65.     As a result of the foregoing, Sangamon County Jail was made aware of Dylan's serious medical condition.

**ANSWER:**     Defendants lack knowledge sufficient to either admit or deny the allegations of

Paragraph 65 of the Complaint.

66.     Dylan immediately began manifesting additional medical symptoms to Sangamon County Jail as soon as he was booked.

**ANSWER:**     Defendants lack knowledge sufficient to either admit or deny the allegations of

Paragraph 66 of the Complaint.

67.     By way of example only, Sergeant Bergae reported that Dylan was pacing in the cell and talking to himself.

**ANSWER:**     Defendants lack knowledge sufficient to either admit or deny the allegations of

Paragraph 67 of the Complaint.


68.     On the morning of April 14, 2022, Dylan was escorted to a probation visit with P.O. Hicks by Assistant Jail Superintendent Smith.

**ANSWER:**     Defendants lack knowledge sufficient to either admit or deny the allegations of

Paragraph 68 of the Complaint.


69.     Dylan made further complaints of feeling unwell to P.O. Hicks.

**ANSWER:**     Defendants lack knowledge sufficient to either admit or deny the allegations of

Paragraph 69 of the Complaint.


70.     P.O. Hicks observed that Dylan was very irritable, holding the back of his neck and his head and saying that it was hurt and that he wished they would take him to the hospital. P.O. Hicks asked Dylan if he was okay and if something happened. Dylan replied that he did not know, but he informed P.O. Hicks that he had informed jail officers about the head and neck pain he was experiencing. P.O. Hicks assumed this information was shared with the other Defendants.

**ANSWER:**     Defendants lack knowledge sufficient to either admit or deny the allegations of

Paragraph 70 of the Complaint, except that Defendants Wayda and Buscher DENY

any such information was shared with them.


71.     P.O. Hicks, like the other Defendants, did nothing because, in her opinion, Dylan may have been a drug user complaining of pain or medical problems just to get to a hospital or get out of jail, but she did not know if this is what Dylan was attempting to do.

**ANSWER:**     Defendants lack knowledge sufficient to either admit or deny the allegations of

Paragraph 71 of the Complaint, except that Defendants Wayda and Buscher DENY

they owed any duty to Dylan at that time.

72.     Upon information and belief, Dylan made complaints to each of the individual Defendants that he was experiencing head and neck pain while in the Sangamon County Jail, which prevented Dylan from even attending court.

**ANSWER:**     Defendants DENY the allegations of paragraph 72 of the Complaint.


73.     By way of example only, Officer Unthank checked in Dylan's cell at one point and reported to Sergeant Kerouac that Dylan was not able to go to court because the back of Dylan's neck was hurting.

**ANSWER:**     Defendants lack knowledge sufficient to either admit or deny the allegations of

Paragraph 73 of the Complaint.


74.     Dylan did not receive any medical attention and was only transferred back to the DUI observatory cell.

**ANSWER:**     Defendants lack knowledge sufficient to either admit or deny the allegations of

Paragraph 74 of the Complaint.


75.     At approximately 5:41 PM on April 14, 2022, Dylan was moved to an inmate holding cell.

**ANSWER:**     Defendants lack knowledge sufficient to either admit or deny the allegations of

Paragraph 75 of the Complaint.


76.     Upon information and belief, Sergeant Powell had to help assist Officer Kirby escort Dylan because of his poor medical condition.

**ANSWER:**     Defendants lack knowledge sufficient to either admit or deny the allegations of

Paragraph 76 of the Complaint.


77.     Upon information and belief, the officers observed Dylan being in distress due to exhibiting erratic behaviors such as:  constant pacing, leaning up against walls, laying down and getting up in short periods of time, and yelling, hollering and writhing in pain.

**ANSWER:**     Defendants lack knowledge sufficient to either admit or deny the allegations of

Paragraph 77 of the Complaint.

78.     At approximately 6:14 PM on April 14, 2022, Officer Wheeler escorted Dylan to Medical Cell 2 (hereinafter sometimes referred to as "the Cell").

**ANSWER:**     Defendants lack knowledge sufficient to either admit or deny the allegations of

Paragraph 78 of the Complaint.

79.     Again, Dylan was only being segregated because he identified as transgendered.

**ANSWER:**     Defendants lack knowledge sufficient to either admit or deny the allegations of

Paragraph 79 of the Complaint.

80.     At the time Dylan was transferred to the Cell, Officer Wheeler was on duty to complete 2nd floor 30-minute cell checks. This consisted of 30-minute rounds to observe female cells, work release sections, trustee blocks, kitchen area, and jail medical cells from 3:00 PM to 10:30 PM on April 14, 2022.

**ANSWER:**     Defendants lack knowledge sufficient to either admit or deny the allegations of

Paragraph 80 of the Complaint.

81.     Per Officer Wheeler in an investigation interview, she fulfilled her duties and "observed him every time" during her 30-minute round cell checks.

**ANSWER:**     Defendants lack knowledge sufficient to either admit or deny the allegations of

Paragraph 81 of the Complaint.

82.     Dylan was seen moving throughout early cell checks by Officer Wheeler as she states, "Every time I did go past, he was in a spot, and the next time I'd go past he'd be in a different spot."

**ANSWER:**     Defendants lack knowledge sufficient to either admit or deny the allegations of

Paragraph 82 of the Complaint.

83.     Officer Wheeler did not really care about Dylan's condition, working by the standard: "if he's moving around, he's okay."

**ANSWER:**     Defendants lack knowledge sufficient to either admit or deny the allegations of

Paragraph 83 of the Complaint.

84.     Upon information and belief, Nurse Bradley and/or Nurse McCarty was the nurse working on the evening of April 14, 2022.

**ANSWER:**     Defendants lack knowledge sufficient to either admit or deny the allegations of

Paragraph 84 of the Complaint.

85.     Nurse Bradley and/or Nurse McCarty was able to view Dylan's cell from her workstation and was able to view the medical cells via security cameras.

**ANSWER:**     Defendants lack knowledge sufficient to either admit or deny the allegations of

Paragraph 85 of the Complaint.

86.     After being moved to the Cell, Dylan continued to show visible signs of being in significant discomfort.

**ANSWER:**     Defendants lack knowledge sufficient to either admit or deny the allegations of

Paragraph 86 of the Complaint.

87.     In addition to the symptoms identified above, at approximately 7:42 PM Dylan fell off the bed in the Cell to the floor.

**ANSWER:**     Defendants lack knowledge sufficient to either admit or deny the allegations of

Paragraph 87 of the Complaint.

88.     Dylan attempted to stand but immediately fell and hit his head against the cell wall.

**ANSWER:**     Defendants lack knowledge sufficient to either admit or deny the allegations of

Paragraph 88 of the Complaint.

89.     After the fall, Dylan made several additional attempts to stand without success.

**ANSWER:**     Defendants lack knowledge sufficient to either admit or deny the allegations of

Paragraph 89 of the Complaint.

90.     At approximately 7:46 PM, upon information and belief, Nurse Bradley was performing a round of checks through the cells in the medical corridor. At approximately 7:47 PM,

Nurse Bradley or Nurse McCarty simply walked by Dylan's cell while Dylan was on the ground in distress.

**ANSWER:**    Defendants lack knowledge sufficient to either admit or deny the allegations of

Paragraph 90 of the Complaint.

91.    Upon information and belief, Nurse Bradley or Nurse McCarty heard Dylan fall, struggle to stand, and make additional audible signs of distress while she was in the medical corridor performing a task. She then observed Dylan on the floor of the Cell and took no action.

**ANSWER:**    Defendants lack knowledge sufficient to either admit or deny the allegations of

Paragraph 91 of the Complaint.

92.    Dylan would continue to squirm, contort, and flail on the floor of the cell up to the point of Officer Wheeler's next cell check.

**ANSWER:**    Defendants lack knowledge sufficient to either admit or deny the allegations of

Paragraph 92 of the Complaint.

93.    Officer Wheeler walked by the Cell at 8:11 PM, where she observed Dylan face down on the ground. Per an investigation interview, she did not bother to think anything of it, and continued with her rounds.

**ANSWER:**    Defendants lack knowledge sufficient to either admit or deny the allegations of

Paragraph 93 of the Complaint.

94.    At 8:33 PM, Officer Wheeler returned for her next round to again find Dylan still on the ground of the cell in the corner.

**ANSWER:**    Defendants lack knowledge sufficient to either admit or deny the allegations of

Paragraph 94 of the Complaint.

95.     Officer Wheeler now could observe that Dylan s no longer moving around the cell, which went against the officer's original standard of fitness per her statement interview of "if he's moving around, he's okay."

**ANSWER:**     Defendants lack knowledge sufficient to either admit or deny the allegations of

Paragraph 95 of the Complaint.


96.     Despite this dramatic change in behavior, Officer Wheeler once again did not stop and perform any additional check or evaluation on Dylan's condition to make sure he was not in danger.

**ANSWER:**     Defendants lack knowledge sufficient to either admit or deny the allegations of

Paragraph 96 of the Complaint.


97.     Furthermore, Officer Wheeler failed to make the next 30-minute round through the medical area.

**ANSWER:**     Defendants lack knowledge sufficient to either admit or deny the allegations of

Paragraph 97 of the Complaint.


98.     All of this continued without any intervention by Nurse Bradley, Nurse McCarty or Administrator Lehmann.

**ANSWER:**     Defendants lack knowledge sufficient to either admit or deny the allegations of

Paragraph 98 of the Complaint.


99.     During her absence, Dylan's condition continued to worsen. Shortly after 9 PM, Dylan removed his pants and underwear. He continued to lay on the floor and contort eventually moving the entire bed into the middle of the cell.

**ANSWER:**     Defendants lack knowledge sufficient to either admit or deny the allegations of

Paragraph 99 of the Complaint.

100.    Officer Wheeler would not return to the unit until approximately 9:40 PM, over an hour after witnessing Dylan's change of behavior of laying face down on the ground.

**ANSWER:**    Defendants lack knowledge sufficient to either admit or deny the allegations of

Paragraph 100 of the Complaint.

101.    Attached below is a partial screenshot of a video from Sangamon County surveillance taken at approximately 9:40:53 PM. The silhouette of Officer Wheeler can be seen in the window in the lower left corner.

**ANSWER:**    Defendants lack knowledge sufficient to either admit or deny the allegations of

Paragraph 101 of the Complaint.

102.    At this moment, Officer Wheeler observed Dylan naked, on the floor, face down, bed disturbed, and in the middle of the room.

**ANSWER:**    Defendants lack knowledge sufficient to either admit or deny the allegations of

Paragraph 102 of the Complaint.

103.    Officer Wheeler knew that Dylan's change in behavior from walking around the Cell to lying face down on the floor had occurred for at least an hour and a half.

**ANSWER:**    Defendants lack knowledge sufficient to either admit or deny the allegations of

Paragraph 103 of the Complaint.

104.    Upon information and belief, Officer Wheeler took no time to investigate or check on Dylan's condition and continued with her rounds.

**ANSWER:**    Defendants lack knowledge sufficient to either admit or deny the allegations of

Paragraph 104 of the Complaint.

105.    As part of the internal investigation into Dylan's death, when asked why Officer Wheeler did not react and open the door to see what was going on, her response was, "I've seen it before" and "I didn't see anything wrong with it".

**ANSWER:**    Defendants lack knowledge sufficient to either admit or deny the allegations of

Paragraph 105 of the Complaint.

106.     During this time, none of the other individual Defendants intervened, either.

**ANSWER:**     Defendants Wayda and Buscher DENY they owed a duty to Dylan at the time; they

lack knowledge sufficient to either admit or deny the remaining allegations of

Paragraph 106 of the Complaint.


107.     Officer Wheeler would return for rounds at approximately 10:02 PM. At that time, Dylan was still face down, lying naked on the floor.  This was the same state she left him in almost thirty minutes prior. Officer Wheeler continued her rounds without taking any other action whatsoever.

**ANSWER:**     Defendants lack knowledge sufficient to either admit or deny the allegations of

Paragraph 107 of the Complaint.


108.     At approximately 10:14 PM, Nurse Bradley or Nurse McCarty also walked past Dylan's cell. She took no action to investigate or assist Dylan.

**ANSWER:**     Defendants lack knowledge sufficient to either admit or deny the allegations of

Paragraph 108 of the Complaint.


109.     Officer Wheeler performed her last round through the medical area that evening at approximately 10:34 PM. She once again observed Dylan, still face down, naked in the middle of the Cell, which had been significantly rearranged.

**ANSWER:**     Defendants lack knowledge sufficient to either admit or deny the allegations of

Paragraph 109 of the Complaint.


110.     Up to this point in time, she had witnessed:  Dylan alert and moving around the Cell until 8:11 PM; Dylan face down on the ground for over 2 hours; Dylan lying naked for nearly an hour; Dylan flailing around; Dylan's Cell in disarray and the bed pulled away and moved to the middle of the cell; and Dylan foaming at the mouth.

**ANSWER:**     Defendants lack knowledge sufficient to either admit or deny the allegations of

Paragraph 110 of the Complaint.

111.     Despite all of these warning signs that something was wrong, Officer Wheeler, Nurse Bradley nor Nurse McCarty stopped to even ask Dylan if he was okay.

**ANSWER:**     Defendants lack knowledge sufficient to either admit or deny the allegations of

Paragraph 111 of the Complaint.

112.     Defendants continued to leave Dylan naked, helpless, and dying until Officer Howie relieved Officer Wheeler.

**ANSWER:**     Defendants lack knowledge sufficient to either admit or deny the allegations of

Paragraph 112 of the Complaint.

113.     At approximately 11:04 PM, Officer Howie made a round through the medical area and observed Dylan naked and on the floor, in the same condition as Dylan was in for the past several hours.

**ANSWER:**     Defendants lack knowledge sufficient to either admit or deny the allegations of

Paragraph 113 of the Complaint.

114.     Officer Howie entered the Cell and observed that Dylan was in distress.

**ANSWER:**     Defendants lack knowledge sufficient to either admit or deny the allegations of

Paragraph 114 of the Complaint.

115.     At that time, Dylan was unresponsive, foaming at the mouth, and his arms had become even more rigid.

**ANSWER:**     Defendants lack knowledge sufficient to either admit or deny the allegations of

Paragraph 115 of the Complaint.

116.     Immediately, Officer Howie requested that Nurse Bradley and/or Nurse McCarty request medical assistance.

**ANSWER:**     Defendants lack knowledge sufficient to either admit or deny the allegations of

Paragraph 116 of the Complaint.

117.    Upon information and belief, this was the first time that medical staff was contacted regarding Dylan's medical condition.

**ANSWER:**    Defendants lack knowledge sufficient to either admit or deny the allegations of

Paragraph 117 of the Complaint.


118.    Unfortunately for Dylan, due to the deliberate indifference of the Custodial Defendants and the Medical Defendants, Dylan's condition had progressed to the point that he could not recover from his serious medical condition.

**ANSWER:**    Defendants Wayda and Buscher DENY the allegations of Paragraph 118 of the

Complaint.


119.    Paramedics arrived and transported Dylan to Memorial Medical Center.

**ANSWER:**    Defendants lack knowledge sufficient to either admit or deny the allegations of

Paragraph 119 of the Complaint.


120.    Dylan had been exhibiting obvious signs of distress while being on the ground for three hours and twenty-three minutes before receiving medical treatment.

**ANSWER:**    Defendants lack knowledge sufficient to either admit or deny the allegations of

Paragraph 120 of the Complaint.


121.    Dylan had been naked on the ground squirming and flailing for nearly two hours before receiving any medical treatment.

**ANSWER:**    Defendants lack knowledge sufficient to either admit or deny the allegations of

Paragraph 121 of the Complaint.


122.    Due to a lack of training and unclear policies by Sangamon County and ACH, no one contacted medical nor assisted Dylan during cell checks.

**ANSWER:**    Defendants lack knowledge sufficient to either admit or deny the allegations of

Paragraph 122 of the Complaint.

123.   Defendants knew or should have known that Dylan was having a medical emergency when he was placed in the medical Cell.

**ANSWER:**   Defendants Wayda and Buscher DENY the allegations of Paragraph 123 of the

Complaint.

124.   Defendants knew that Dylan was having a medical emergency when he was laying on the ground for over three hours.

**ANSWER:**   Defendants Wayda and Buscher DENY the allegations of Paragraph 124 of the

Complaint.

125.   Defendants knew that Dylan was having a medical emergency when he was naked, squirming, and flailing for almost two hours.

**ANSWER:**   Defendants Wayda and Buscher DENY the allegations of Paragraph 125 of the

Complaint.

126.   As a result of Dylan not receiving any medical treatment in the Sangamon County Jail, Dylan died.

**ANSWER:**   Defendants lack knowledge sufficient to either admit or deny the allegations of

Paragraph 126 of the Complaint.

127.   Defendants failing to seek medical attention for Dylan was an egregious failure to intervene in a medical and/or physical crisis.

**ANSWER:**   Defendants Wayda and Buscher DENY the allegations of Paragraph 127 of the

Complaint.

128.   Dylan would, unfortunately, be diagnosed with MRSA/meningitis and pass away from the infection on April 17, 2022.

**ANSWER:**   Defendants lack knowledge sufficient to either admit or deny the allegations of

Paragraph 128 of the Complaint.

129.    Dylan is now dead because of the decisions made by Defendants, done as a result of unconstitutional policies and inadequate training and lack thereof by Sangamon County and ACH.

**ANSWER:**    Defendants Wayda and Buscher DENY the allegations of Paragraph 127 of the

Complaint.


130.    Dylan's death was caused by one or more of the following failures: Custodial Defendants and Medical Defendants failed to intervene with Dylan; Custodial Defendants  failed to contact  medical when Dylan exhibited erratic behavior; Upon information and belief, Custodial Defendants and Medical Defendants did not properly document Dylan's medical issues; the Medical Defendants failed to conduct an adequate health examination of Dylan, including but not limited to checking his temperature for MRSA and investigating his headaches after his complaints were made; the Medical Defendants failed to sufficiently communicate Dylan's medical condition to the officers; the Medical Defendants failed to treat Dylan when he exhibited symptoms of MRSA/meningitis, including but not limited to providing him with appropriate antibiotics; the Custodial Defendants failed to consult medical personnel when they  knew that Dylan was experiencing a medical emergency; the Custodial Defendants failed to correctly identify Dylan's health state; Sangamon County failed to develop clear policies and procedures to prevent  what is detailed in the above subsections (a) through (i).

**ANSWER:**    Defendants Wayda and Buscher DENY the allegations of Paragraph 127 of the

Complaint.


## COUNT 1


131.    All preceding paragraphs are re-alleged and incorporated herein.

**ANSWER:**    All preceding answers are incorporated herein.


132 – 141 incorporated herein.

**ANSWER:**    Defendants Wayda and Buscher DENY the allegations of Paragraphs 132 through

141 of the Complaint.


### DEFENDANT'S AFFIRMATIVE DEFENSE TO COUNT 1

Defendants Wayda and Buscher are entitled to qualified immunity as their conduct was justified by an objectively reasonable belief that it was lawful.

## COUNT 2, 3, 4

**ANSWER:**   As these counts are not alleged against Defendants Wayda and Buscher, they make

no answer thereto.

## COUNT 5

163.   All preceding paragraphs are re-alleged and incorporated herein.

**ANSWER:**   All preceding answers are incorporated herein.

164 – 169 incorporated herein.

**ANSWER:**   Defendants Wayda and Buscher DENY the allegations of Paragraphs 164 through

169 of the Complaint.

## DEFENDANTS' AFFIRMATIVE DEFENSES TO COUNT 5

1.   Defendants are entitled to qualified immunity as their conduct was justified by an objectively reasonable belief that it was lawful.

2.   Defendants are immune from liability under the Illinois Tort Immunity Act.

## COUNT 6

170.   All preceding paragraphs are re-alleged and incorporated herein.

**ANSWER:**   All preceding answers are incorporated herein.

171 – 172 incorporated herein.

**ANSWER:**   Defendants Wayda and Buscher DENY the allegations of Paragraphs 171 through

172 of the Complaint.

## DEFENDANTS' AFFIRMATIVE DEFENSES TO COUNT 6

1.   Defendants are entitled to qualified immunity as their conduct was justified by an objectively reasonable belief that it was lawful.

2.      Defendants are immune from liability under the Illinois Tort Immunity Act.

## COUNT 7 – 14

**ANSWER:**      As these counts are not alleged against Defendants Wayda and Buscher, they make

no answer thereto.

**WHEREFORE**, Defendants Jacob Wayda and Clifford Buscher pray this Court dismiss

the Complaint against these Defendants and grant them their costs and any other relief the Court

deems just.

**DEFENDANTS DEMAND TRIAL BY JURY ON ALL COUNTS.**

**RESPECTFULLY SUBMITTED,**
**s/ Steven C. Rahn**
Bar Number 6188985
Room 313 Municipal Center East
800 East Monroe Street
Springfield, Illinois 62701-1689
Telephone: (217) 789-2393
Fax: (217) 789-2397
Email: steven.rahn@springfield.il.us

UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| STARLA SMITH, as administrator of the estate of DYLAN SCHLIEPER-CLARK, | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | No. 23-cv-3137 |
| COUNTY OF SANGAMON, et. al., | ) ) | |
| Defendants. | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that on **October 12, 2023,** I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Thomas R. Applewhite
909 Olive Street, Suite 1110
St. Louis, MO 63101
Tom.applewhite@da-lawfirm.com

Peter Jennetten
James D. VanRheeden
Quinn Johnston
227 N E Jefferson Avenue
Peoria, IL 60602-1211
pjennetten@quinnjohnston.com
jvanrheeden@quinnjohnston.com

Dylan P. Grady, ARDC# 6309120
BROWN, HAY & STEPHENS, LLP
205 S. Fifth Street, Suite 1000
P.O. Box 2459
Springfield, IL 62705-2459
dgrady@bhslaw.com

RESPECTFULLY SUBMITTED,
s/ Steven C. Rahn
Bar Number 6188985
Room 313 Municipal Center East
800 East Monroe Street
Springfield, Illinois 62701-1689
Telephone: (217) 789-2393
Fax: (217) 789-2397
Email: steven.rahn@springfield.il.us