E-FILED
Monday, 29 July, 2024 11:06:25 PM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| STARLA SMITH, AS ADMINISTRATOR OF THE ESTATE OF DYLAN SCHLIEPER-CLARK AND ON BEHALF OF HIS NEXT OF KIN, | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 3:23-cv-03137 |
| COUNTY OF SANGAMON, et al., | ) | |
| Defendants. | ) | |

**ANSWERS AND AFFIRMATIVE DEFENSES TO THIRD AMENDED COMPLAINT**

NOW COMES SANGAMON COUNTY, JACK CAMPBELL, WILLIAM SMITH, CHRISTINA WHEELER, COREY HILLEN, JARRED KIRBY, BRITNEY HICKS, CHRIS UNTHANK, COLLEEN KEROUAC, TRACY BERGAE, BRAD MEYER, DAVE FISHER, TOM ANSELL, TAMMY POWELL, and EARL GRIGSBY (hereinafter, the "County Defendants") by their attorneys Dylan P. Grady and BROWN, HAY & STEPHENS, LLP, and for their Answers and Affirmative Defenses to Plaintiff's Third Amended Complaint, state as follows:

**Preliminary Statement**

1. Dylan Schlieper-Clark (hereinafter, "Dylan") was taken into Sangamon County Police custody on April 13, 2022, and taken to the Sangamon County Jail for processing and holding as a pre-trial detainee.

**ANSWER: Defendants admit the allegations in this paragraph.**

2. Dylan reported and/or showed signs of severe headaches, neck pain, and other serious ailments to the arresting officers, Jacob Wayda and Clifford Buscher, and each of the other Defendants described herein.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations regarding what Dylan reported and/or showed signs of to Jacob Wayda and Clifford Buscher. Defendants deny the remaining allegations in this paragraph.**

3.      When arresting officers Jacob Wayda and Clifford Buscher arrested Dylan, he was moaning and in poor physical condition; within one hour of his arrest, Dylan was complaining of headaches to these arresting officers.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

4.      Upon information and belief, Sergeant Earl Grigsby was then involved in the provision of medical care to Dylan, and the failure to properly treat Dylan for his serious medical condition of methicillin-resistant staphylococcus aureus meningoencephalitis (hereinafter referred to as "MRSA/meningitis") early in the intake process was a factor in contributing to Dylan's death. Sergeant Grigsby's role will be better ascertained through the discovery process as discovery progresses in this case.

**ANSWER: Defendants deny the allegations in this paragraph.**

5.      On April 14, 2022, Dylan was placed in a medical unit cell while awaiting transfer to another cell. While being held in the medical cell, Dylan's already serious medical condition worsened, and he became severely ill.

**ANSWER: Defendants admit that on April 14, 2022, Dylan was placed in a medical unit cell. Defendants deny the remaining allegations in this paragraph.**

6.      According to Sangamon County policy, Dylan was housed alone while a committee decided where to place him because he identified as transgender.

**ANSWER: Defendants deny the allegations in this paragraph.**

7.      Dylan began losing motor control of his body and fell into the cell's walls multiple times. Dylan also began to struggle to get off the floor, visibly disturbing the appearance of the room. Dylan also began removing clothing in an apparent attempt to cool off from an increasing fever, and would start to become physically rigid while foaming at the mouth.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

8.      During the time Dylan was on the floor of his medical cell in clear need of medical assistance for hours, he was being observed the entire time by Correctional Officer Christina Wheeler who was completing rounds.

**ANSWER: Defendants admit Christina Wheeler was a correctional officer on duty on April 14, 2024 and was assigned to 2nd floor 30 minute gallery checks. Defendants deny the remaining allegations in this paragraph.**

9.      Officer Wheeler would pass by and observe Dylan on the ground, naked, writhing in pain several times and took no action whatsoever including but not limited to alerting medical personnel or her supervisor, opening the cell to investigate, or so much as verbally asking Dylan if he was okay.

**ANSWER: Defendants deny the allegation in this paragraph.**

10.      During the time Dylan was on the floor in clear need of medical assistance, he was being observed by Nurse Bradley, who were mere yards away from Dylan's cell.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

11. After hours with no assistance, Officer Tim Howie (referred to herein as "Officer Howie") would eventually witness Dylan on the ground and immediately call for medical assistance after seeing him naked on the ground, flailing and foaming at the mouth.

**ANSWER: Defendants admit that Officer Tim Howie observed Dylan at approximately 11:04 p.m. and initiated a response from Sangamon County Jail personnel and medical staff. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.**

12. Dylan was transported to Memorial Medical Center in Springfield on the evening of April 14, 2022.

**ANSWER: Defendants admit the allegations in this paragraph.**

13. As a result of the delay, inaction, and deliberate indifference to Dylan's medical needs, Dylan died from MRSA/meningitis on April 17, 2022.

**ANSWER: Defendants deny the allegations in this paragraph.**

**Jurisdiction and Venue**

14. Plaintiff brings this civil rights lawsuit pursuant to the Constitution of the United States; the Civil Rights Act, 42 U.S.C. § 1983.

**ANSWER: Defendant admits the allegations in this paragraph.**

15. The Court has original jurisdiction pursuant to 28 U.S.C. § 1331, as this action arises under the Constitution and laws of the United States. The Court also has supplemental jurisdiction of Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a), as the claims are related to the claims arising under federal law so that they form part of the same case or controversy under Article III of the United States Constitution.

**ANSWER: Defendant admits the allegations in this paragraph.**

16. The violations of civil rights and other misconduct alleged herein occurred in Sangamon County, Illinois. Accordingly, this action properly lies in the United States District Court for the Central District of Illinois, Springfield Division, pursuant to 28 U.S.C. § 1391(b).

**ANSWER: Defendants admit the alleged misconduct occurred in Springfield, Illinois and admit that the Central District of Illinois is a proper forum. Defendant denies violating Plaintiff's civil rights and denies the remaining allegations in this paragraph.**

**Parties**

17. At all relevant times, Dylan was a United States citizen and lived in Springfield, Sangamon County, Illinois. At the time of his death, Dylan was a pretrial detainee confined in the Sangamon County Jail. Dylan was 23 years old, never married, had no children, and is survived by his parents, Starla Smith and David Clark, and sisters, Hailey Piercy, Heaven Piercy, Samantha Williams, and Stephanie Williams

**ANSWER: Defendants admit that Dylan was a pre-trial detainee being housed in the Sangamon County Jail. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.**

18. Starla Smith is the mother of the decedent, Dylan Schlieper-Clark, and was appointed Administrator of the of the Estate of Dylan Schlieper-Clark by the Circuit Court of the Seventh Judicial Circuit in Sangamon County Case No. 2023-PR-56. Ms. Smith brings this action in her capacity as Administrator of the Estate of Dylan Schlieper-Clark and for the benefit of Dylan's next of kin.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

19.     At all relevant times, defendant Jack Campbell (hereinafter, "Sheriff Campbell") was the duly elected Sheriff of Sangamon County and the warden and chief administrator of the Sangamon County Jail. Sheriff Campbell was the final policy maker for Defendant Sangamon County with respect to the care and custody of inmates in the Sangamon County Jail. At all relevant times, Sheriff Campbell acted under color of law. Sheriff Campbell is sued in his individual and official capacity.

**ANSWER: Defendants admit that Jack Campbell was the Sheriff of Sangamon County at all relevant times. Defendants deny Sheriff Campbell was the Warden of the Sangamon County Jail. Defendants deny the remaining allegations in this paragraph.**

20.     Defendant Assistant Jail Superintendent William Smith (hereinafter, "Assistant Jail Superintendent Smith") is believed to have been the person employed by Sangamon County and/or Sheriff Campbell as the Assistant Jail Superintendent during Dylan's incarceration. Assistant Jail Superintendent Smith is sued in his individual capacity.

**ANSWER: Defendants admit that William Smith was employed as the Assistant Jail Superintendent at all relevant times. Defendants deny that William Smith can be sued under a *respondeat superior* theory.**

21.     Defendant Christina Wheeler (referred to herein as "Officer Wheeler") was employed by Sangamon County and/or Sheriff Campbell as a Corrections Officer working in the Sangamon County Jail during Dylan's incarceration, including on the night he died. Officer Wheeler is sued in her individual capacity.

**ANSWER: Defendants admit the allegations in this paragraph.**

22.     Defendant Corey Hillen (referred to herein as "Officer Hillen") was employed by Sangamon County and/or Sheriff Campbell as a Corrections Officer working in the Sangamon

County Jail during Dylan's incarceration, including on the night he died. Officer Hillen is sued in his individual capacity.

**ANSWER: Defendants admit that Officer Hillen was employed by the Sangamon County Sheriff's Office. Defendants deny the remaining allegations in this paragraph.**

23.     Defendant Jarred Kirby (referred to herein as "Officer Kirby") was employed by Sangamon County and/or Sheriff Campbell as a Corrections Officer working in the Sangamon County Jail during Dylan's incarceration, including on the night he died. Officer Kirby is sued in his individual capacity.

**ANSWER: Defendants admit the allegations in this paragraph.**

24.     Defendant Britney Hicks (referred to herein as "P.O. Hicks") was employed by Sangamon County and/or Sheriff Campbell as a Probation Officer working in the Sangamon County Jail during Dylan's incarceration, including on the night he died. P.O. Hicks is sued in her individual capacity.

**ANSWER: Defendants admit that Britney Hicks was employed by Sangamon County. Defendants deny the remaining allegations in this paragraph.**

25.     Defendant Chris Unthank (referred to herein as "Sergeant Unthank") was employed by Sangamon County and/or Sheriff Campbell as a Sergeant working in the Sangamon County Jail during Dylan's incarceration, including on the night he died. Sergeant Unthank is sued in his individual capacity.

**ANSWER: Defendants admit Chris Unthank was employed by the Sangamon County Sheriff's Office. Defendants deny the remaining allegations in this paragraph.**

26.     Defendant Colleen Kerouac (referred to herein as "Officer Kerouac") was employed by Sangamon County and/or Sheriff Campbell as a Corrections Officer working in the

Sangamon County Jail during Dylan's incarceration, including on the night he died. Officer Kerouac is sued in her individual capacity.

**ANSWER: Defendants admit Colleen Kerouac was employed by the Sangamon County Sheriff's Office. Defendants deny the remaining allegations in this paragraph.**

27.     Defendant Tracy Bergae (referred to herein as "Sergeant Bergae") was employed by Sangamon County and/or Sheriff Campbell as a Sergeant working in the Sangamon County Jail during Dylan's incarceration, including on the night he died. Sergeant Bergae is sued in her individual capacity.

**ANSWER: Defendants admit the allegations in this paragraph.**

28.     Defendant Brad Meyer (referred to herein as "Officer Meyer") was employed by Sangamon County and/or Sheriff Campbell as a Corrections Officer working in the Sangamon County Jail during Dylan's incarceration, including on the night he died. Officer Meyer is sued in his individual capacity.

**ANSWER: Defendants admit Brad Meyer was employed by the Sangamon County Sheriff's Office. Defendants deny the remaining allegations in this paragraph.**

29.     Defendant Dave Fisher (referred to herein as "Officer Fisher") was employed by Sangamon County and/or Sheriff Campbell as a Corrections Officer working in the Sangamon County Jail during Dylan's incarceration, including on the night he died. Officer Fisher is sued in his individual capacity.

**ANSWER: Defendants admit Dave Fisher was employed by the Sangamon County Sheriff's Office. Defendants deny the remaining allegations in this paragraph.**

30.     Defendant Tom Ansell (referred to herein as "Officer Ansell") was employed by Sangamon County and/or Sheriff Campbell as a Corrections Officer working in the Sangamon

County Jail during Dylan's incarceration, including on the night he died. Officer Ansell is sued in his individual capacity.

**ANSWER: Defendants admit Tom Ansell was employed by the Sangamon County Sheriff's Office. Defendants deny the remaining allegations in this paragraph.**

31.     Defendant Tammy Powell (referred to herein as "Sergeant Powell") was employed by Sangamon County and/or Sheriff Campbell as a Sergeant working in the Sangamon County Jail during Dylan's incarceration, including on the night he died. Sergeant Powell is sued in her individual capacity.

**ANSWER: Defendants admit the allegations in this paragraph.**

32.     Defendant Sangamon County is a governmental entity in the State of Illinois which funds and operates the Sangamon County Jail and, while Sheriff Campbell may be the actual employer of the individual jailers named herein, Sangamon County is a necessary party and is ultimately responsible for paying a judgment or settlement on behalf of the Sheriff or individual jailers and is joined in this action pursuant to *Carver v. Sheriff of LaSalle County*, 324 F.3d 947 (7th Cir. 2003).

**ANSWER: Defendants admit Sangamon County is a governmental entity. Defendants deny the remaining allegations in this paragraph.**

33.     Defendant Jacob Wayda (referred to herein as "Officer Wayda") was employed by the Springfield Police Department of the City of Springfield, Illinois as an Officer who arrested Dylan. Officer Wayda is sued in his individual capacity.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

34.     Defendant Clifford Buscher (referred to herein as "Officer Buscher") was employed by the Springfield Police Department of the City of Springfield, Illinois as an Officer who arrested Dylan. Officer Buscher is sued in his individual capacity. Defendant Earl Grigsby (referred to herein as "Sergeant Grigsby") was employed by Sangamon County and/or Sheriff Campbell as a Sergeant working in the Sangamon County Jail during Dylan's incarceration, including on the night he died. Sergeant Grigsby is sued in his individual capacity.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations regarding Clifford Buscher.**

35.     At all relevant times, Defendant Advanced Correctional Healthcare (referred to herein as "ACH") was a corporation located in Franklin, Tennessee, in the business of providing healthcare services to incarcerated inmates. At all relevant times, ACH was supposed to provide 24-hour on-site healthcare, including nursing, to inmates in the Sangamon County Jail pursuant to a contract with Sangamon County and/or Sheriff Campbell. At all relevant times, ACH, by and through its employees and agents, was acting under color of law, and its employees and agents were acting in the course and scope of their employment or agency with ACH and/or Sangamon County and/or Sheriff Campbell.

**ANSWER: Defendants admit that ACH is a corporation headquartered in Franklin, TN and that it contracted with Sangamon County to provide healthcare services at the Sangamon County Jail. Defendants deny the remaining allegations in this paragraph.**

36.     At all relevant times, Defendant Carrie Bradley, RN (referred to herein as "Nurse Bradley"), was employed by ACH and/or Sangamon County and/or Sheriff Campbell as a Nurse working in the Sangamon County Jail during Dylan's incarceration, including on the night he died. Nurse Bradley is a nurse that was supposed to be monitoring Dylan as he was dying. Nurse Bradley

is sued in her individual capacity. Nurse Bradley was acting under color of law and in the course and scope of her employment or agency with ACH.

**ANSWER: Defendants deny Carrie Bradley was employed by Sangamon County and/or Sheriff Campbell. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.**

37. Defendant Sarah Lehmann (referred to herein as "Administrator Lehmann") was the individual responsible for overseeing the healthcare of Dylan and other inmates at the Sangamon County Jail while he was in the custody at the Sangamon County Jail. At all relevant times, she was the Health Services Administrator for ACH. Administrator Lehmann is sued in her individual capacity. Administrator Lehmann was acting under color of law and in the course and scope of her employment or agency with ACH.

**ANSWER: Defendants deny Sarah Lehmann was employed by Sangamon County and/or Sheriff Campbell. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.**

38. The aforementioned defendants are collectively referred to as the "Defendants".

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

39. Officer Wheeler, Officer Hillen, Officer Kirby, P.O. Hicks, Sergeant Unthank, Officer Kerouac, Sergeant Bergae, Officer Meyer, Officer Fisher, Officer Ansell, Sergeant Powell, Assistant Jail Superintendent Smith, Officer Wayda, Officer Buscher and Sergeant Grigsby are hereinafter referred to as the "Custodial Defendants".

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

40. At all relevant times, the Custodial Defendants acted under color of law in the course and scope of his or her employment as employees or agents of Sangamon County and/or Sheriff Campbell.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

41. Nurse Bradley and Administrator Lehmann are hereinafter referred to as the "Medical Defendants".

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

**Statement of Claim**

42. On April 13, 2022, Dylan was taken into custody by the Springfield Police Department.

**ANSWER: Defendants admit the allegations in this paragraph.**

43. Dylan was fully compliant and followed all instructions given to him by law enforcement as they took him into custody.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

44. On April 13, 2022, Dylan was taken to the Sangamon County Jail.

**ANSWER: Defendants admit the allegations in this paragraph.**

45. Before Dylan arrived at Sangamon County Jail, he complained of severe headaches to the officer transporting him to the jail.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

46.     Upon information and belief, when Dylan arrived at the Jail, he was given a medical examination to determine if he was fit for confinement.

**ANSWER: Defendants lack knowledge or information**

47.     Upon information and belief, that medical examination failed to be a complete intake of Dylan's history that would have permitted a proper diagnosis of MRSA/meningitis in Dylan.

**ANSWER: Defendants deny the allegations in this paragraph.**

48.     These failures prevented a life-saving course of treatment to be followed, such as providing antibiotics to Dylan.

**ANSWER: Defendants deny the allegations in this paragraph.**

49.     Sangamon County Jail should have attempted to learn about Dylan's medical conditions before accepting him into its custody, and/or should have known to investigate Dylan's medical conditions as a result of his strange behavior and complaints.

**ANSWER: Defendants deny the allegations in this paragraph.**

50.     Dylan appeared physically rough including bruises on face and arms as observed upon booking on April 13, 2022.

**ANSWER: Defendants admit Dylan had a bruise on his face. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.**

51.     Furthermore, Officer Fisher observed that Dylan was unusually slow to react during the booking process. Officer Fisher's response was merely to write a report for mental health due to the Sangamon County Jail's transgender policy because Dylan identified as transgendered.

**ANSWER: Defendants deny the allegations in this paragraph.**

52.  Dylan was processed by officers and placed in a DUI observatory cell on the evening of April 13, 2022.

**ANSWER: Defendants admit the allegations in this paragraph.**

53.  As a result of the foregoing, Sangamon County Jail was made aware of Dylan's serious medical condition.

**ANSWER: Defendants deny the allegations in this paragraph.**

54.  Dylan immediately began manifesting additional medical symptoms to Sangamon County Jail as soon as he was booked.

**ANSWER: Defendants deny the allegations in this paragraph.**

55.  By way of example only, Sergeant Bergae reported that Dylan was pacing in the cell and talking to himself.

**ANSWER: Defendants admit that Sgt. Bergae observed Dylan was pacing the cell and talking to himself. Defendants deny the remaining allegations in this paragraph and deny Sgt. Bergae violated Plaintiff's rights.**

56.  On the morning of April 14, 2022, Dylan was escorted to a probation visit with P.O. Hicks by Assistant Jail Superintendent Smith.

**ANSWER: Defendants admit the allegation in this paragraph.**

57.  Dylan made further complaints of feeling unwell to P.O. Hicks.

**ANSWER: Defendants deny the allegations in this paragraph.**

58.  P.O. Hicks observed that Dylan was very irritable, holding the back of his neck and his head and saying that it was hurt and that he wished they would take him to the hospital. P.O. Hicks asked Dylan if he was okay and if something happened. Dylan replied that he did not know,

but he informed P.O. Hicks that he had informed jail officers about the head and neck pain he was experiencing. P.O. Hicks assumed this information was shared with the other Defendants.

**ANSWER: Defendants admit the allegations in this paragraph but deny that Hicks violated Dylan's rights.**

59.     P.O. Hicks, like the other Defendants, did nothing because, in her opinion, Dylan may have been a drug user complaining of pain or medical problems just to get to a hospital or get out of jail, but she did not know if this is what Dylan was attempting to do.

**ANSWER: Defendants deny the allegations in this paragraph.**

60.     Upon information and belief, Dylan made complaints to each of the individual Defendants that he was experiencing head and neck pain while in the Sangamon County Jail, which prevented Dylan from even attending court.

**ANSWER: Defendants deny the allegations in this paragraph.**

61.     By way of example only, Officer Unthank checked in Dylan's cell at one point and reported to Sergeant Kerouac that Dylan was not able to go to court because the back of Dylan's neck was hurting.

**ANSWER: Defendants admit that Officer Unthank went to Dylan's cell to escort him to Court. Defendants admit Dylan refused to go to Court. Defendants admit Officer Unthank reported that Dylan refused to go to Court to Sgt. Kerouac. Defendants deny the remaining allegations in this paragraph.**

62.     Dylan did not receive any medical attention and was only transferred back to the DUI observatory cell.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

63.     At approximately 5:41 PM on April 14, 2022, Dylan was moved to an inmate holding cell.

**ANSWER: Defendants deny the allegations in this paragraph.**

64.     Upon information and belief, Sergeant Powell had to help assist Officer Kirby escort Dylan because of his poor medical condition.

**ANSWER: Defendants deny the allegations in this paragraph.**

65.     Upon information and belief, the officers observed Dylan being in distress due to exhibiting erratic behaviors such as:

a.      constant pacing,

b.      leaning up against walls,

c.      laying down and getting up in short periods of time, and

d.      yelling, hollering and writhing in pain.

**ANSWER: Defendants deny the allegations in this paragraph.**

66.     At approximately 6:14 PM on April 14, 2022, Officer Wheeler escorted Dylan to Medical Cell 2 (hereinafter sometimes referred to as "the Cell").

**ANSWER: Defendants admit the allegations in this paragraph.**

67.     Again, Dylan was only being segregated because he identified as transgendered.

**ANSWER: Defendants deny the allegations in this paragraph.**

68.     At the time Dylan was transferred to the Cell, Officer Wheeler was on duty to complete 2nd floor 30-minute cell checks. This consisted of 30-minute rounds to observe female cells, work release sections, trustee blocks, kitchen area, and jail medical cells from 3:00 PM to 10:30 PM on April 14, 2022.

**ANSWER: Defendants admit paragraph 68 identifies a portion of Officer Wheeler's duties. Defendants deny the remaining allegations in this paragraph.**

69.     Per Officer Wheeler in an investigation interview, she fulfilled her duties and "observed him every time" during her 30-minute round cell checks.

**ANSWER: Defendants admit the allegations in this paragraph.**

70.     Dylan was seen moving throughout early cell checks by Officer Wheeler as she states, "Every time I did go past, he was in a spot, and the next time I'd go past he'd be in a different spot."

**ANSWER: Defendants admit the allegations in this paragraph.**

71.     Officer Wheeler did not really care about Dylan's condition, working by the standard: "if he's moving around, he's okay."

**ANSWER: Defendants deny the allegations in this paragraph.**

72.     Upon information and belief, Nurse Bradley was a nurse working on the evening of April 14, 2022.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

73.     During the time that Dylan was in the medical unit, Nurse Bradley was able to view Dylan's cell from their workstations via security cameras.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

74.     After being moved to the Cell, Dylan continued to show visible signs of being in significant discomfort.

**ANSWER: Defendants deny the allegations in this paragraph.**

75.     In addition to the symptoms identified above, at approximately 7:42 PM Dylan fell off the bed in the Cell to the floor.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

76.     Dylan attempted to stand but immediately fell and hit his head against the cell wall.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

77.     After the fall, Dylan made several additional attempts to stand without success.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

78.     At approximately 7:46 PM, upon information and belief, Nurse Bradley was performing a round of checks through the cells in the medical corridor. At approximately 7:47 PM, Nurse Bradley simply walked by Dylan's cell while Dylan was on the ground in distress.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

79.     Upon information and belief, Nurse Bradley heard Dylan fall, struggle to stand, and make additional audible signs of distress while she was in the medical corridor performing a task. She then observed Dylan on the floor of the Cell and took no action.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

80.     Dylan would continue to squirm, contort, and flail on the floor of the cell up to the point of Officer Wheeler's next cell check.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

81.     Officer Wheeler walked by the Cell at 8:11 PM, where she observed Dylan face down on the ground. Per an investigation interview, she did not bother to think anything of it, and continued with her rounds.

**ANSWER: Defendants admit Officer Wheeler walked by the Cell at 8:11 p.m. Defendants deny the remaining allegations in this paragraph.**

82.     At 8:33 PM, Officer Wheeler returned for her next round to again find Dylan still on the ground of the cell in the corner.

**ANSWER: Defendants deny the allegations in this paragraph.**

83.     Officer Wheeler now could observe that Dylan s no longer moving around the cell, which went against the officer's original standard of fitness per her statement interview of "if he's moving around, he's okay."

**ANSWER: Defendants deny the allegations in this paragraph.**

84.     Despite this dramatic change in behavior, Officer Wheeler once again did not stop and perform any additional check or evaluation on Dylan's condition to make sure he was not in danger.

**ANSWER: Defendants deny the allegations in this paragraph.**

85.     Furthermore, Officer Wheeler failed to make the next 30-minute round through the medical area.

**ANSWER: Defendants deny the allegations in this paragraph.**

86.     All of this continued without any intervention by Nurse Bradley or Administrator Lehmann.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

87.     During her absence, Dylan's condition continued to worsen. Shortly after 9 PM, Dylan removed his pants and underwear. He continued to lay on the floor and contort eventually moving the entire bed into the middle of the cell.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

88.     Officer Wheeler would not return to the unit until approximately 9:40 PM, over an hour after witnessing Dylan's change of behavior of laying face down on the ground.

**ANSWER: Defendants deny the allegations in this paragraph.**

89.     Attached below is a partial screenshot of a video from Sangamon County surveillance taken at Approximately 9:40:53 PM. The silhouette of Officer Wheeler can be seen in the window in the lower left corner.



**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

90.     At this moment, Officer Wheeler observed Dylan naked, on the floor, face down, bed disturbed, and in the middle of the room.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

91.     Officer Wheeler knew that Dylan's change in behavior from walking around the Cell to lying face down on the floor had occurred for at least an hour and a half.

**ANSWER: Defendants deny the allegations in this paragraph.**

92.     Upon information and belief, Officer Wheeler took no time to investigate or check on Dylan's condition and continued with her rounds.

**ANSWER: Defendants deny the allegations in this paragraph.**

93.     As part of the internal investigation into Dylan's death, when asked why Officer Wheeler did not react and open the door to see what was going on, her response was, "I've seen it before" and "I didn't see anything wrong with it".

**ANSWER: Defendants admit the allegations in this paragraph.**

94.     During this time, none of the other individual Defendants intervened, either.

**ANSWER: Defendants deny the allegations in this paragraph.**

95.     Officer Wheeler would return for rounds at approximately 10:02 PM. At that time, Dylan was still face down, lying naked on the floor.  This was the same state she left him in almost thirty minutes prior. Officer Wheeler continued her rounds without taking any other action whatsoever.

**ANSWER: Defendants deny the allegations in this paragraph.**

96.     At approximately 10:14 PM, Nurse Bradley also walked past Dylan's cell. She took no action to investigate or assist Dylan.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

97.     Officer Wheeler performed her last round through the medical area that evening at approximately 10:34 PM. She once again observed Dylan, still face down, naked in the middle of the Cell, which had been significantly rearranged.

**ANSWER: Defendants deny the allegations in this paragraph.**

98.     Up to this point in time, she had witnessed:

a.      Dylan alert and moving around the Cell until 8:11 PM;

b.      Dylan face down on the ground for over 2 hours;

c.      Dylan lying naked for nearly an hour;

d.      Dylan flailing around;

e.      Dylan's Cell in disarray and the bed pulled away and moved to the middle of the cell; and

f.      Dylan foaming at the mouth.

**ANSWER: Defendants deny the allegations in this paragraph.**

99.     Despite all of these warning signs that something was wrong, neither Officer Wheeler nor Nurse Bradley stopped to even ask Dylan if he was okay.

**ANSWER: Defendants deny the allegations in this paragraph.**

100.     Defendants continued to leave Dylan naked, helpless, and dying until Officer Howie relieved Officer Wheeler.

**ANSWER: Defendants deny the allegations in this paragraph.**

101.     At approximately 11:04 PM, Officer Howie made a round through the medical area and observed Dylan naked and on the floor, in the same condition as Dylan was in for the past several hours.

**ANSWER: Defendants admit that Officer Howie performed a cell check at approximately 11:04 p.m. Defendants deny the remaining allegations in this paragraph.**

102.     Officer Howie entered the Cell and observed that Dylan was in distress.

**ANSWER: Defendants deny the allegations in this paragraph.**

103.     At that time, Dylan was unresponsive, foaming at the mouth, and his arms had become even more rigid.

**ANSWER: Defendants deny the allegations in this paragraph.**

104.     Immediately, Officer Howie requested that Nurse Bradley request medical assistance.

**ANSWER: Defendants deny the allegations in this paragraph.**

105.     Upon information and belief, this was the first time that medical staff was contacted regarding Dylan's medical condition.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

106.     Unfortunately for Dylan, due to the deliberate indifference of the Custodial Defendants and the Medical Defendants, Dylan's condition had progressed to the point that he could not recover from his serious medical condition.

**ANSWER: Defendants deny the allegations in this paragraph.**

107.     Paramedics arrived and transported Dylan to Memorial Medical Center.

**ANSWER: Defendants admit the allegations in this paragraph.**

108.    Dylan had been exhibiting obvious signs of distress while being on the ground for three hours and twenty-three minutes before receiving medical treatment.

**ANSWER: Defendants deny the allegations in this paragraph.**

109.    Dylan had been naked on the ground squirming and flailing for nearly two hours before receiving any medical treatment.

**ANSWER: Defendants deny the allegations in this paragraph.**

110.    Due to a lack of training and unclear policies by Sangamon County and ACH, no one contacted medical nor assisted Dylan during cell checks.

**ANSWER: Defendants deny the allegations in this paragraph.**

111.    Defendants knew or should have known that Dylan was having a medical emergency when he was placed in the medical Cell.

**ANSWER: Defendants deny the allegations in this paragraph.**

112.    Defendants knew that Dylan was having a medical emergency when he was laying on the ground for over three hours.

**ANSWER: Defendants deny the allegations in this paragraph.**

113.    Defendants knew that Dylan was having a medical emergency when he was naked, squirming, and flailing for almost two hours.

**ANSWER: Defendants deny the allegations in this paragraph.**

114.    As a result of Dylan not receiving any medical treatment in the Sangamon County Jail, Dylan died.

**ANSWER: Defendants deny the allegations in this paragraph.**

115.    Defendants failing to seek medical attention for Dylan was an egregious failure to intervene in a medical and/or physical crisis.

**ANSWER: Defendants deny the allegations in this paragraph.**

116.    Dylan would, unfortunately, be diagnosed with MRSA/meningitis and pass away from the infection on April 17, 2022.

**ANSWER: Defendants admit that Dylan passed away on April 17, 2022. Defendants deny the remaining allegations in this paragraph.**

117.    Dylan is now dead because of the decisions made by Defendants, done as a result of unconstitutional policies and inadequate training and lack thereof by Sangamon County and ACH.

**ANSWER: Defendants deny the allegations in this paragraph.**

118.    Dylan's death was caused by one or more of the following failures:

a.    Custodial Defendants and Medical Defendants failed to intervene with Dylan;

b.    Custodial Defendants failed to contact medical when Dylan exhibited erratic behavior;

c.    Upon information and belief, Custodial Defendants and Medical Defendants did not properly document Dylan's medical issues;

d.    the Medical Defendants failed to conduct an adequate health examination of Dylan, including but not limited to checking his temperature for MRSA and investigating his headaches after his complaints were made;

e.    the Medical Defendants failed to sufficiently communicate Dylan's medical condition to the officers;

f.    the Medical Defendants failed to treat Dylan when he exhibited symptoms of MRSA/meningitis, including but not limited to providing him with appropriate antibiotics;

g. the Custodial Defendants failed to consult medical personnel when they knew that Dylan was experiencing a medical emergency;

h. the Custodial Defendants failed to correctly identify Dylan's health state.

i. Sangamon County failed to develop clear policies and procedures to prevent what is detailed in the above subsections (a) through (i).

**ANSWER: Defendants deny the allegations in this paragraph.**

**COUNT 1:**
**Claims under 42 U.S.C. § 1983**
(Custodial Defendants and Medical Defendants)

119. All preceding paragraphs are re-alleged and incorporated herein.

**ANSWER: Defendants repeat their answers to the preceding paragraphs as if fully set forth herein.**

120. Plaintiff is entitled to relief against the Custodial Defendants and Medical Defendants under 42 U.S.C. § 1983 based on violation of the Fourteenth Amendment to the United States Constitution.

**ANSWER: Defendants deny the allegations in this paragraph.**

121. At all times materials, Dylan had a constitutionally protected right under the Fourteenth Amendment to the United States Constitution to receive necessary care while in the Sangamon County Jail and to have his serious medical needs timely and properly assessed and treated.

**ANSWER: Defendants admit Plaintiff had rights under the U.S. Constitution. Defendants deny the remaining allegations in this paragraph.**

122. The Custodial Defendants and Medical Defendants deliberately disregarded the immediate and serious threat to the well-being of persons in the Sangamon County Jail in need of

medical treatment and exhibited deliberate and callous indifference to serious medical needs by denying access to immediate and structured medical observation, assessment, and treatment necessary to treat serious medical needs and prevent suffering and death.

**ANSWER: Defendants deny the allegations in this paragraph.**

123.    The Custodial Defendants and Medical Defendants were aware that there were detainees confined in the Sangamon County Jail who suffered from severe medical needs and were at risk of injury and/or death. Despite this knowledge, the Custodial and Medical Defendants intentionally and knowingly failed to provide serious, ongoing case management and treatment for such inmates and failed to regularly monitor their healthcare needs.

**ANSWER: Defendants deny the allegations in this paragraph.**

124.    The Custodial Defendants and Medical Defendants knew at all times material to this action that there was a substantial risk that detainees with serious medical issues, left substantially untreated, could be seriously injured and/or die, that such injuries were reasonably foreseeable, and that the risk of injuries and/or death was imminent and immediate.

**ANSWER: Defendants deny the allegations in this paragraph.**

125.    The Custodial Defendants and Medical Defendants, upon information and belief, deliberately disregarded the immediate and serious threat to detainees' medical health and well-being and exhibited deliberate indifference and callous indifference to their serious medical needs by denying and unreasonably delaying access to competent healthcare to treat their serious medical issues.

**ANSWER: Defendants deny the allegations in this paragraph.**

126.    In light of the aforementioned, Dylan suffered from both an objectively and subjectively substantial risk of serious harm while under the care and custody of the Custodial

Defendants and Medical Defendants.

**ANSWER: Defendants deny the allegations in this paragraph.**

127.    The Custodial Defendants and Medical Defendants responded to this risk in an objectively and subjectively unreasonable manner.

**ANSWER: Defendants deny the allegations in this paragraph.**

128.    As a result of the Custodial Defendants and Medical Defendants disregard of and indifference to Dylan's constitutionally protected right to be provided with proper care, Dylan's medical needs were ignored, and it is more likely than not that the failures of the Custodial Defendants and Medical Defendants as alleged were the proximate cause of Dylan's death.

**ANSWER: Defendants deny the allegations in this paragraph.**

129.    As a direct and proximate result of the Custodial Defendants' and Medical Defendants' deliberate indifference to Dylan's serious medical needs, Dylan died on April 17, 2022.

**ANSWER: Defendants deny the allegations in this paragraph.**

WHEREFORE, Plaintiff prays for judgment as stated in the Prayer for Relief.

**ANSWER: Defendants deny Plaintiff is entitled to any relief.**

## COUNT 2:
## Wrongful Death Act, Pursuant to Illinois Law
(Custodial Defendants)

130.    All preceding paragraphs are re-alleged and incorporated herein.

**ANSWER: Defendants repeat their answers to the preceding paragraphs as if fully set forth herein.**

131.    Plaintiff, Starla Smith, is the Administrator or the Estate of Dylan Schlieper-Clark, and brings this action on behalf of Dylan's next of kin, through Donner Applewhite, Attorneys at Law, pursuant to the Wrongful Death Act, 740 ILCS 180/0.01 – 180/2.2.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

132.    The Custodial Defendants' actions and course of conduct occurred in their role and within the scope of their employment as jail officers at the Sangamon County Jail.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

133.    In their roles as police officers escorting Dylan to the Sangamon County Jail and jail officers at the Sangamon County Jail, the Custodial Defendants owed a duty to pretrial detainees, including Dylan, to ensure medical care when necessary to avoid injury or death.

**ANSWER: Defendants admit Dylan had rights protected by the U.S. Constitution. Defendants deny the remaining allegations in this paragraph.**

134.    The Custodial Defendants breached the aforesaid duty, in the following manner:

a.      willfully and wantonly failed to monitor or assess Dylan in order to address his serious and deteriorating health concerns;

b.      willfully and wantonly failed to communicate and document Dylan's deteriorating medical condition and the severity of his symptoms;

c.      willfully and wantonly failed to properly respond to Dylan's deteriorating medical condition in light of the increasing severity of his symptoms;

d.       willfully and wantonly failed to properly communicate to on-site medical providers or contact on-call, off-site ACH providers to report Dylan's deteriorating medical condition and the increasing severity of his symptoms;

e.       willfully and wantonly failed to recognize that the severity of Dylan's symptoms would not be properly managed in the Sangamon County Jail;

f.       willfully and wantonly failed to recognize that the severity of Dylan's symptoms should be managed in a hospital setting by a qualified medical provider; and

g.       willfully and wantonly failed to call emergency transport or transfer Dylan to a hospital to receive timely and necessary treatment as he became critically ill.

**ANSWER: Defendants deny the allegations in this paragraph.**

135.    As a direct and proximate result of one or more of the aforesaid willful or wanton acts or omissions, Dylan died on April 17, 2022.

**ANSWER: Defendants deny the allegations in this paragraph.**

136.    As a direct and proximate result of Dylan's death, his next of kin have lost and will continue to lose a substantial pecuniary support, consortium, society companionship, and the love and affection of their family member, and are entitled to recovery under this Act.

**ANSWER: Defendants deny the allegations in this paragraph.**

WHEREFORE, Plaintiff, Starla Smith, as the Administrator or the Estate of Dylan Schlieper-Clark, deceased, prays that this Court enter a judgment against the Custodial Defendants in such sums as will fairly and justly compensate the next of kin for the substantial loss sustained as a result of the death of Dylan Schlieper-Clark, and for such other and further relief, including equitable relief, as the Court deems just and appropriate, together with her cost of suit.

**ANSWER: Defendants deny Plaintiff is entitled to any relief.**

**COUNT 3:**
**Survival Act Claim, Pursuant to Illinois Law**
(Custodial Defendants)

137. All preceding paragraphs are re-alleged and incorporated herein.

**ANSWER: Defendants repeat their answers to the preceding paragraphs as if fully set forth herein.**

138. As a direct and proximate result of the willful and wanton conduct of the Custodial Defendants, Dylan suffered substantial pain and discomfort prior to his death and suffered severe emotional distress, and his Estate has incurred medical bills and funeral expenses.

**ANSWER: Defendants deny the allegations in this paragraph.**

139. This action and the damages sought by the Plaintiff are authorized by the Illinois Survival Act, 755 ILCS 5/27-6.

**ANSWER: Defendants deny the allegations in this paragraph.**

WHEREFORE, Plaintiff, Starla Smith, as the Administrator or the Estate of Dylan Schlieper-Clark, deceased, prays that this Court enter a judgment against the Custodial Defendants in such sums as will fairly and justly compensate the Estate of Dylan Schlieper-Clark for the injuries and damages sustained by Dylan Schlieper-Clark prior to his death, and for such other and further relief, including equitable relief, as the Court deems just and appropriate, together with her cost of suit.

**ANSWER: Defendants deny Plaintiff is entitled to any relief.**

**COUNT 4:**
**Wrongful Death Act, Pursuant to Illinois Law**
(Sheriff Campbell and Sangamon County)

140. All preceding paragraphs are re-alleged and incorporated herein.

**ANSWER: Defendants repeat their answers to the preceding paragraphs as if fully set forth herein.**

141.    Plaintiff, Starla Smith, is the Administrator or the Estate of Dylan Schlieper-Clark, and brings this action on behalf of Dylan's next of kin, through Donner Applewhite, Attorneys at Law, pursuant to the Wrongful Death Act, 740 ILCS 180/0.01 – 180/2.2.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

142.    At all times relevant to this Complaint, Sheriff Campbell employed the Custodial Defendants, excluding Officer Wayda and Officer Buscher, and is liable for the conduct of his employees.

**ANSWER: Defendants deny the allegations in this paragraph.**

143.    At all relevant times, Sheriff Campbell and Sangamon County each had a duty to exercise care in their interaction with the decedent and a duty to refrain from willful and wanton conduct in their interaction with him.

**ANSWER: Defendants deny the allegations in this paragraph.**

144.    At the time and place alleged, Sheriff Campbell and Sangamon County, by and through the acts of their agents and/or employees, breached their duty to the decedent, Dylan Schlieper-Clark, by acting in an intentional, willful and wanton manner, negligent and/or in utter disregard for the decedent's safety in one or more of the following respects:

a.      failed to provide medical care to the decedent;

b.      failed to summon medical care for the decedent;

c.      failed to take reasonable action(s) to provide medical care to the decedent;

d.      failed to take reasonable action(s) to summon medical care for the decedent;

e.      ignored the decedent's need for medical care;

f.      unreasonably delayed providing medical care to the decedent;

g.      unreasonably delayed summoning medical care to the decedent;

h.      unreasonably delayed taking reasonable action(s) to provide medical care to the decedent;

i.      unreasonably delayed taking reasonable action(s) to summon medical care for the decedent;

j.      failed to summon paramedic and/or other medical professionals in a timely fashion to administer medical treatment to the decedent; and

k.      were otherwise willful and wanton and/or negligent.

**ANSWER: Defendants deny the allegations in this paragraph.**

145.    As a proximate result of one or more of the aforesaid intentional and/or willful and wanton and/or negligent acts and/or omissions, the decedent, Dylan Schlieper-Clark, sustained injuries which resulted in his death.

**ANSWER: Defendants deny the allegations in this paragraph.**

146.    Dylan left surviving him, as his next of kin, his mother, Starla Smith, his father, David Clark, and his siblings, Samantha Williams, Stephanie Williams, Heaven Piercy and Hailey Piercy.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

147.    By reason of Dylan's death, his next of kin have suffered grief and been deprived of the society, love, affection and companionship of Dylan Schlieper-Clark.

**ANSWER: Defendants deny the allegations in this paragraph.**

WHEREFORE, Plaintiff, Starla Smith, as the Administrator or the Estate of Dylan Schlieper-Clark, deceased, prays that this Court enter a judgment against Sheriff Campbell and Sangamon County in such sums as will fairly and justly compensate the next of kin for the substantial loss sustained as a result of the death of Dylan Schlieper-Clark, and for such other and further relief, including equitable relief, as the Court deems just and appropriate, together with her cost of suit.

**ANSWER: Defendants deny Plaintiff is entitled to any relief.**

**COUNT 5:**
**Survival Act Claim, Pursuant to State Law**
(Sheriff Campbell and Sangamon County)

148.    All preceding paragraphs are re-alleged and incorporated herein.

**ANSWER: Defendants repeat their answers to the preceding paragraphs as if fully set forth herein.**

149.    As a direct and proximate result of the reckless or deliberate indifference of the Custodial Defendants, Dylan suffered substantial pain and discomfort prior to his death and suffered severe emotional distress and his Estate incurred medical bills and funeral expenses.

**ANSWER: Defendants deny the allegations in this paragraph.**

150.    At all relevant times, Sheriff Campbell and Sangamon County, by and through the acts of their agents and/or employees, each had a duty to exercise care in their interaction with the decedent, Dylan Schlieper-Clark, and a duty to refrain from willful and wanton conduct in their interaction with the decedent.

**ANSWER: Defendants deny the allegations in this paragraph.**

151.    At the time and place alleged, Sheriff Campbell and Sangamon County, by and through the acts of their agents and/or employees, breached their duty to the decedent, Dylan

Schlieper-Clark, by acting in an intentional, willful and wanton manner, negligent and/or in utter disregard for the decedent's safety in one or more of the following respects:

    a.    failed to provide medical care to the decedent;

    b.    failed to summon medical care for the decedent;

    c.    failed to take reasonable action(s) to provide medical care to the decedent;

    d.    failed to take reasonable action(s) to summon medical care for the decedent;

    e.    ignored the decedent's need for medical care;

    f.    unreasonably delayed providing medical care to the decedent;

    g.    unreasonably delayed summoning medical care to the decedent;

    h.    unreasonably delayed taking reasonable action(s) to provide medical care to the decedent;

    i.    unreasonably delayed taking reasonable action(s) to summon medical care for the decedent;

    j.    failed to summon paramedic and/or other medical professionals in a timely fashion to administer medical treatment to the decedent; and

    k.    were otherwise willful and wanton and/or negligent.

**ANSWER: Defendants deny the allegations in this paragraph.**

152.    As a proximate result of one or more of the aforesaid intentional and/or willful and wanton and/or negligent acts and/or omissions, the decedent, Dylan Schlieper-Clark, sustained injuries of a personal and pecuniary nature prior to his death, and, had he survived, would have been entitled to bring this action for damages, and this action has survived him pursuant to the provisions of 755 ILCS 5/27-2.

**ANSWER: Defendants deny the allegations in this paragraph.**

153.    This action and the damages sought by the Plaintiff are authorized by the Illinois Survival Act, 755 ILCS 5/27-6.

**ANSWER: Defendants deny the allegations in this paragraph.**

WHEREFORE, Plaintiff, Starla Smith, as the Administrator or the Estate of Dylan Schlieper-Clark, deceased, prays that this Court enter a judgment against Sheriff Campbell and Sangamon County in such sums as will fairly and justly compensate the Estate of Dylan Schlieper-Clark for the injuries and damages sustained by Dylan Schlieper-Clark prior to his death, and for such other and further relief, including equitable relief, as the Court deems just and appropriate, together with her cost of suit.

**ANSWER: Defendants deny Plaintiff is entitled to any relief.**

**COUNT 6:**
**Indemnification Claim pursuant to 745 ILCS 10/9-102**
(Sheriff Campbell and Sangamon County)

154.    The acts of the Custodial Defendants described in the above claims, were willful and wanton, and committed in the scope of employment.

**ANSWER: Defendants deny the allegations in this paragraph.**

155.    At all relevant times, the Custodial Defendants were acting under color of law.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

156.    Sangamon County is joined in this action pursuant to *Carver v. Sheriff of LaSalle County*, 324 F.3d 947 (7th Cir. 2003).

**ANSWER: Defendants deny the allegations in this paragraph.**

157.    Sheriff Campbell, as the Sheriff of Sangamon County, Illinois, pursuant to Illinois law, including but not limited to the provisions found in 55 ILCS 5/3-6015, 55 ILCS 5/3-6016 and

745 ILCS 10/9-102, is liable as principal for all torts committed by his employees/agents and must indemnify them.

**ANSWER: Defendants deny the allegations in this paragraph.**

158. Sangamon County, pursuant to Illinois law, including but not limited to the provisions found in 55 ILCS 5/5-1002 and 745 ILCS 10/9-102, must indemnify Sheriff Campbell, as the Sheriff of Sangamon County, Illinois and the Custodial Defendants.

**ANSWER: Defendants deny the allegations in this paragraph.**

WHEREFORE, Plaintiff Starla Smith, as the Administrator or the Estate of Dylan Schlieper-Clark, deceased, pursuant to 55 ILCS 5/3-6015, 55 ILCS 5/3-6016, 55 ILCS 5/5-1002 and 745 ILCS 10/9-102 and *Carver v. Sheriff of LaSalle County*, 324 F.3d 947 (7th Cir. 2003), demands judgment against Defendants Sheriff Campbell and Sangamon County, in the amounts awarded to the Plaintiff against Sangamon County, Sheriff Campbell, and the Custodial Defendants, and for whatever additional relief this Court deems just and appropriate.

**ANSWER: Defendants deny Plaintiff is entitled to any relief.**

## COUNT 7:
## State Law Claim – Survival – Medical Malpractice
(Medical Defendants)

159. All preceding paragraphs are re-alleged and incorporated herein.

**ANSWER: Defendants repeat their answers to the preceding paragraphs as if fully set forth herein.**

160. Plaintiff, Starla Smith, is the Administrator or the Estate of Dylan Schlieper-Clark, and brings this action pursuant to the Survival Act, 755 ILCS 5/27-6.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

161.    Defendant ACH, acting through its employees, the Medical Defendants, owed a duty to exercise reasonable care according to the conditions known to them or that, through reasonable care should have been known to them, in accordance with standards of care in the community of nurses and physicians.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

162.    The foregoing nurses and breached the aforesaid duty to Dylan to exercise reasonable care according to the conditions known to them or that, through reasonable care, should have been known to them, in accordance with the standards of their respective professional communities.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

163.    Upon information and belief, Nurse Bradley was negligent and deviated from the standard of care in one or more of the following ways:

a.    negligently and carelessly failed to adequately review Dylan's history in order to properly assess the severity and duration of his symptoms during his intake;

b.    negligently and carelessly failed to conduct any follow-up to ensure that Dylan was receiving adequate care after having been told and observing that Dylan was actively deteriorating and experiencing serious medical symptoms;

c.    negligently and carelessly failed to personally assess or provide for a personal assessment by a qualified physician after Dylan's medical condition worsened;

d.    negligently and carelessly failed to personally assess Dylan's medical condition after receiving notice of his serious medical needs;

e.    negligently and carelessly failed to instruct the nursing staff on-site at the Sangamon County Jail to seek emergency medical attention to treat Dylan's serious medical needs;

f.    negligently and carelessly failed to instruct the nursing staff to transport Dylan to the hospital;

g.    negligently and carelessly failed to recognize that Dylan's deteriorating medical condition, as evidenced by the severity of his symptoms, could not be properly managed outside a hospital;

h.    negligently and carelessly failed to properly call for emergency transport or obtain other emergency care for Dylan in order for him to receive timely and necessary treatment as he became critically ill.

i.    upon information and belief, failed to adequately document in the medical records or otherwise communicate to physicians, other medical professionals, or on-site nursing staff the nature and extent of Dylan's serious medical needs; and

j.    failed to adequately monitor or document Dylan's medical condition after he was placed in the medical holding cell, including monitoring his vital signs.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

164.    Upon information and belief, Administrator Lehmann was negligent and deviated from the standard of care in one or more of the following ways:

a.    negligently and carelessly failed to adequately document in the medical records or otherwise communicate to physicians or on call nursing staff the nature and extent of Dylan's serious medical needs;

b.      negligently and carelessly failed to adequately monitor or document Dylan's medical condition which necessitated being placed in a medical cell, including monitoring his vital signs;

c.      negligently and carelessly failed to properly screen Dylan in order to anticipate the serious medical needs he would experience while in the medical Cell;

d.      negligently and carelessly failed to properly assess Dylan to evaluate the severity of his symptoms;

e.      negligently and carelessly failed to monitor Dylan in order to treat his symptoms;

f.      negligently and carelessly failed to communicate and document Dylan's deteriorating medical condition and the severity of his symptoms;

g.      negligently and carelessly failed to properly respond to Dylan's deteriorating medical condition in light of the increasing severity of his symptoms;

h.      negligently and carelessly failed to properly communicate to ACH medical providers or otherwise arrange for appropriate medical care to report Dylan's deteriorating medical condition and the increasing severity of his symptoms;

i.      negligently and carelessly failed to recognize that Dylan's deteriorating medical condition, as evidenced by the increasing severity of his symptoms, could not be properly managed outside of a hospital; and

j.      negligently and carelessly failed to properly call for emergency transport or obtain other emergency care for Dylan in order for him to receive timely and necessary treatment as he became critically ill.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

165. The injuries and death suffered by Dylan were proximately caused by the negligence, breach of duty of the standard of care, neglect, default, and /or willful and wanton conduct of ACH and the Medical Defendants as described above.

**ANSWER: Defendants deny the allegations in this paragraph.**

166. As a direct and proximate result of the aforesaid, Dylan suffered injuries of a personal and pecuniary nature, including, but not limited to, pain and suffering, and physical and emotional trauma, all of which continued until his death and contributed to cause his death on April 17, 2022, and had he survived he would have been entitled to bring an action for the damages and said action has survived him pursuant to the Illinois Survival Act.

**ANSWER: Defendants deny the allegations in this paragraph.**

WHEREFORE, Plaintiff, Starla Smith, as the Administrator or the Estate of Dylan Schlieper-Clark, deceased, prays that this Court enter a judgment against ACH and the Medical Defendants in such sums as will fairly and justly compensate the Estate of Dylan Schlieper-Clark for the injuries and damages sustained by Dylan Schlieper-Clark prior to his death, and for such other and further relief, including equitable relief, as the Court deems just and appropriate, together with her cost of suit.

**ANSWER: Defendants deny Plaintiff is entitled to any relief.**

**COUNT 8:**
**State Law Claim – Wrongful Death – Healing Art Malpractice**
(Advanced Correctional Healthcare and Medical Defendants)

167. All preceding paragraphs are re-alleged and incorporated herein.

**ANSWER: Defendants repeat their answers to the preceding paragraphs as if fully set forth herein.**

168. Plaintiff, Starla Smith, is the Administrator or the Estate of Dylan Schlieper-Clark, and brings this action pursuant on behalf of Dylan's next of kin pursuant to the Wrongful Death Act, 740 ILCS 180/1.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

169. Defendant ACH, acting through its employees, the Medical Defendants, owed a duty to exercise reasonable care according to the conditions known to them or that, through reasonable care should have been known to them, in accordance with standards of care in the community of nurses and physicians.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

170. The foregoing nurses breached the aforesaid duty to Dylan to exercise reasonable care according to the conditions known to them or that, through reasonable care, should have been known to them, in accordance with the standards of their respective professional communities.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

171. Upon information and belief, Nurse Bradley was negligent and deviated from the standard of care in one or more of the following ways:

a. negligently and carelessly failed to adequately review Dylan's history in order to properly assess the severity and duration of his symptoms during his intake;

b. negligently and carelessly failed to conduct any follow-up to ensure that Dylan was receiving adequate care after having been told and observing that Dylan was actively deteriorating and experiencing serious medical symptoms;

c. negligently and carelessly failed to personally assess or provide for a personal assessment by a qualified physician after Dylan's medical condition worsened;

d. negligently and carelessly failed to personally assess Dylan's medical condition after receiving notice of his serious medical needs;

e. negligently and carelessly failed to instruct the nursing staff on-site at the Sangamon County Jail to seek emergency medical attention to treat Dylan's serious medical needs;

f. negligently and carelessly failed to instruct the nursing staff to transport Dylan to the hospital;

g. negligently and carelessly failed to recognize that Dylan's deteriorating medical condition, as evidenced by the severity of his symptoms, could not be properly managed outside a hospital;

h. negligently and carelessly failed to properly call for emergency transport or obtain other emergency care for Dylan in order for him to receive timely and necessary treatment as he became critically ill.

i. upon information and belief, failed to adequately document in the medical records or otherwise communicate to physicians, other medical professionals, or on-site nursing staff the nature and extent of Dylan's serious medical needs; and

j. failed to adequately monitor or document Dylan's medical condition after he was placed in the medical holding cell, including monitoring his vital signs.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

172.    Upon information and belief, Administrator Lehmann was negligent and deviated from the standard of care in one or more of the following ways:

a. negligently and carelessly failed to adequately document in the medical records or otherwise communicate to physicians or on call nursing staff the nature and extent of Dylan's serious medical needs;

b. negligently and carelessly failed to adequately monitor or document Dylan's medical condition which necessitated being placed in a medical cell, including monitoring his vital signs;

c. negligently and carelessly failed to properly screen Dylan in order to anticipate the serious medical needs he would experience while in the medical Cell;

d. negligently and carelessly failed to properly assess Dylan to evaluate the severity of his symptoms;

e. negligently and carelessly failed to monitor Dylan in order to treat his symptoms;

f. negligently and carelessly failed to communicate and document Dylan's deteriorating medical condition and the severity of his symptoms;

g. negligently and carelessly failed to properly respond to Dylan's deteriorating medical condition in light of the increasing severity of his symptoms;

h. negligently and carelessly failed to properly communicate to ACH medical providers or otherwise arrange for appropriate medical care to report Dylan's deteriorating medical condition and the increasing severity of his symptoms;

    i.   negligently and carelessly failed to recognize that Dylan's deteriorating medical condition, as evidenced by the increasing severity of his symptoms, could not be properly managed outside of a hospital; and

    j.   negligently and carelessly failed to properly call for emergency transport or obtain other emergency care for Dylan in order for him to receive timely and necessary treatment as he became critically ill.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

173.    The injuries and death suffered by Dylan were proximately caused by the negligence, breach of duty of the standard of care, neglect, default, and /or willful and wanton conduct of the Medical Defendants as described above.

**ANSWER: Defendants deny the allegations in this paragraph.**

174.    As a direct and proximate result of Dylan's death, his next of kin, have lost and will continue to lose a substantial pecuniary support, consortium, society companionship, and the love and affection of their family member, and are entitled to recovery under this Act.

**ANSWER: Defendants deny the allegations in this paragraph.**

WHEREFORE, Plaintiff, Starla Smith, as the Administrator or the Estate of Dylan Schlieper-Clark, deceased, prays that this Court enter a judgment against ACH and the Medical Defendants in such sums as will fairly and justly compensate the Estate of Dylan Schlieper-Clark for the injuries and damages sustained by Dylan Schlieper-Clark prior to his death, and for such other and further relief, including equitable relief, as the Court deems just and appropriate, together with her cost of suit.

**ANSWER: Defendants deny Plaintiff is entitled to any relief.**

**COUNT 9:**
**State Law Claim – Respondeat Superior**
(Advanced Correctional Healthcare and Medical Defendants)

175.    All preceding paragraphs are re-alleged and incorporated herein.

**ANSWER: Defendants repeat their answers to the preceding paragraphs as if fully set forth herein.**

176.    The Medical Defendants were each an employee or agent of ACH. Each of the Medical Defendants was acting within the scope of his or her employment or agency with ACH, and his or her acts or omissions are directly chargeable to his or her employer or principal, ACH, under state law pursuant to *respondeat superior*.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

WHEREFORE, Plaintiff, Starla Smith, as the Administrator or the Estate of Dylan Schlieper-Clark, deceased, prays that this Court enter a judgment against ACH in such sums as will fairly and justly compensate the Estate of Dylan Schlieper-Clark for the injuries and damages sustained by Dylan Schlieper-Clark prior to his death, and for such other and further relief, including equitable relief, as the Court deems just and appropriate, together with her cost of suit.

**ANSWER: Defendants deny that Plaintiff is entitled to any relief.**

**Damages**

The Estate of Dylan Schlieper-Clark has sustained the following damages:

1.    funeral and burial expenses incurred as a result of decedent's death that have become a charge against his Estate or that were paid on his behalf;

2.    loss of prospective net Estate accumulations;

3.    decedent's conscious pain and suffering and the inherent value of life;

4.     pre- and post-judgment interest; and

5.     loss of earnings from Dylan from the date of his death, less lost support of his survivors excluding contributions in kind with interest.

Accordingly, Plaintiff respectfully requests that the Court award Plaintiff the aforementioned damages, any and all other compensatory damages suffered by Plaintiff, punitive damages, attorneys' fees and costs pursuant to 42 U.S.C. § 1988, and such other and further relief as the Court deems just and equitable.

**ANSWER: Defendants deny that Plaintiff is entitled to any relief.**

## Prayer for Relief

WHEREFORE, the Plaintiff seeks judgment as follows:

A.     compensatory damages against each of the Defendants herein;

B.     punitive damages against Defendants sued individually;

C.     attorneys' fees pursuant to 42 U.S.C. § 1988 and costs of litigation;

D.     a trial by jury on all issues so triable; and

E.     such other and further relief as the Court deems just and proper.

**ANSWER: Defendants deny that Plaintiff is entitled to any relief.**

## Jury Demand

**1.  Defendants demand trial by jury.**

## Affirmative Defenses

1.     Qualified immunity provides that "governmental officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Lunini v. Grayeb*, 395 F.3d 761, 768 (7th Cir. 2005), citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Unless it has been authoritatively decided that certain conduct is

forbidden, a public official is entitled to qualified immunity. *Rice v. Burks*, 999 F.2d 1172, 1174 (7th Cir. 1993). Moreover, the Supreme Court has recently stated that due to the fact-intensive nature of excessive force claims in particular, "police officers are entitled to qualified immunity unless existing precedent 'squarely governs' the specific facts at issue. *Kisela v. Hughes*, 138 S. Ct. 1148, 1153 (2018) (quoting *Mullenix v. Luna*, 136 S. Ct. 305, 309 (2015))

Here, at all times relevant to Plaintiff's claims, Defendants acted in good faith in the performance of their official duties and without violating Dylan's clearly established constitutional rights of which a reasonable person would have known. Defendants actions were not objectively unreasonable in light of the facts and circumstances confronting them. As a result, Defendants are protected from suit by the doctrine of qualified immunity.

2.      Each Defendant lacks personal involvement, as to some or all of the conduct alleged herein, and a Defendant cannot be held liable under the doctrine of *respondeat superior* for the actions or inactions of others with respect to Plaintiff's allegations.

3.      Defendant, at all relevant times, acted in good faith and in accordance with established law and, therefore, is entitled to good faith immunity. *Janus v. Am. Fed'n of State, Cty. & Mun. Emps., Council 31; AFL-CIO*, 942 F.3d 352 (7th Cir. 2019).

4.      At all relevant times herein, Defendants conduct was a good faith exercise of their discretionary duties, and their actions and discretionary duties were unique to his particular public office. Therefore, Defendants are entitled to public official immunity on Plaintiff's state law claims. *Falk v. Martel*, 210 Ill.App.3d 557, 561 (1991).

5.      Any alleged injury or damage sustained by Dylan was the direct and proximate result of his own negligence, carelessness, intentional acts, drug use, and comparative fault contributing thereto.

      6.      Defendants are entitled to immunity from Plaintiff's state law claims pursuant to the Tort Immunity Act. Section 2-201 of the Tort Immunity Act also provides absolute immunity. Section 2–201 provides:

> Except as otherwise provided by Statute, a public employee serving in a position involving the determination of policy or the exercise of discretion is not liable for any injury resulting from his act or omission in determining policy when acting in the exercise of such discretion, even though abused.

Since these sections contains no exceptions for willful and wanton conduct, the immunity is absolute. *Ries v. City of Chicago*, 242 Ill. 2d 205, (2011); *McGee v. Macon County Sheriff's Department*, 473 F. Supp. 3d 818 (C.D. Ill. 2020)

                       Respectfully Submitted,

                       COUNTY OF SANGAMON, et al.,
                       Defendants

                       By: /s/ Dylan P. Grady
                       One of their Attorneys
                       Dylan P. Grady, # 6309120
                       BROWN, HAY & STEPHENS, LLP
                       205 S. Fifth Street, Suite 1000
                       P.O. Box 2459
                       Springfield, IL 62705-2459
                       (217)-544-8491
                       dgrady@bhslaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that on July 29, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Thomas R. Applewhite
909 Olive Street, Suite 1110
St. Louis, MO 63101
Tom.applewhite@da-lawfirm.com

Peter Jennetten
James D. VanRheeden
Quinn Johnston
227 N E Jefferson Avenue
Peoria, IL 60602-1211
pjennetten@quinnjohnston.com
jvanrheeden@quinnjohnston.com

Steven C. Rahn
Nicholas Correll
Senior Assistant Corporation Counsel
City of Springfield
Room 313 Municipal Center East
800 East Monroe Street
Springfield, IL 62701-1689
Steven.rahn@springfield.il.us
Nicholas.correll@Springfield.il.us

J. Thaddeus Eckenrode
Lisa H. Howe
Eckenrode-Maupin
11477 Olde Cabin Road, Suite 110
St. Louis, MO 63141
jte@eckenrode-law.com
lhh@eckenrode-law.com

Under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned certifies that the statements set forth in this instrument are true and correct, except as to matters therein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that he verily believes the same to be true.

s/ Dylan P. Grady