E-FILED
Friday, 12 June, 2026 03:37:50 PM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

STARLA SMITH, as Administrator of the Estate of Dylan Schlieper-Clark, and on behalf of his Next of Kin,

Plaintiff,

vs.

Case No. 23-cv-03137

COUNTY OF SANGAMON, et al., CHRISTINA WHEELER, Corrections Officer, COREY HILLEN, Corrections Officer, BRITNEY HICKS, Probation Officer, CHRIS UNTHANK, Corrections Officer, COLLEEN KEROUAC, Sergeant, TRACY BERGAE, Sergeant, BRAD MEYER, Corrections Officer, DAVE FISHER, Corrections Officer, TOM ANSELL, Corrections Officer, TAMMY POWELL, Sergeant, JACK CAMPBELL, Sangamon County Sheriff, WILLIAM SMITH, Assistant Jail Superintendent, JACOB WAYDA, Arresting Officer, CLIFFORD BUSCHER, Arresting Officer, EARL GRIGSBY, Sergeant, ADVANCED CORRECITONAL HEALTHCARE, INC., CARRIE BRADLEY, LPN, and SARAH LEHMANN, Health Services Administrator,

Defendants.

**<u>MOTION FOR SUMMARY JUDGMENT</u>**

Now come Defendants, ADVANCED CORRECTIONAL HEALTHCARE, INC., CARRIE BRADLEY, LPN, and SARAH LEHMANN, by their attorneys, QUINN JOHNSTON, and for their Motion for Summary Judgment, state as follows:

## I. INTRODUCTION

In this matter, Plaintiff alleges that Defendants Bradley and Lehman were objectively unreasonable and negligent in their care, or lack of care, for Dylan Schleiper-Clark during her incarceration at the Sangamon County Jail on 04/13/22 and 04/14/22 thereby leading to her death of bacterial meningitis while in the hospital on 04/17/22. In connection with these allegations, Plaintiff brings a Section 1983 claim against Nurses Bradley and Lehmann, state medical malpractice claims against Nurses Bradley and Lehmann under the Survival Act and under the Wrongful Death Act, and a state *respondeat superior* claim against Advanced Correctional Healthcare.

However, the evidence shows that Nurses Bradley and Lehmann were completely unaware (to no fault of their own) of Dylan's complaints, symptoms, or need for medical care at any time prior to 11:15pm on 04/14/22 when Nurse Bradley was asked to see Dylan. Thereafter, Nurse Bradley responded immediately, saw Dylan, and requested that he receive emergency medical transport by ambulance. The evidence conclusively shows that, under the circumstances presented, both nurses acted appropriately. Plaintiff fails to put forth any evidence of objectively unreasonable care, fails to put forth proper expert opinion as to the applicable standard of care, fails to put forth any evidence of a breach of the standard of care under the circumstances presented. As such, summary judgment must be entered for these Defendants and against Plaintiff on all counts of the Third Amended Complaint.

## II. STATEMENT OF THE UNDISPUTED MATERIAL FACTS

**Exhibits Cited**

Exhibit 1 - Deposition of Dr. Wessely (plaintiff's retained expert) with exhibits.

Exhibit 2 – Deposition of Carrie Bradley, with exhibits

Exhibit 3 – Deposition of Sarah Lehman

Exhibit 4 – Deposition of Christina Wheeler

Exhibit 5 – Medical Records from Sangamon County Jail (bates as Medical DEF 000001-000015)

Exhibit 6 – Expert Report of Dr. Wessely

Exhibit 7 – CV of Dr. Wessely

Exhibit 8 - Documents from Plaintiff's Initial Disclosures (bates as Smith 0011, 0279-0284)

Exhibit 9 – Deposition of CO Timothy Howie

1. At the times relevant to Plaintiff's Third Amended Complaint, Dylan Schlieper-Clark was incarcerated at the Sangamon County Jail (hereafter "SCJ") as a pretrial detainee. Third Amended Complaint [110] (hereafter "TAC") at ¶17.

2. Plaintiff filed her Third Amended Complaint [110] on 07/08/24 bringing constitutional claims against Defendants Bradley and Lehmann under Section 1983, state law claims for medical malpractice against Defendants Bradley and Lehmann under the Survival Act and under the Wrongful Death Act, and a state law respondeat superior claim against Advanced Correctional Healthcare (ACH) arising from the alleged conduct of Bradley and Lehmann.

3. Plaintiff alleges that Defendants Bradley and Lehmann were negligent and / or objectively unreasonable in that she alleges that these Defendants failed to provide proper care to Dylan during her time at the Sangamon County Jail. TAC.

4. At the times relevant to this litigation, Sarah Lehmann was working at SCJ as the Health Services Administrator. She is a licensed practical nurse (LPN). TAC at ¶37.

5. Dylan Schlieper was at the Sangamon County Jail from the time that she was booked and placed in DUI observation on the evening of April 13, 2022, until she was taken to the hospital by ambulance around 23:30 on April 14. *See* Documents from Plaintiff's Initial Disclosures, attached hereto as *Exhibit 8*.

6. At the times relevant to this litigation, Carrie Bradley was working at SCJ as an LPN. As relevant to this case, she worked from 5:00pm on 04/13/22 to 5:45am on 04/14/22, and then again from 5:00pm on 04/14/22 to 5:45am on 04/15/22. *See* The Deposition of Carrie Bradley, attached hereto as *Exhibit 2* at p. 30 and deposition exhibit 21 at ¶8 (answers to interrogatories).

7. Upon information and belief, Nurse Lehman worked at SCJ from roughly 6:00pm to 8:15pm on 04/14/22.

8. At SCJ at the times relevant to this litigation, the nurses were not responsible for performing "cell checks". *See Exhibit 2* at p. 31, 42; and Deposition of Sarah Lehmann, attached hereto as *Exhibit 3* at p. 28. Routine cell checks are performed at 30-minute intervals by correctional officers. *See* Deposition of CO Wheeler, attached hereto as *Exhibit 9*.

9. At SCJ at the times relevant to this litigation, the nurses were not responsible for monitoring inmates placed in medical cells for "nonmedical" reasons. *Exhibit 2* at p. 47; and *Exhibit 3* at 29.

10. On 04/13/22, Dylan was arrested by officers of the Springfield Police Department and taken to SCJ. *Dkt. No. [110]*. She was booked into the Jail and placed into a DUI observatory cell. *Id.*

11. Dylan was housed in the booking area in a DUI Observation or booking cell from intake until the evening of 04/14/22. *Exhibit 8* at SMITH 0011.

12. At approximately 6:14pm on 04/14/22, Dylan was transferred to Medical Cell 2. *Id.* Dylan was not placed in Medical Cell 2 for any medical reason or in connection with any medical concerns. Rather, she was placed in Medical Cell 2 solely in connection with her status as a transgender individual. *Id.*; Deposition of Christina Wheeler, attached hereto as *Exhibit 4* at pp. 16-18.

13. When Dylan was brought to Medical Cell 2, Nurse Bradley was expressly informed by corrections that Dylan was being housed in that cell for nonmedical reasons. *Exhibit 2* at p. 46.

14. Neither Nurse Bradley and Nurse Lehman were expected to do any cell checks on Dylan, and they did not make any observations of Dylan or have any interactions with her until approximately 11:15pm.

15. Upon information and belief, Nurse Lehman finished her shift and left the jail at 20:15. At approximately 11:15pm on 04/14/22, Nurse Bradley was asked to see Dylan by CO Howie. *See* Medical Records, attached hereto as *Exhibit 5* at Medical DEF 3

– 4; and *Exhibit 2* at p. 47. Nurse Bradley responded to Dylan's cell immediately. She attempted to get Dylan to communicate and to position her to take vitals, but Dylan was less than fully responsive and was uncooperative as a result. *Id.* Based on her observations of Dylan at that time, Nurse Bradley immediately informed staff that an ambulance was needed for transport to the emergency department. *Id.* Emergency medical services arrived at roughly 11:35pm and assumed care for Dylan. *Id.* Dylan passed away at the hospital on 04/17/22 as a result of bacterial meningitis. *Dkt. No. [110].*

16. After receiving a request to see Dylan at roughly 11:15pm on 04/14/22, Nurse Bradley responded immediately and provided care that fell within the applicable standard of care for an LPN under the circumstances. *Exhibit 2* at p. 47.

17. Prior to 11:15pm on 04/14/22, Nurse Bradley was unaware of Dylan having any medical complaints, symptoms, conditions, or needs. *Exhibit 2* at pp. 46 – 47.

18. Prior to 11:15pm on 04/14/22, Nurse Bradley had not been asked to see Dylan nor was she asked to provide any assessment of her medical condition. *Id.*

19. Prior to 11:15pm on 04/14/22, Nurse Bradley had no direct interactions with Dylan. *Id.*

20. Prior to 11:15pm on 04/14/22, Nurse Bradley had not observed any conditions, symptoms, or behavior of Dylan's that led her to believe that she needed medical care. *Id.*

21. Nurse Lehmann was unaware of Dylan having any medical complaints, symptoms, conditions, or needs at any time relevant to this litigation. *Exhibit 3* at pp. 28-29.

22. During the times relevant to this litigation Nurse Lehmann was never asked to see Dylan nor was she asked to provide any assessment of her medical condition. *Id.*

23. During the times relevant to this litigation Nurse Lehmann had no direct interactions with Dylan. *Id.*

24. During the times relevant to this litigation Nurse Lehmann did not observe any conditions, symptoms, or behavior of Dylan's that led her to believe that she needed medical care. *Id.*

25. A nurse or physician does not owe a duty of care to an individual who is not their patient. *Exhibit 1* at 118.

26. A person does not become a patient until the nurse or doctor "picks up the chart" and becomes affirmatively involved in the person's care. *Exhibit 1* at 118.

## III. ARGUMENT

### A. Summary Judgment Standard

Summary judgment is required if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23 (1986). The Court considers the entire evidentiary record in the light most favorable to the nonmovant. *Ball v. Kotter,* 723 F.3d 813, 821 (7th Cir. 2013). To defeat summary judgment, a nonmovant must produce more

than "a mere scintilla of evidence" and come forward with "specific facts showing that there is a genuine issue for trial." *Harris N.A. v. Hershey,* 711 F.3d 794, 798 (7th Cir. 2013). In § 1983 cases, "the plaintiff bears the burden of proof on the constitutional deprivation that underlies the claim, and thus must come forth with sufficient evidence to create genuine issues of material fact to avoid summary judgment." *Padula v. Leimbach*, 656 F.3d 595, 600 (7th Cir. 2011) *quoting McAllister v. Price,* 615 F.3d 877, 881 (7th Cir. 2010). A party opposing summary judgment may not rest on the pleadings but must affirmatively demonstrate that there is a genuine issue of material fact for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

**B. Applicable Law as to Plaintiff's Constitutional Claims.**

At the times relevant to Plaintiff's Complaint, he was a pre-conviction detainee. Negligence or even gross negligence does not violate the U.S. Constitution. *Miranda v. County of Lake*, 900 F.3d 335 at 353 (7th Cir. 2018). For constitutional medical claims falling under *Miranda* / *McCann* standard, a plaintiff must show that: (1) the official "acted purposefully, knowingly, or perhaps even recklessly" and (2) that those actions were "objectively unreasonable." *Id*. at 352-53. The latter inquiry "requires courts to focus on the totality of the facts and circumstances faced by the individual alleged to have provided inadequate medical care and to gauge objectively—without regard to any subjective belief held by the individual—whether the response was reasonable." *McCann v. Ogle Cty., Ill.*, 909 F.3d 881 at 888 (7th Cir. 2018).

Significantly to the analysis in this case, *Kingsley* held that the objective reasonableness inquiry is case-specific and must be made from the perspective of a

reasonable official present at the time, including what the official "knew at the time, not with the 20/20 vision of hindsight." *Kingsley v. Hendrickson*, 576 U.S. 389 (2015 (emphasis added). In *Pittman IV*, the Seventh Circuit held that a plaintiff must prove that the defendant did not take reasonable available measures to abate a risk of serious harm to the plaintiff, even though a reasonable individual under the circumstances would have understood the high degree of risk involved, making the consequences of the defendant's conduct obvious. *Pittman by & through Hamilton v. Madison Cnty., Illinois*, 108 F.4th 561, 572 (7th Cir. 2024), reh'g denied, 23-2301, 2024 WL 3889635 (7th Cir. Aug. 21, 2024), and cert. denied sub nom. *Pittman v. Madison Cnty., IL*, 24-572, 2025 WL 299586 (U.S. Jan. 27, 2025) (hereafter, *Pittman IV*). This again must be based upon what the individual defendant knew at the time.

Substantial deference must be given to the medical provider's decision. What forms of treatment are warranted is a "classic example of a matter for medical judgment." *Estate of Cole by Pardue v. Fromm*, 94 F.3d 254, 261 (7th Cir. 1996) (quoting *Estelle v. Gamble*, 429 U.S. at 97). A medical professional's treatment decision is "presumptively valid" and, to prevail, the plaintiff must show that "the decision by the professional is such a substantial departure from accepted medical judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Johnson v. Rimmer*, 936 F.3d 695, 707 (7th Cir. 2019) (citing *Youngberg v. Romeo*, 457 U.S. 307, 321 (1982)). A treatment decision is objectively unreasonable only if the evidence suggests that "no minimally competent professional would have so responded under those circumstances." *Id.* Plaintiff's disagreement with

the provider's course of treatment does not mean that the course of treatment was objectively unreasonable. *Williams v. Ortiz*, 937 F.3d 936, 944 (7th Cir. 2019).

**C. Plaintiff's Disclosure of Dr. James R. Wessely.**

On 05/01/26, Plaintiff disclosed Dr. Wessely as her expert medical witness in this matter. Contemporaneously with this Motion for Summary Judgment, these Defendants have filed a Motion to Bar Dr. Wessely and his opinions in this case. Defendants suggest that the Motion to Bar should be granted and that it is proper for this Honorable Court to rule upon the Motion to Bar prior to ruling upon this Motion for Summary Judgment.

However, even if the Motion to Bar is not granted, the opinions of Dr. Wessely fail to prevent summary judgment in favor of the Defendants. First, Dr. Wessely fails to offer any opinions suggesting that Nurse Lehmann or Nurse Bradley acted or failed to act in a manner which would satisfy the requirements for a constitutional claim under the *Miranda* / *McCann* standard. He offers no opinions that the nurses acted "purposefully, knowingly, or perhaps even recklessly" and no opinions that their acts or omissions were objectively unreasonable. As such, his opinions have no bearing upon the ability to grant summary judgment in favor of these Defendants as to the constitutional claims.

Further, Dr. Wessely's opinions as to medical negligence improperly assume that either Nursing Defendant was provided *any* information regarding Dylan's symptoms, conditions, or needs for care prior to Nurse Bradley's assessment of him at 11:15pm on 04/14/26 and improperly assume that Dylan was placed into a medical cell for a

medical reason. These improper and objectively incorrect assumptions completely undermine Dr. Wessely's opinions and render them moot. No *genuine* issue of material fact is created by Dr. Wessely's opinions when considering their basis upon false assumptions.

**D. Plaintiff's Constitutional Claims Against Sarah Lehman Necessarily Fail.**

Though Sarah Lehman was present at the Jail from roughly 6:00pm to 8:15pm, there is absolutely no evidence in this case that she: 1) was made aware of any medical complaints, symptoms, or conditions of Dylan's; 2) was asked to provide care for Dylan or to provide an assessment of her condition; or 3) that she observed any condition or behavior of Dylan's that would have put her on notice of a need for care. To the contrary, the evidence shows that she had no such knowledge and made no such observations regarding Dylan.

Nurse Lehman was never asked to provide care for Dylan. She was never informed of, nor aware of, any condition, symptom, or medical need of Dylan's that would have put her on notice that she needed care. She made no observations of Dylan that put her on notice that Dylan needed care or assessment. Of course, Nurse Lehman cannot be expected to provide medical care for a patient or condition that she was never made aware of. Under the circumstances, Plaintiff is completely without any evidence supporting that Nurse Lehmann acted "purposefully, knowingly, or perhaps even recklessly" and completely without any evidence that Nurse Lehmann acted in any way that was "objectively unreasonable". As such, Plaintiff's constitutional claims against

Nurse Lehman necessarily fail and summary judgment must be entered in favor of Nurse Lehman and against Plaintiff as to Count I of the Third Amended Complaint.

**E. Plaintiff's Constitutional Claims Against Carrie Bradley Necessarily Fail.**

Though Carrie Bradley was present at the Jail at certain times relevant to the case at hand, there is absolutely no evidence in this case that prior to 11:15pm on 04/14/22 she: 1) was made aware of any medical complaints, symptoms, or conditions of Dylan's; 2) was asked to provide care for Dylan or to provide an assessment of her condition; or 3) that she observed any condition or behavior of Dylan's that would have put her on notice of a need for care. To the contrary, the evidence shows that she had no such knowledge and made no such observations regarding Dylan.

Prior to 11:15pm on 04/14/22, Nurse Bradley was never asked to provide care for Dylan. She was never informed of, nor aware of, any condition, symptom, or medical need of Dylan's that would have put her on notice that she needed care. She made no observations of Dylan that put her on notice that Dylan needed care or assessment. Though she was aware that Dylan had been placed in Medical Cell 2, she was explicitly told that Dylan was being held in that cell for a *non-medical* reason. As such, Dylan's placement in that cell did not put her on notice of any need for care and did not require her to start a course of care for an inmate with no reported medical needs or conditions. Of course, Nurse Bradley cannot be expected to provide medical care for an inmate when she was given no notice that the inmate had medical symptoms, complaints, or conditions. When Nurse Bradley was first put on notice of a

potential medical condition involving Dylan at 11:15pm on 04/04/22, she responded immediately and provided care that fell within the applicable standard of care. She assessed Dylan and quickly made the call that she needed to be transported to the hospital by ambulance. Plaintiff provides absolutely no evidence that Nurse Bradley's care after being notified of Dylan's condition fell below the standard of care and certainly provides no evidence that said care was objectively unreasonable under the circumstances.

Under the circumstances, Plaintiff is completely without any evidence supporting that Nurse Bradley acted "purposefully, knowingly, or perhaps even recklessly" and completely without any evidence that Nurse Bradley acted in any way that was "objectively unreasonable". As such, Plaintiff's constitutional claims against Nurse Bradley necessarily fail and summary judgment must be entered in favor of Nurse Bradley and against Plaintiff as to Count I of the Third Amended Complaint.

**F. Applicable Law as to Plaintiff's State Law Medical Malpractice Claims.**

Plaintiff first must establish that there was a nurse-patient relationship before any duty of care is owed. "In a medical negligence action, a plaintiff must prove a duty owed by the defendant physician to the plaintiff, a breach of that duty, an injury proximately caused by the breach, and resultant damages." *Blagden v. McMillin*, 2023 IL App (4th) 220238, ¶ 42, 225 N.E.3d 701, 707. A "duty arises only when a physician-patient relationship has been expressly established or there is a special relationship such as when one physician is asked by another physician to provide a service to the patient, conduct laboratory tests, or review test results." *Id.* The physician-patient or nurse-

patient relationship is only established when the medical provider takes "some affirmative action to participate in the care, evaluation, diagnosis or treatment of a specific patient." *Id.* (citing cases).

The *Blagden* case held that a physician-patient relationship was established where the on-call physician consulted with the ER physician and they made a joint decision whether to admit the patient to the hospital, where the on-call physician was formally on-call, was consulted and received specific information about the patient, and was ultimately responsible for the decision not to admit the patient. *Id.* at ¶60-70. Contrast that with *Donnell v. Nolte*, 2025 IL App (4th) 240593, ¶ 43, 263 N.E.3d 1235, 1242, which held that no physician-patient relationship was created where the defendant physician received an informal call from a colleague and gave a "curbside consultation" regarding the patient, but was not was not otherwise involved in the care or responsible for the medical decisions. *See also,* *Estate of Kundert ex rel. Kundert v. Illinois Valley Cmty. Hosp.*, 2012 IL App (3d) 110007, ¶ 24, 964 N.E.2d 670, 676 (no hospital-patient relationship and no duty of care where child's mother called hospital and spoke to unknown person; the physician-patient relationship is a consensual one in which the physician knowingly accepts the person as a patient).

In malpractice cases, plaintiffs have an affirmative duty to present expert testimony establishing the standard of care and breach of the standard; failure to do so justifies entry of summary judgment. *Northrop v. Lopatka*, 242 Ill. App. 3d 1, 8 (4th Dist. 1993); *Woolums v. Huss*, 323 Ill. App. 3d 628, 637 (4th Dist. 2001).

Expert testimony is required "because jurors are not skilled in the practice of -medicine and would find it difficult without the help of medical evidence to determine any lack of necessary scientific skill on the part of the physician." *Johnson v. Armstrong*, 2022 IL 127942, ¶ 52. The plaintiff bears the burden of presenting expert testimony that establishes the standard of care and that a breach thereof was the proximate cause of the plaintiff's injury. *Buck v. Charletta*, 2013 IL App (1st) 122144 at ¶ 59; see also, *Borowski v. Von Solbrig*, 60 Ill. 2d 418, 423, 328 N.E.2d 301, 304–05 (1975). The causal connection must be established to a reasonable degree of medical certainty and "must not be contingent, speculative, or merely possible." *Buck* at ¶ 59; see also *Jefferson v. Mercy Hospital & Medical Center*, 2018 IL App (1st) 162219 ¶ 32. "If the plaintiff fails to establish any element of his or her claim, summary judgment is appropriate." *Xeniotis v. Satko*, 2014 IL App (1st) 131068 ¶ 49 (citing *Pyne v. Witmer*, 129 Ill. 2d 351, 358 (1989)).

Moreover, in order to testify as an expert on the standard of care in a given school of medicine, the witness must be licensed therein. *Dolan v. Galluzzo*, 77 Ill. 2d 279, 396 N.E.2d 13 (1979). To qualify as a proper expert in a medical malpractice matter, the expert must be a licensed member of the school of medicine about which the expert proposed to testify; and the expert must be familiar with the methods, procedures, and treatments ordinarily observed by other health-care providers in either the defendant's community or a similar community. As such, a physician is not qualified to testify to the standard of care for a nurse or that a nurse breached the duty of care. *Sullivan v. Edward Hosp.*, 209 Ill. 2d 100, 123, 806 N.E.2d 645, 660 (2004).

Plaintiff must disclose a 2-622 affidavit and report as required by 735 ILCS 5/2-622. Defendant acknowledges that the Supreme Court recently held that affidavit of merit statutes like 2-622 do not apply to alter the pleading standards in federal court and need not be filed with the complaint. *Berk v. Choy*, 607 U.S. 187, 146 S. Ct. 546, 223 L. Ed. 2d 463 (2026). As the Court noted earlier, "Plaintiff may need to provide such evidence in the future." Order [90] at 2. The Seventh Circuit previously held, consistent with *Berk*, that Plaintiff's must comply with 2-622 at the summary judgment stage. See also, *Cripe, as the Indep. Adm'r of the Estate of Radcliff v. Montgomery Cnty*., 3:25-CV-03401-JEH-RLH, 2026 WL 1031003, at *5 (C.D. Ill. Apr. 16, 2026) (J. Hawley; denying motion to dismiss based upon 2-622 but setting deadline for Plaintiff to comply); Johnson v. Moats, 1:25-CV-01332-MMM, 2026 WL 1090035, at *3 (C.D. Ill. Apr. 22, 2026) (also holding that 2-622 must be complied with at summary judgment stage).

**G. Plaintiff's Medical Malpractice Claims as to Nurse Lehmann and Nurse Bradley Necessarily Fail.**

Plaintiff's claims against Nurses Lehmann and Bradley fail at the outset because the nurses did not owe any duty to Dylan. No nurse-patient relationship was established which would have created a duty. Prior to the fatal event after 11:00 p.m., none of the medical staff were provided with any information about Dylan, were not asked to see or evaluate Dylan, or received any request or information from Dylan. To the contrary, they were affirmatively told that Dylan was being placed in the medical area for a purely administrative, non-medical reason: they needed a place to house her while deciding where to place her due to Dylan's transgender status. There was never a

nurse-patient relationship between the nurses and Dylan. *Donnell v. Nolte*, 2025 IL App (4th) 240593, ¶ 43, 263 N.E.3d 1235, 1242.

Defendants again submit that this Honorable Court rule upon their Motion to Bar Dr. Wessely prior to ruling on this Motion for Summary Judgment. In the event that this Honorable Court grants the Motion to Bar, Plaintiff is left completely without arguable expert testimony as to any of the elements of her state medical malpractice claims. Under such a scenario, Plaintiff's claims necessarily fail and summary judgment must be entered in favor of Nurses Lehman and Bradley and against Plaintiff on all state medical malpractice claims.

However, in the event that this Honorable Court does not rule upon the Motion to Bar, or if it is denied, Plaintiff's state medical malpractice claims still necessarily fail. In this case, Nurses Lehman and Bradley hold licensure as a Licensed Practical Nurse (LPN). Plaintiff's disclosed expert, Dr. Wessely, is a Medical Doctor (MD). *See* Report of Dr. Wessley (Exhibit 6) and CV of Dr. Wessely, attached hereto as *Exhibit 7.* As Dr. Wessely is not licensed within the same school of medicine as Nurses Lehmann and Bradley, he cannot offer standard of care opinions against them in this case. As such, Plaintiff fails to put forth expert testimony as to the elements of her medical malpractice claims against Nurses Lehmann and Bradley, and those claims necessarily fail. Summary judgment must be entered in favor of Defendants and against Plaintiff on all state medical malpractice claims.

Finally, assuming *arguendo* that Dr. Wessely is permitted to offer standard of care opinions in this case, those opinions fail to create a genuine issue of material fact

preventing summary judgment in this case as they are based upon demonstrably false assumptions of fact. Dr. Wessely's opinions as to medical negligence improperly assume that Nurses Lehmann and Bradley were provided *any* information regarding Dylan's symptoms, conditions, or needs for care prior to 11:15pm on 04/14/22[a] and improperly assume that Dylan was placed into a medical cell for a medical reason. The evidence in this case conclusively shows that Nurses Lehmann and Bradley were never put on notice of any need to provide care, monitoring, or assessment to Dylan at any time prior to 11:15pm on 04/14/22, and shows that Dylan was placed into Medical Cell 2 for a *nonmedical* reason. Such was directly conveyed by the corrections staff to Nurse Bradley upon his transfer to that cell. Dr. Wessely fails to offer the opinion that the standard of care requires that a corrections nurse monitor or treat patients for conditions, symptoms, or complaints that she is not aware of and fails to offer the opinion that the standard of care requires medical treatment for an inmate simply because of that inmates presence within a "medical cell" even in the face of direct representation from correction staff that the inmate is being housed in that cell for a non-medical reason. Certainly, Dr. Wessely would not opine that nursing staff in an emergency department would be required to round on, or treat, a patient's healthy family member using a room at the hospital solely to rest and not for any medical reason? As Dr. Wessely's opinions are based upon inaccurate assumptions of fact, they

[a] Notably, Dr. Wessely's report is not at all critical of the treatment provided by Nurse Bradley after she was first made aware of Plaintiff's condition at 11:15pm on 04/14/22. As such, the opinions pertain only to events or times before CO Howie requested assistance.

are moot, without merit, and fail to create a genuine issue of material fact preventing summary judgment. Summary judgment must be entered in favor of Defendants and against Plaintiff as to Counts 7 and 8 of the Third Amended Complaint.

**H. Plaintiff failed to serve a 2-622 affidavit**

Plaintiff disclosed an expert in accordance with Fed. R. Civ. P. 26, but this does not satisfy the affidavit requirement of 735 ILCS 5/2-622, which applies to claims in federal court. Because this matter was filed in federal court rather than state court, Plaintiff could defer filing the report and affidavit until the expert disclosure deadline. The statute provides in relevant part:

> Sec. 2-622. Healing art malpractice.
>
> (a) In any action, whether in tort, contract or otherwise, in which the plaintiff seeks damages for injuries or death by reason of medical, hospital, or other healing art malpractice, *the plaintiff's attorney… shall file an affidavit*… declaring one of the following:
>
> > 1. That the affiant has consulted and reviewed the facts of the case with a health professional… that *the reviewing health professional has determined in a written report, after a review of the medical record* and other relevant material involved in the particular action that there is a reasonable and meritorious cause for the filing of such action; and that the affiant has concluded on the basis of the reviewing health professional's review and consultation that there is a reasonable and meritorious cause for filing of such action… A copy of the written report, clearly identifying the plaintiff and the reasons for the reviewing health professional's determination that a reasonable and meritorious cause for the filing of the action exists, must be attached to the affidavit…
>
> * * *
>
> (b) Where a certificate and written report are required pursuant to this Section a separate certificate and written report shall be filed as to each

> defendant who has been named in the complaint and shall be filed as to each defendant named at a later time.
>
> * * *
>
> (g) The failure to file a certificate required by this Section shall be grounds for dismissal under Section 2-619.
>
> (735 ILCS 5/2-622) (emphasis added)

Plaintiff has not filed an affidavit of merit. Plaintiff disclosed a report signed by Dr. Wessely, but Dr. Wessely testified that he did not review the relevant medical records from the jail and did not write the report. Exhibit 1 (deposition of Dr. Wessely). Thus, the report does not satisfy the requirements of Section 2-622.

### I. Plaintiff's *Respondeat Superior* Claim Against ACH Necessarily Fails.

In this matter the only claim remaining against ACH is a state *respondeat superior* liability claim in connection with the medical malpractice claims against Nurses Bradley and Lehmann. Under *respondeat superior* an employer is liable for the torts of its employees or agents that are committed within the scope of their employment. *Bagent v. Blessing Care Corp.*, 224 Ill. 2d 154, 163, 862 N.E.2d 985, 991 (2007). *Respondeat superior* is a derivative action, and for the employer to be found liable, liability must be established against the employee or agent. *Sperl v. C.H. Robinson Worldwide, Inc.*, 408 Ill. App. 3d 1051, 1060, 946 N.E.2d 463, 473 (2011).

In this case, Plaintiff's *respondeat superior* claim against ACH necessarily fails as: 1) Nurses Lehmann and Bradley were not employees or agents of ACH at the time of the alleged conduct; and 2) for the reasons argued above, Nurses Lehmann and Bradley

are not liable in tort nor under the constitution. Dkt. No. [111] at paras. 26-28; and *Exhibit 2* at deposition exhibit 21 at ¶7 (answers to interrogatories). As such, summary judgment must be entered in favor of ACH and against Plaintiff.

**J. Nurses Bradley and Lehmann are Entitled to Good Faith Immunity.**

Nurses Bradley and Lehmann are entitled to qualified immunity or good faith immunity. Defendants acknowledge that the 7th Circuit has foreclosed the qualified immunity defense for jail medical contractors. See *Shields v. Illinois Dep't of Corr.*, 746 F.3d 782 (7th Cir. 2014); *Petties v. Carter*, 836 F.3d 722, 734 (7th Cir. 2016); *Currie v. Chhabra*, 728 F.3d 626, 632 (7th Cir. 2013). Defendants believe that the Supreme Court has not conclusively addressed this issue, and numerous prior cases allowed the Defense. See, e.g., *Filarsky v. Delia*, 132 S. Ct. 1657 (2012); *Sain v. Wood*, 512 F.3d 886, 893 (7th Cir. 2008); *Williams v. O'Leary*, 55 F.3d 320, 323-324 (7th Cir. 1995); and *Young v. Murphy*, 90 F.3d 1225, 1234 (7th Cir. 1996).

In the absence of qualified immunity, Defendants are entitled to a good faith defense, comparable in scope to qualified immunity. See *Richardson v. McKnight*, 521 U.S. 399, 413-414 (7th Cir. 1997) (Discussing whether the court might recognize a good faith defense for private actors if they were not entitled to qualified immunity). Given the medical issues that were referred to Nurses Bradley and Lehmann in the case at hand, there was no case law holding that failure to treat or respond differently constituted deliberate indifference. There was no case law that would have put Nurses Bradley and Lehmann on notice that their conduct was a violation of Plaintiff's constitutional rights. Nurses Bradley and Lehmann are entitled to immunity. "[T]he

right the official is alleged to have violated must have been 'clearly established' a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Brosseau v. Haugen*, 543 U.S. 194, 198-199 (2004). Accordingly, Defendants' motion for summary judgment must be granted.

## IV. CONCLUSION

Plaintiff has not shown, and cannot show, that Nurses Bradley and Lehmann violated the constitutional rights of Dylan Schleiper-Clark nor that they were liable for medical malpractice under the circumstances presented in this case. Accordingly, summary judgment must be entered in favor of Defendants and against Plaintiff.

WHEREFORE, Defendants ADVANCED CORRECTIONAL HEALTHCARE, INC., CARRIE BRADLEY, LPN, and SARAH LEHMANN, respectfully requests that this Honorable Court GRANT their Motion for Summary Judgment, enter Judgment in favor of Defendants and against Plaintiff, that they have their fees and costs, and for such other and further relief as the Court deems necessary and just.

ADVANCED CORRECTIONAL
HEALTHCARE, INC., CARRIE BRADLEY,
LPN, and SARAH LEHMANN, Defendants

By: *s/ Peter R. Jennetten*
QUINN JOHNSTON

Peter R. Jennetten (Illinois Bar No. 6237377)
pjennetten@quinnjohnston.com
James D. VanRheeden (Illinois Bar No. 6321658)
jvanrheeden@quinnjohnston.com
QUINN JOHNSTON
227 N.E. Jefferson Ave.
Peoria, IL 61602-1211
(309) 674-1133 (phone)
(309) 674-6503 (fax)

## CERTIFICATE OF SERVICE

I hereby certify that on June 12, 2026, I electronically filed on the foregoing **MOTION FOR SUMMARY JUDGMENT** with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following:

***Attorney for Plaintiff***
Tom Applewhite
Christopher J. Herman
Donner Applewhite
5205 Hampton Avenue
Saint Louis, MO 63109
tom.applewhite@da-lawfirm.com
chris.herman@da-lawfirm.com

***Attorneys for Jacob Wayda and Clifford Buscher***
Nicholas Correll
Robert Hogue
City of Springfield
Room 313 Municipal Center East
800 East Monroe Street
Springfield, Illinois 62701-1689
Nicholas.correll@springfield.il.us
Robert.Hogue@springfield.il.us
Paige.Kennedy@springfield.il.us

***Attorney for Sangamon County Defendants***
Dylan P. Grady
Scott B. Sievers
Veronika J. Miles
Natalia Galica
BROWN, HAY & STEPHENS, LLP
205 S. Fifth Street, Suite 1000
P.O. Box 2459
Springfield, IL 62705-2459
dgrady@bhslaw.com
ssievers@bhslaw.com
vmiles@bhslaw.com
khartman@bhslaw.com
ngalica@bhslaw.com

*s/ Peter R. Jennetten*

Peter R. Jennetten (Illinois Bar No. 6237377)
pjennetten@quinnjohnston.com
James D. VanRheeden (Illinois Bar No. 6321658)
jvanrheeden@quinnjohnston.com
QUINN JOHNSTON
227 N.E. Jefferson Ave.
Peoria, IL 61602-1211
(309) 674-1133 (phone)
(309) 674-6503 (fax)

4904-3423-3003, v. 4