E-FILED
Tuesday, 07 July, 2026 10:48:58 PM
Clerk, U.S. District Court, ILCD

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF ILLINOIS**

**STARLA SMITH,** as Administrator of the Estate of Dylan Schlieper-Clark, and on behalf of his Next of Kin,

Plaintiff,

v.

**COUNTY OF SANGAMON,** et al.

Defendants.

Case No. 3:23-cv-03137-CSB-EIL

**<u>PLAINTIFF'S MEMORANDUM IN OPPOSITION TO THE COUNTY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT</u>**

COMES NOW plaintiff Starla Smith, as Administrator of the Estate of Dylan Schlieper-Clark and on behalf of his next of kin ("Plaintiff"), by and through her attorneys, Donner Applewhite, and for her Memorandum in Opposition to the Motion for Summary Judgment of defendants Sangamon County, Paula Crouch, William Smith, Christina Wheeler (Allmon), Corey Hillen, Jarred Kirby, Britney Hicks, Chris Unthank, Colleen Kerouac, Tracy Bergae, Brad Meyer, Dave Fisher, Tom Ansell, Tammy Powell, and Earl Grigsby (collectively, the "County Defendants"), states as follows:

## I. INTRODUCTION

For roughly thirty hours, Dylan Schlieper-Clark deteriorated inside the Sangamon County Jail. He told officer after officer that his head and neck hurt; a probation officer heard that the pain had lasted four days and heard him ask to go to the hospital; and for the last two and a half hours of that decline he lay on the floor of a medical cell — in shifting positions, his pants down, the bed pulled from the wall — while officers looked in every thirty minutes and did nothing. He was

found unresponsive, foaming at the mouth, and died three days later of MRSA meningoencephalitis. No one ever summoned a doctor or a nurse to assess him.[1]

The County Defendants' motion asks the Court to hold that this record entitles them to judgment. Its central premise is a legal error: the motion demands proof that each officer was subjectively "aware" of a serious risk and "actually received all the information" about it. That is the abandoned Eighth Amendment test. Dylan was a pretrial detainee, and the Fourteenth Amendment inquiry is objective — what a reasonable officer would have done with what was observable. On that standard the disputes are many and material. The County's own cell-camera screenshots show the deterioration the motion says no one could perceive. The headache and neck-pain complaints were not ignored in a vacuum; they were relayed up the chain to a sergeant, who declined to summon care based on an assumption — never verified, and false — that medical staff had already seen Dylan. No medical professional ever did.

Two claims require denial regardless of how the Court views the individual officers. The motion seeks judgment on "all" of Plaintiff's claims, yet it never addresses Plaintiff's claim against Sangamon County and the Sheriff in his official capacity — a claim, under *Monell*, that the County's policies and its failure to train caused Dylan's death — even though the County moved as a defendant on that very count; nor does it address the statutory indemnification count. A movant cannot obtain judgment on a claim it does not confront, and qualified immunity is no defense to municipal liability. Construing the record in Plaintiff's favor as Rule 56 requires, the motion should be denied.

[1] Legal technicalities aside, this outcome is just plainly evil. Being arrested in the United States of America should not mean a death sentence. The idea that a citizen of a great nation should not face punishment – be it flogging or, in this case, death – without having been adjudicated guilty by means of due process is far older than the 250-year history of our great nation. Being an American citizen should mean at least that much to prevent tyranny. Many people are unconcerned about such rights until it is their loved one or even themselves needing to invoke those rights. Thank God at least someone in Rome cared about Paul's due process. Acts 22:25-29.

In the fact responses that accompany this brief, Plaintiff concedes what is genuinely undisputed and disputes only what the record disputes, with a citation to the page for each dispute. Plaintiff respectfully requests that the Court deny the County Defendants' Motion for Summary Judgment in its entirety.

## II. RESPONSE TO THE STATEMENT OF UNDISPUTED MATERIAL FACTS

Pursuant to Local Rule 7.1(D)(2)(b), Plaintiff responds to the County Defendants' numbered facts as and provides additional material facts filed concurrently with this Memorandum.

## III. ARGUMENT

### A. Summary judgment is improper where, viewed in Plaintiff's favor, a reasonable jury could find for her.

Summary judgment is proper only where "there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). The Court draws all reasonable inferences in the nonmovant's favor and may not weigh evidence or judge credibility. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Tolan v. Cotton*, 572 U.S. 650, 656–60 (2014) (per curiam). A record that turns on surveillance video and a documented progression of symptoms is the paradigm of a case for the jury.

### B. The motion applies the wrong standard: a pretrial detainee's medical-care claim is governed by an objective test, not subjective awareness.

The motion repeatedly frames Plaintiff's claim as one for subjective "deliberate indifference," demanding proof that each officer was "aware" of a serious risk and "actually received all the information about a potential health or safety risk." That is the Eighth Amendment standard for convicted prisoners, and it does not govern here. Dylan was a pretrial detainee, and after *Kingsley v. Hendrickson*, 576 U.S. 389 (2015), his claim is measured by the Fourteenth

Amendment's objective-unreasonableness standard. *Miranda v. County of Lake*, 900 F.3d 335, 352–53 (7th Cir. 2018); *McCann v. Ogle County*, 909 F.3d 881, 886 (7th Cir. 2018). Plaintiff need not prove any officer's subjective state of mind; the question is whether each officer's response was objectively unreasonable in light of what was observable. The motion's reliance on pre-*Kingsley* authority applying the subjective test, and its reading of *Davis v. Rook* to require that a defendant "actually received all the information" about the risk, cannot convert the objective inquiry back into a subjective one; an officer's protestation that he did not personally appreciate the risk does not resolve what a reasonable officer would have perceived and done.

**C. Genuine disputes of material fact preclude summary judgment on the constitutional claims.**

1. A serious medical need turns on symptoms, not on a contemporaneous diagnosis. The motion argues repeatedly that Dylan had not been "diagnosed" with meningitis when the officers encountered him. But the seriousness inquiry asks whether the condition was one "so obvious that even a lay person would perceive the need for a doctor's attention" — not whether a physician had already named the disease. A detainee reporting a days-long severe headache with neck pain, vomiting, and progressive decline, who ends the night unresponsive on the floor, presents an objectively serious need; the autopsy confirms it. That officers could not name the disease does not defeat the claim, because the relevant risk is the risk of serious harm, not the precise diagnosis.

2. Officer Wheeler and the cell-check video. The County's own screenshots (Ex. 16) show Dylan progress from standing, to sitting, to lying on the floor at 8:11 p.m., and then remaining on the floor — with his pants down and the bed pulled away from the wall, shifting position — through 10:34 p.m., observed at thirty-minute intervals. The motion's answer is that it was "not unusual" to see inmates on the floor and that they move the bed "to see the TV." Whether those benign explanations, or the inference that a visibly deteriorating detainee needed attention, is the

correct reading of the video is a quintessential jury question; a court may not choose between competing reasonable inferences on summary judgment. The motion's fallback — that Wheeler could rely on "medical professionals stationed feet away" — fails because no medical professional ever assessed Dylan. The jail's own witness refutes the defense directly: Sergeant Howie, who found Dylan, testified that under the jail's standards an officer who observed an inmate "face down, no pants, no verbal response" would not be permitted to log a completed check and move on without calling for medical assistance, and that a mere thirty-minute check is not a complete welfare check where the inmate does not respond. Whether Officer Wheeler's checks met that standard is, at a minimum, a question for the jury.

3. Sergeant Kerouac and the failed reliance defense. Kerouac declined to summon care because she assumed Dylan "had recently been seen by medical staff." The division-of-labor principle on which the motion relies — that non-medical staff may defer to medical professionals — applies only when the detainee is actually under a medical professional's care. *Miranda*, 900 F.3d at 343; *McGee v. Parsano*, 55 F.4th 563 (7th Cir. 2022). Here no medical professional ever saw Dylan, so there was no medical judgment to defer to; Kerouac's assumption to the contrary was unverified and mistaken. Whether it was objectively reasonable to rest on that assumption — rather than confirm it or summon care for a detainee whose head-and-neck-pain complaint had just been escalated to her — is for the jury.

4. The relayed complaints (Unthank and Hicks). It is undisputed that Dylan's head and neck complaints were communicated — by Hicks to a supervisor, and by Unthank to Kerouac — and that no one thereafter summoned medical care. A jury may find that passing a serious complaint up the chain, where it dies without anyone contacting medical staff, was not an

objectively reasonable response to a detainee's deteriorating condition. At a minimum, the reasonableness of those responses is disputed.

5. The booking and escort officers. Plaintiff maintains her claims against the booking and escort officers as well, and the reasonableness of each officer's response is disputed. To the extent the Court views particular officers' encounters as too brief to support liability, that determination should be made officer-by-officer on a full record, not as a wholesale matter of law.

**D. Summary judgment cannot be entered on Plaintiff's claim against Sangamon County and the Sheriff in his official capacity, which the motion never addresses.**

Sangamon County moved for summary judgment on Count I as one of the "County Defendants," and the Third Amended Complaint pleads Sheriff Campbell as "the final policy maker for Defendant Sangamon County with respect to the care and custody of inmates," sued in his official capacity, together with allegations that Dylan's death resulted from "a lack of training and unclear policies" and from the County's failure "to develop clear policies and procedures." Third Am. Compl. ¶¶ 19, 110, 117, 189(i). Count I re-alleges and incorporates each of those allegations, id. ¶ 119, and the County litigated Count I as a § 1983 defendant by moving for summary judgment on it. An official-capacity claim against the Sheriff is a claim against the governmental entity, *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985), and proceeds under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), on proof of an express policy, a widespread custom or practice, or a failure to train amounting to deliberate indifference that caused the constitutional deprivation. *City of Canton v. Harris*, 489 U.S. 378 (1989); *Glisson v. Indiana Dep't of Corrections*, 849 F.3d 372 (7th Cir. 2017) (en banc); *J.K.J. v. Polk County*, 960 F.3d 367 (7th Cir. 2020) (en banc).

The motion is not entitled to judgment on that claim, for two independent reasons. First, it never addresses it. The County Defendants argue only that the individual officers acted reasonably, that they are entitled to qualified immunity, and that the Tort Immunity Act bars the state-law claims; nowhere does the motion analyze whether an official policy, a widespread practice, or a failure to train caused the deprivation — the elements of municipal liability. A movant must identify the grounds for its motion, and a court may not grant summary judgment on a claim or theory the movant did not address; arguments omitted from the opening memorandum are forfeited. Qualified immunity, moreover, is unavailable to a municipality or to an official sued in his official capacity, *Owen v. City of Independence*, 445 U.S. 622 (1980), so the motion's immunity arguments do not reach this claim at all.

Second, even if the Court reached the merits, the record discloses genuine disputes. This is not the isolated lapse of a single officer. Across roughly thirty hours, a succession of staff — booking officers, a probation officer, escorting and checking officers, a shift sergeant, and the on-site nurses — each encountered Dylan's deterioration and none summoned medical care; the intake "fitness-to-confine" form was left unsigned by any nurse; and the jail's own protocol requiring a medical referral upon a detainee's transgender status went unfollowed. A jury could find that a system-wide breakdown of this kind reflects a gap in the County's policies or a failure to train staff to recognize and escalate an obviously serious medical need — a recognized basis for municipal liability where the need for a policy or training is obvious and the absence of one is likely to result in constitutional violations. *Glisson*, 849 F.3d at 379–82; *Canton*, 489 U.S. at 390. Plaintiff's showing is not limited to Dylan's own case. A fellow detainee, Clarence Smith, Jr., has provided a sworn declaration describing what he observed as the jail's routine practice: inmates seeking medical care must submit a request through a shared electronic kiosk and are typically not seen by

a provider for two to four days, even for significant complaints, and correctional officers conducting cell checks walk past occupied cells without looking inside. Pl. Ex. 45 (Smith Decl.) ¶¶ 4–11. A jury could find in that account a widespread practice, or a failure to train, of the kind that caused the deprivation here. At a minimum, whether the County's policies and training were constitutionally adequate, and whether their inadequacy caused Dylan's death, are disputed questions for trial.

**E. Qualified immunity does not warrant summary judgment.**

Qualified immunity fails at both steps. The record supports a constitutional violation, as shown above. And the right at issue — a detainee's right to have jail staff take reasonable measures to summon medical care for an obviously serious, visibly deteriorating condition, rather than ignore repeated complaints — was clearly established well before April 2022. The objective-unreasonableness standard of *Miranda* was itself settled by 2018. Qualified immunity also does not reach Plaintiff's claims against Sangamon County or the Sheriff in his official capacity, nor the state-law claims; it is a defense personal to individual officers on the federal claims.

**F. The Illinois Tort Immunity Act does not bar the state-law claims.**

The gravamen of Plaintiff's state-law claims is the failure to summon medical care for a detainee — conduct governed by 745 ILCS 10/4-105, which expressly excepts willful-and-wanton failures to "take reasonable action to summon medical care" once an employee "knows from his observation of conditions that the prisoner is in need of immediate medical care." The immunities the motion invokes for failing to "examine" (§ 6-105) or "diagnose" (§ 6-106) do not govern a failure-to-summon-care claim, and the facility/staffing immunity of § 4-103 cannot be used to recharacterize a claim about the care of a particular prisoner so as to evade § 4-105's willful-and-wanton exception. The motion itself concedes that willful-and-wanton conduct and deliberate

indifference are functionally equivalent and expressly incorporates its constitutional arguments on this point. That concession is dispositive here: because a triable objective-unreasonableness claim exists — and willful-and-wanton conduct is no higher a bar — the state-law claims survive for the same reasons. Whether the officers' conduct was willful and wanton is, in any event, ordinarily a question of fact for the jury.

**G. The motion does not independently address Plaintiff's indemnification count, and supplemental jurisdiction should be retained.**

Finally, Plaintiff's statutory indemnification count (Count VI) against Sheriff Campbell and Sangamon County (745 ILCS 10/9-102; *Carver v. Sheriff of LaSalle County*, 324 F.3d 947 (7th Cir. 2003)) is not a proper subject of this motion. Indemnification under Section 9-102 is derivative: it depends on, and follows, a judgment against the Sheriff's employees or agents. The motion advances no independent ground to defeat it, and neither qualified immunity nor the Tort Immunity Act provides a defense to a Section 9-102 indemnification obligation. Because the underlying claims survive, so does the indemnification count. And because Plaintiff's federal claims against the individual defendants remain for trial, the Court should retain supplemental jurisdiction over the related state-law claims; the movants' request to relinquish jurisdiction is premised on the entry of judgment on all federal claims, which is not warranted.

## IV. CONCLUSION

For the foregoing reasons, genuine disputes of material fact preclude summary judgment, and two of Plaintiff's claims fall outside the motion entirely. Plaintiff respectfully requests that the Court deny the County Defendants' Motion for Summary Judgment in its entirety, and grant such other and further relief as the Court deems just and proper.

Respectfully submitted by,

**DONNER APPLEWHITE,**
**ATTORNEYS AT LAW**

By: */s/ Thomas R. Applewhite*
Thomas R. Applewhite, #6310947
Christopher J. Herman, #6348522
5205 Hampton Avenue
St. Louis, Missouri 63109
Phone: (314) 293-3526
Fax: (888) 785-4461
Email: tom.applewhite@da-lawfirm.com
chris.herman@da-lawfirm.com

***Attorneys for Plaintiff***

**CERTIFICATE OF COMPLIANCE**

Pursuant to Local Rule 7.1(D)(5) and 7.1(B)(4)(b), the undersigned certifies that the Argument section of this memorandum contains fewer than 7,000 words, as measured by the word-processing system used to prepare it, exclusive of the caption, the fact-response sections, the signature block, and this certificate.

*/s/ Thomas R. Applewhite*

**CERTIFICATE OF SERVICE**

I hereby certify that on July 7, 2026, the foregoing was filed utilizing this Court's ECF system, which will distribute an electronic version of the foregoing to all counsel of record.

*/s/ Thomas R. Applewhite*