E-FILED
Tuesday, 21 July, 2026 10:42:16 PM
Clerk, U.S. District Court, ILCD

**UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF ILLINOIS**
**SPRINGFIELD DIVISION**

| | | |
|---|---|---|
| **STARLA SMITH, AS ADMINISTRATOR OF THE ESTATE OF DYLAN SCHLIEPER-CLARK AND ON BEHALF OF HIS NEXT OF KIN** | ) | |
| **Plaintiff,** | ) | **No. 23-cv-3137** |
| **vs.** | ) | |
| **COUNTY OF SANGAMON, et al.,** | ) | |
| **Defendants.** | ) | |

**<u>DEFENDANT'S COMBINED REPLY TO PLAINTIFF'S RESPONSE TO MOTION FOR SUMMARY JUDGMENT AND REPLY TO RESPONSE TO STATEMENT OF FACTS</u>**

NOW COMES Defendants Jacob Wayda and Clifford Buscher, by and through counsel, Gregory Moredock, Corporation Counsel, and Robert Hogue, Sr. Assistant Corporation Counsel, and submits their reply to Plaintiff's Response [Doc. 209] to Defendants' motion for summary judgment [Doc. 188] and reply to Plaintiff's Response [Doc. 210] to the City Defendants' statement of undisputed material facts and statement of additional material facts. In support, City Defendants state as follows:

## Introduction

This case centers around the arrest of an individual known as Dylan[1] Schlieper-Clark ("Dylan"). On April 13, 2022, Officers with the Springfield Police Department ("SPD") executed a search warrant at 837 Percy Ave, in Springfield, Sangamon County, Illinois. The City Defendants were present for execution of the search warrant. Dylan had an active warrant for their arrest. City Defendants took Dylan into custody and transported them to the Sangamon County jail. Later, while in custody, Dylan passed away. Plaintiff, as executor of Dylan's estate brings this claim alleging inter alia, that the various defendants violated Dylan's rights by not providing proper medical treatment.

[1] According to information available to the undersigned, Dylan was transgender and may have identified as "Salena". However, as this case is captioned "Estate of Dylan" the deceased will be referred to as Dylan and identified using male pronouns after a conversation with Counsel for Plaintiff.

On June 15, 2026, City Defendants filed a motion for summary judgment [Doc. 188]. On July 7, 2026, Plaintiff filed a response to the City Defendants' statement of undisputed material facts and statement of additional material facts [Doc. 210], and a response to motion for summary judgment [Doc. 209]. The City Defendants hereby submit their combined reply to both responses. In summary, Plaintiff has failed to present a genuine dispute as to material fact and further failed to establish why Defendants' are not entitled to judgment as a matter of law.

**Reply to Response to Statement of Facts**

1. Plaintiff's Disputed Material Facts.
    a. Defendants' fact 6.
        i. Plaintiff takes issue with the use of the word "alert". However, this dispute is immaterial because the Parties agree the standard Defendants conduct is measured against uses objective standard. *See* Defendants' motion [Doc. 188] pg. 5 citing *Gonzalez v. McHenry County*, 40 F.4th 824, 827-28 (7th Cir. 2022) (the defendant's action "was objectively unreasonable under the circumstances") and Plaintiff's response [Doc. 209] citing *Ortiz v. City of Chicago*, 656 F.3d 523, 530 (7th Cir. 2011) (the inquiry is whether the Officer's response "was objectively unreasonable".)
        ii. As such, Defendants agree that Sergeant Buscher testified only that "we were able to understand him" and "he knew why we were there". Ex. 1 at 20:12-23, 21:22-22:4. That fact is undisputed and material.
        iii. Further, after watching a video with Dylan and Sgt. Mazrim, Officer Wayda believed that Dylan was tracking the conversation well. Exhibit 6 – Deposition of Officer Wayda taken June 23, 2026, at 22:4-6.
    b. Defendants' fact 7.
        i. Here, Plaintiff disputes this fact but offers no evidentiary basis and simply relies on conclusory statements. "The non-moving party's failure to admit or deny facts as presented in the moving party's statement or to cite to any admissible evidence to support facts presented in response by the non-moving party render the facts presented by the moving party as undisputed." *Curtis v. Costco Wholesale Corp.*, 807 F.3d 215, 218-19 (7th Cir. 2015). Thus, the failure to cite any evidence disputing it, allows this Court to deem it admitted.
    c. Defendants' fact 10.
        i. Counsel for Defendant Wayda admits to erroneously including the phrase "familiar with Dylan" and that Defendant Wayda's deposition testimony is more accurate.
        ii. However, that does not change the core substance of his testimony being that there was nothing noteworthy about Dylan. *See* "nothing stood out

personally" Ex. 6 at 15:12-13; Defendant Wayda testified in his deposition that after watching the video of Defendant Wayda questioning Dylan, nothing about Dylan's physical condition caused alarm. Ex. 6 at 41:7-10.

iii. Further, pointing out that Defendant Buscher thought Dylan looked unwell does not challenge Defendant Wayda's impressions, especially when the body work camera is available for this Court to review. Plaintiff has not adequately disputed this fact.

d. Defendants' fact 13.

i. Again, Plaintiff does not present any factual citation to dispute this fact. Thus, it is proper for this Court to deem it admitted. *Curtis*, 807 F.3d at 218-19.

ii. Further, despite Plaintiff asserting the only factual basis for fact 13 is Defendant Buscher's deposition testimony is incorrect. Defendants cited to the body worn camera for factual support. Since Plaintiff failed to cite to any other complaint Dylan made, clearly there is none. Fact 13 should be deemed admitted.

e. Defendants' fact 15.

i. While this fact may be disputed it is not a genuine dispute. Plaintiff attempts to use Defendant Buscher's deposition testimony to create a genuine dispute. However, this Court may review the body worn camera footage and determine the dispute is not genuine.

f. Defendants' facts 21 and 23.

i. On July 7, 2026, Plaintiff filed a response to the Medical Defendants' motion to bar Dr. Wessly as an expert. [Doc. 206]. In the motion, Plaintiff concedes that Dr. Wessly is not an expert in correctional-medicine. [Doc. 206 at pg. 2, 4, 7]. Plaintiff further acknowledges that Dr. Wessly cannot opine on "fit-for-confinement protocol". [Doc. 206 at pg. 4].

ii. Now however, Plaintiff is attempting to use Dr. Wessly as an expert in correctional medicine in the fit for incarceration evaluation. [Doc. 210 at pg. 3]. Plaintiff cites the following provisions:

1. "'Dr. Wessely testified that because a layperson cannot distinguish types of headache, 'you would want to send them … for a medical evaluation. **<u>Especially if you were about to incarcerate them</u>**' (Doc. 188-5 at 124:8-18)". (emphasis added).
2. That "a prudent layperson would say there's something really wrong here, this person needs to be evaluated (id. at 87:11-20)". However, just as Plaintiff accuses Defendants of taking quotes out of context, so does Plaintiff as the question posed to Dr. Wessly was "So any **<u>correctional officer</u>** who initially observed Dylan would not be able

to know that treatment was required, right?" Ex. 5, Deposition of Dr. Wessly at 87:11-13 (emphasis added).

3. Plaintiff further states Dr. Wessly "'placed the self-care window at 'two or three days' before a doctor visit (id. at 82:12-15)". However, Dr. Wessly did not opine that someone should seek medical treatment at that time frame just "someone might go to the doctor". Ex. 5 at 82:12-15.

iii. Because Plaintiff admits Dr. Wessly is not a correctional medicine expert, nor is he even being offered as one, the opinions about what City Defendant Officers, the jail staff, or anyone in the correctional field should be disregarded. As cited in City Defendants' motion for summary judgment, the remaining opinions are that a reasonable person would not have recognized the harm of Dylan's condition.

2. Plaintiff's Disputed Immaterial Facts.
   a. Defendants' fact 14.
      i. Defendants do dispute this is immaterial. As Plaintiff agrees, this case comes down to an objective standard. *See* Plaintiff's response to City Defendants' motion for summary judgment [Doc. 209] citing *Ortiz v. City of Chicago*, 656 F.3d 523, 530 (7th Cir. 2011); *Lopez v. City of Chicago*, 464 F.3d 711, 719 (7th Cir. 2006). As such, knowing common circumstances and conditions of how officers interact with arrestees is important for this Court to consider.
   b. Defendants' fact 16.
      i. Plaintiff disputes this on a factual basis highlighting certain aspects of Dylan's condition. However, as Plaintiff cited, Dr. Wessly noted that early symptoms appear of MSRA Meningitis appears to the average person to be no more than the flu. Ex. 5 at 86:16-87:2. This supports Defendants' arguments that it was objectively reasonable to believe at worst Dylan was suffering from the common flue and medical intervention was not necessary.
3. Plaintiff's Undisputed and Immaterial facts.
   a. Defendants' facts 20, 22, 24, and 25.
      i. Plaintiff asserts that Dr. Wessly's statements about how a layperson would not recognize symptoms such as a headache are material to this inquiry. As the inquiry is an objective reasonableness standard, it absolutely is material how the symptoms present to the average person. If a reasonable person would not have recognized the warning symptoms or taken action based on those symptoms, then it was objectively reasonable for the Defendants not to do so. Thus, these facts are necessarily material to the inquiry before this Court.

4. Plaintiff's Additional Material Facts.
   a. Fact 1: An occupant of 837 Percy Avenue told Sergeant Buscher, before transport, that Dylan "wasn't feeling well." Buscher Dep. 11:13-15, 11:23-24
      i. **Response:** City Defendants admit this material and largely undisputed. City Defendants dispute only to the extent that Plaintiff suggests this forecloses the determination of whether the City Defendants should have taken some action simply based on not "feeling well".
   b. Fact 2: Sergeant Buscher observed that Dylan "[l]ooked like a sick person," "looked unwell … like they have a cold or a flu," and "wasn't very talkative." Ex. 1 at 12:9-21, 13:1-4, 25:1-10.
      i. **Response:** City Defendants admit this material and largely undisputed. City Defendants dispute only to the extent that Plaintiff suggests this forecloses the determination of whether the City Defendants should have taken some action simply based on these observations. As Dr. Wessly opined, it is reasonable for persons to self medicate and not seek treatment based on the flu. Ex. 5 at 82:3-8.
   c. Fact 3: As the motion concedes, Dylan told the officers he had a headache/migraine that had lasted four days, and said "my head" while being escorted into the jail. Doc. 188 UMF 13.a-c.
      i. **Response:** City Defendants admit this fact as material and undisputed.
   d. Fact 4: The next morning, probation officer Hicks observed Dylan holding his head and neck in evident pain, reported that he described a headache of several days' duration, and Dylan asked to be taken to a hospital. Hicks Dep.; audio recording of the April 14, 2022 probation interview.
      i. **Response:** City Defendants admit this is undisputed, however, this fact is immaterial. City Defendants can only be held liable for actions they took based on the information available to them. There is nothing in the record to suggest City Defendants were aware of this information nor anything in the record to suggest that even if they were aware, they could have taken action.
   e. Fact 5: Sergeant Buscher personally completed the Intake Acceptance Questionnaire — Fitness to Confine and answered "No" to whether Dylan had visible injuries or was asking for medical assistance (Q1) and "No" to known medical problems (Q7), knowing that an affirmative answer to Questions 1–8 required medical clearance before intake. Ex. 1 at 30:10-24, 32:13-16; SMITH 0011 (fitness-to-confine form).
      i. **Response:** City Defendants admit this is material and undisputed. However, City Defendants state this fact goes in their favor as Dylan's condition was not noteworthy to the Officers.

f. Fact 6: The nurse's signature line on the fitness-to-confine form is blank; Sergeant Buscher believed no nurse evaluated Dylan before he was accepted. Ex. 1 at 33:2-10; SMITH 0011.
    i. **Response:** City Defendants admit this is material and undisputed.
g. Fact 7: Sergeant Buscher did not tell jail staff about Dylan's appearance or complaints, and did not relay Dylan's admitted heroin use. Ex. 1 at 34:12-22, 35:2-9.
    i. **Response:** City Defendants admit this is material and undisputed.
h. Fact 8: Sergeant Buscher created no documentation of Dylan's medical complaints in any report, log, or record. Ex. 1 at 25:24-26:7.
    i. **Response:** City Defendants admit this is material and undisputed.
i. Fact 9: At his June 23, 2026 deposition, Officer Wayda testified that he had never encountered Dylan before April 13, 2022, that he "had not had any previous interactions with him," and that paragraph 8 of his affidavit (asserting prior familiarity with Dylan) is not accurate. Wayda Dep. 12:16-22, 30:10-23; Ex. 2 ¶ 8.
    i. **Response:** City Defendants admit this is material and undisputed. Defendant Wayda further acknowledges the error in the affidavit was meant to be corrected but inadvertently was not corrected. The undersigned counsel further admits to the error.
j. Fact 10: Officer Wayda testified that if an arrestee reported a headache lasting four days, he "would seek some sort of medical advice, whether that be from the jail staff … or … just taking them straight to the hospital," and that arrestees presenting with a multiday headache and neck pain are sometimes taken to a hospital for medical clearance before being accepted at the jail; he and Sergeant Buscher never discussed whether Dylan needed to be cleared at a hospital. Wayda Dep. 23:13-24:20, 28:4-14, 28:22-24.
    i. **Response:** City Defendants admit this is material and undisputed.
k. Fact 11: Dylan died on April 17, 2022 of MRSA meningoencephalitis. Pl. Ex. 41 (Autopsy); Doc. 188 UMF 18.
    i. **Response:** City Defendants admit this is material and undisputed.
l. Fact 12: MRSA meningitis is treated with antibiotics, and "the best time to treat … is at the very beginning when they're only having flu symptoms"; once the disease sets in, "most people either do not survive or survive with significant brain disability." Doc. 188-5 at 40:1-3, 87:3-10.
    i. **Response:** City Defendants admit this is undisputed. However, City Defendants assert this is immaterial. City Defendants are not responsible for diagnosing the condition or prescribing treatment. They are only responsible if that are aware of a serious medical need and fail to act in an objectively reasonable manner. *See Gonzalez v. McHenry County*, 40 F.4th

824, 827-28 (7th Cir. 2022); *Ortiz v. City of Chicago*, 656 F.3d 523, 530 (7th Cir. 2011); *Lopez v. City of Chicago*, 464 F.3d 711, 719 (7th Cir. 2006).

m. Fact 13: Dr. Wessely testified that a headache complaint warrants a medical evaluation, "[e]specially if you were about to incarcerate them," and that a "prudent layperson would say there's something really wrong here, this person needs to be evaluated." Doc. 188-5 at 87:11-20, 124:16-18.

   i. **Response:** City Defendants deny this both material and undisputed. In Plaintiff's response to the Medical Defendants' motion to bar Dr. Wessly as an expert, Plaintiff concedes that Dr. Wessly is not an expert in correctional-medicine. [Doc. 206 at pg. 2, 4, 7]. Plaintiff further acknowledges that Dr. Wessly cannot opine on "fit-for-confinement protocol". [Doc. 206 at pg. 4]. Thus, any opinion of Dr. Wessly as it relates to correctional medicine should not be considered by this Court.

## Argument

Plaintiff asserts that Defendants erroneously applied the law because defendants relied on *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010) which, according to Plaintiff involved an Eighth Amendment application to a convicted inmate and was corrected by *Kingsley v. Hendrickson*, 576 U.S. 389 (2015). Plaintiff's argument is wrong for two reasons. First, by plain application, *Gayton* dealt with a pre-trial detainee. *See Gayton*, 593 F.3d at 614 (explicitly stating that the deceased was jailed just one day before passing). Further, Plaintiff ignores other authority Defendants cite. In *Gonzales*, the court held "To state a claim for inadequate medical care, a complaint must allege that: (1) there was an objectively serious medical need; (2) the defendant committed a volitional act concerning the decedent's medical need; (3) that act was objectively unreasonable under the circumstances in terms of responding to the decedent's medical need; **and (4) the defendant acts 'purposefully, knowingly, or perhaps even recklessly' with respect to the risk of harm**." *Gonzalez v. McHenry County*, 40 F.4th 824, 827-28 (7th Cir. 2022) (emphasis added). *Gonzales* also dealt with a pre-trial detainee. *Id* at 826. Notably, *Gonzales* was decided after *Kingsley*, so certainly *Gonzales* is controlling precedent in this Circuit. Plaintiff's motion, however, spends no time addressing *Gonzales* or how it is wrong, instead hanging their hat entirely on the argument that Defendants erroneously relied on *Gayton*. Thus, Plaintiff must still establish that the Defendants acted purposefully, knowingly, or recklessly with respect to Dylan's medical needs. Plaintiff has failed to show that.

Even assuming that Plaintiff is correct with regards to the case law, and the only standard by which to judge City Defendants' conduct is the objective reasonableness standard, City

Defendants are still entitled to summary judgment in their favor. Dylan did not appear to be substantially unwell to the City Defendants. Ex. 1 at 42:6-17; Ex. 2; Ex. 3 at timestamp 19:45-19:55, 1:03:30-1:03:52, 1:34:04-1:34:10, 1:34:10-1:44:22. Plaintiff makes much ado over the statements that Sgt. Buscher thought Dylan looked unwell and was told Dylan was unwell. However, this Court can evaluate the evidence and look at the video where it does not appear that Dylan was so unwell that medical intervention was the objectively reasonable choice.

Objective reasonableness turns on the facts and circumstances of each particular case. *Graham* v. *Connor*, 490 U.S. 386, 396, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989). "A court must make this determination from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015). Here, the City Defendants were aware Dylan looked unwell, complained of his head hurting for four days, and said "my head". Ex. 3 at timestamp 19:45-19:55, 1:03:30-1:03:52, 1:34:04-1:34:10, 1:34:10-1:44:22.

Is it objectively unreasonable for officers to not take an arrestee to the hospital? Plaintiff's expert certainly thought it would be objectively reasonable for someone to treat flue symptoms and a headache with rest and fluids. Ex. 5 at 81:16-82:10. Plaintiff argues that Dr. Wessly opined the officers were not average persons for some unknown reason. However, Plaintiff concedes that Dr. Wessely is not a correctional medical expert. [Doc. 206 at pg. 2, 4, 7]. Plaintiff is not allowed to admit Dr. Wessely is not an expert in correctional medicine before this Court in one motion, and yet in another motion, claim that his opinion on correctional medicine has validity.

Based on the knowledge available to the City Defendants at the time, it was objectively reasonable to not take Dylan to seek medical treatment. Objectively reasonable people do not treat headaches by going to seek medical care. Especially since the City Defendants knew that Dylan was a drug user.

**Conclusion**

It was objectively reasonable for the City Defendants to not take Dylan for medical care. The City Defendants were only aware of a headache, something is treated with rest fluids. It was not objectively reasonable for the average person to believe there was something more sinister going on.

**Respectfully Submitted,**
**s/ Robert Hogue**

Bar Number IL #6318000
Attorney for Defendants
Senior Assistant Corporation Counsel
Room 313 Municipal Center East
800 East Monroe Street
Springfield, Illinois 62701-1689
Telephone: (217) 789-2393
Fax: (217) 789-2397
Email: robert.hogue@springfield.il.us
Paige.kennedy@springfield.il.us

**UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF ILLINOIS**
**SPRINGFIELD DIVISION**

| | | |
|---|---|---|
| **STARLA SMITH, AS ADMINISTRATOR OF THE ESTATE OF DYLAN SCHLIEPER-CLARK AND ON BEHALF OF HIS NEXT OF KIN** | ) | |
| **Plaintiff,** | ) | **No. 23-cv-3137** |
| **vs.** | ) | |
| **COUNTY OF SANGAMON, et al.,** | ) | |
| **Defendants.** | ) | |

**CERTIFICATE OF SERVICE**

I hereby certify that on **July 21, 2026,** I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Dylan P. Grady, ARDC# 6309120
BROWN, HAY & STEPHENS, LLP
205 S. Fifth Street, Suite 1000
P.O. Box 2459
Springfield, IL 62705-2459
dgrady@bhslaw.com

Thomas R. Applewhite
909 Olive Street, Suite 1110
St. Louis, MO 63101
Tom.applewhite@da-lawfirm.com

Peter Jennetten
James D. VanRheeden
Quinn Johnston
227 N E Jefferson Avenue
Peoria, IL 60602-1211
pjennetten@quinnjohnston.com
jvanrheeden@quinnjohnston.com

**Respectfully Submitted,**
**s/ Robert Hogue**
Bar Number IL #6318000
Attorney for Defendants
Senior Assistant Corporation Counsel
Room 313 Municipal Center East
800 East Monroe Street
Springfield, Illinois 62701-1689
Telephone: (217) 789-2393
Fax: (217) 789-2397
Email: robert.hogue@springfield.il.us
Paige.kennedy@springfield.il.us