E-FILED
Tuesday, 21 July, 2026 10:44:49 PM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| STARLA SMITH, AS ADMINISTRATOR OF THE ESTATE OF DYLAN SCHLIEPER-CLARK AND ON BEHALF OF HIS NEXT OF KIN, | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 3:23-cv-03137 |
| COUNTY OF SANGAMON, et al., | ) | |
| Defendants. | ) | |

**REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

NOW COME Defendants, SANGAMON COUNTY, PAULA CROUCH[1], WILLIAM SMITH, CHRISTINA WHEELER, COREY HILLEN, JARRED KIRBY, BRITNEY HICKS, CHRIS UNTHANK, COLLEEN KEROUAC, TRACY BERGAE, BRAD MEYER, DAVE FISHER, TOM ANSELL, TAMMY POWELL, and EARL GRIGSBY (hereinafter, the "County Defendants"), by and through their attorneys, Brown, Hay & Stephens, LLP and for their Reply in Support of their Motion for Summary Judgment, state as follows:

**INTRODUCTION**

Plaintiff's Response to Defendants Motion for Summary Judgment fails to create a genuine dispute of material fact on any of the issues before this court that would preclude summary judgment. Plaintiff misunderstands the law and the claims brought in this case. Plaintiff has failed

[1] Under Rule 25(d), any official capacity claim against a public officer is not abated simply because that person "ceases to hold office while the action is pending." Fed. R. Civ. P. 25(d). Instead, "[t]he officer's successor is automatically substituted as a party." *Id. See Aleman v. Milwaukee Cnty.*, 35 F. Supp. 2d 710, 717 (E.D. Wis. 1999) (substituting the "current Milwaukee County sheriff" pursuant to Rule 25(d) after concluding that the originally named person no longer held the office of Sheriff).

to establish any evidence that the Defendants did not act reasonably. Plaintiff also failed to bring a *Monell claim.* Finally, the evidence establishes that the Defendants are entitled to qualified immunity. As a result, this Court should grant Defendants' Motion for Summary Judgment.

**REPLY TO ADDITIONAL MATERIAL FACTS**

1. Dylan reported to P.O. Hicks that his head, neck, and back had been hurting for several days, and asked to be taken to a hospital. Hicks Dep. 11:15–12:8; Pl. Ex. 36 (probation notes); audio recording of the April 14 probation interview.

**REPLY: Undisputed and material.**

2. Hicks relayed Dylan's headache complaint to a jail sergeant or lieutenant; no one thereafter contacted medical staff. Fact 26; Hicks Dep. 14:7–12.

**REPLY: Undisputed and material.**

3. Officer Unthank heard Dylan say that his "body and head were hurting," escalated the matter to Sgt. Kerouac, and returned to Dylan's cell with her; no one contacted medical staff. Facts 30–32.

**REPLY: Undisputed and material.**

4. Sgt. Kerouac declined to summon a medical evaluation based on an unverified assumption that Dylan had already been seen by medical staff; in fact, no medical professional assessed Dylan at any time in custody. Fact 35; Bradley Dep. 44–48.

**REPLY: Disputed in-part. Material. Sgt. Kerouac did not consider Dylan's complaint about a headache significant enough to warrant a medical evaluation because she was under the impression that Dylan had recently been seen by medical staff. (Ex. 23, Kerouac Dep, 13:21–15:8).**

5. The County's cell-camera screenshots show Dylan lying on the medical-cell floor from approximately 8:11 p.m. onward — for the final two and a half hours before he was found unresponsive — in shifting positions, with his pants down and the bed pulled from the wall. Facts 43–52; Ex. 16.

**REPLY: Undisputed and material.**

6. Officers performed thirty-minute checks throughout that period and neither roused Dylan, entered the cell, nor summoned medical care as his condition visibly deteriorated. Facts 41–54; Ex. 16.

**REPLY: Disputed in-part. There was no blood, no visible injury, no labored breathing, and no attempt to summon help—no groaning, no verbal calls, no banging, nothing that would alert a reasonable officer to an emergency. *See* County Defendants' UMF ¶¶42–54.**

7. When Sergeant Howie performed the first third-shift check, he found Dylan lying on the medical-cell floor with no pants and unresponsive to verbal command, shaking and foaming at the mouth, with bruising on his face; the responding nurse could not obtain vital signs or blood pressure because Dylan was combative and unresponsive. Howie Dep. 31–32; Incident Reports (Ex. 6).

**REPLY: Disputed in-part, but immaterial in-part. Officer Howie did not initially observe any medical condition of Dylan. Nor does this fact establish or dispute what any other Defendant observed at any other point in time and is therefore immaterial to prove Dylan's condition at any other point.**

8. Sergeant Howie testified that, under the jail's standards, an officer who observed an inmate face down, with no pants, and giving no verbal response would not be permitted to

record a completed check and move on without summoning medical care, and that a thirty-minute check is not a complete welfare check where the inmate does not respond. Howie Dep. 11–12, 22.

**REPLY: Disputed but immaterial. A violation of a Jail Policy does not establish a constitutional violation. Further, Sgt. Howie's opinion or understanding of the policy is an improper opinion by a lay witness. See Fed. R. Evid. 701.**

9. Officer Meyer, who assisted at booking, testified that Dylan was "physically upset and just a little disheveled" but was "usually upset when he comes in" — reflecting Dylan's prior bookings — and that he did not recall Dylan appearing agitated or confused. Meyer Dep. 10, 12.

**REPLY: Undisputed and material.**

10. Correctional Officer Files, among the first officers to perform cell checks on Dylan, could not recall Dylan's condition, whether he complained of neck pain, or whether he requested medical attention, and made no record of any such observation. Files Dep. 17–18.

**REPLY: Undisputed but immaterial.**

11. Despite the booking questionnaire's directive that a "Mental Health and Medical referral needs to be made" upon a detainee's transgender status, no medical referral was made for Dylan, and his repeated head-, neck-, and back-pain complaints — relayed up the chain of command — never resulted in a medical evaluation by any provider during his custody. SMITH 0011 (fitness-to-confine/booking questionnaire); Hicks Dep. 11:15–12:8, 14:7–12; Unthank Dep. 15:9–17:23; Bradley Dep. 44–48.

**REPLY: Disputed in-part. Immaterial in-part. Dylan's transgender status does not prove any element of his claim and a medial or mental health referral related to Dylan's transgender status is also unrelated to his claim. Officer Fisher did report Schlieper-Clark's transgender status to his supervisor and to the mental health evaluators. (Ex. 19, Fisher Dep.,**

**at 19:5-11, 33:8-12). Officer Fisher placed the questionnaire in the medical paperwork tray, which the nurses check throughout the day. (*Id.* at 36:18-37:3). He also believed that another officer called medical to clear him for incarceration. (Pl. Ex. 47, Audio Interviews at 3:15-30)**

**This fact is also compound in that Dylan's complaints of head, neck and back-pain are unrelated to his transgender status and Dylan did not identify those complaints in the booking questionnaire process.**

**Dylan did not request medical attention during the process and did not identify any medical concerns to any of the medical, medication or mental health screening questions. (Ex. 4, Booking Questionnaires, Ex. 19, Fisher Dep. 17:25–19:4)**

12. A fellow detainee, Clarence Smith, Jr., attests that at the Sangamon County Jail inmates must request medical care through a shared kiosk and are routinely not seen for two to four days even for significant complaints, and that officers conducting cell checks walk past occupied cells without looking inside — evidence of a widespread practice and a failure to train. Pl. Ex. 45 (Smith Decl.) ¶¶ 4–11.

**REPLY: Immaterial and disputed in-part. It is undisputed that one of the ways for Sangamon County inmates to request medical care is through a kiosk. The remaining statements are disputed and immaterial as Mr. Smith's experience in the Sangamon County Jail in May 2025 is irrelevant and inadmissible to establish any event in April 2022 when Dylan resided in the Sangamon County Jail. Nor has Plaintiff brought a failure to train or other *Monell* claim against Sangamon County. Plaintiff's *Monell* claim was dismissed on February 12, 2024. See ECF No. 88.**

## ARGUMENT

### I. Defendants acted reasonably and were unaware of any serious medical need.

In their Motion for Summary Judgment, Defendants argued that they acted objectively reasonably and were unaware of any serious medical need. (Doc. 194, Def. Mot. for Summ. J. at 14-28). Defendants outlined precisely why each individual Defendant acted objectively reasonably. (*Id.*). In response, Plaintiff argued that the motion applied the incorrect standard and briefly discusses the facts surrounding each defendant. (Doc. 211, Pl. Resp. at 3-6). Plaintiff relies on several blatantly incorrect assertions about the law and the facts to bolster her point, and notably fails to meaningfully discuss or distinguish any of Defendants authorities. For the reasons that follow, this Court should reject Plaintiff's arguments and grant Defendant's Motion for Summary Judgment as to this issue.

#### a. ***Plaintiff's attack on Defendants' authorities fails because those authorities support the governing standard.***

Defendants identified and applied the proper governing standard: Plaintiff must show that the officers acted objectively unreasonably under the circumstances. (Def. Mot. for Summ. J. at 14-16). Plaintiff's contrary assertion that Defendants relied on the wrong standard is not supported by the law or by Defendants' briefing. (Pl. Resp. at 3-4). Indeed, Plaintiff relies on the same controlling authorities Defendants cited in their Motion, including *Kingsley v. Hendrickson*, 576 U.S. 389 (2015); *Miranda v. Country of Lake*, 900 F.3d 335 (7th Cir. 2018); and *McCann v. Ogle County*, 909 F.3d 881 (7th Cir. 2018). Plaintiff therefore cannot credibly maintain that Defendants applied an incorrect standard when her argument rests on the very same cases. The Court should reject that assertion outright.

Plaintiff's criticism of Defendants' reliance on *Davis v. Rook*, 107 F.4th 777 (7th Cir. 2024), rests on a fundamental misreading of that decision. Plaintiff incorrectly suggests that *Davis*

predated *Kingsley*. (Pl. Resp. at 4). It did not. *Davis* was decided nine years after *Kingsley* and expressly clarifies how the *Kingsley* objective-reasonableness standard applies. The Seventh Circuit held that the objective inquiry must account for the information actually known to the particular defendant at the time, rather than judging the defendant's conduct through hindsight. *Davis*, 107 F.4th at 780. Plaintiff attempts to recast that holding as a return to a subjective standard, but that is not what *Davis* says. To the contrary, the Seventh Circuit made clear that the "first step" in determining whether a defendant acted reasonably is to "take inventory of the factual information that he received." *Id.* at 781. Plaintiff's argument therefore fails because it ignores the very instruction *Davis* provides. Under the binding framework articulated by the Seventh Circuit, the reasonableness of each Defendant's conduct must be evaluated based on what that Defendant knew at the time—not based on Plaintiff's hindsight-driven reconstruction of events.

To be sure, Defendants did cite to several cases involving Eighth Amendment claims throughout its analysis, but those cases supported other legal principles. For example, those authorities address how courts determine whether a medical condition is sufficiently serious—an element common to both Eighth Amendment and Fourteenth Amendment deliberate indifference claims. *See Terry v. County of Milwaukee*, 357 F.Supp.3d 732, 746 (E.D. Wis. Jan. 11, 2019) (noting that "[w]ith regard to whether an inmate has a 'serious medical need,' the Court of Appeals continues to find Eighth Amendment precedent to be instructive on this issue"); *see, e.g., Ortiz v. City of Chicago*, 656 F.3d 523, 531 (7th Cir. 2011) (recognizing that the standard for the objective seriousness of a medical need is the same in Eighth and Fourteenth Amendment cases). Defendants also cited civil rights cases addressing the requirement of personal participation, which likewise applies to Fourteenth Amendment deliberate indifference claims. *See Kemp v. Fulton County*, 27 F.4th 491, 497-98 (7th Cir. 2022) (recognizing that a plaintiff may hold an official liable only for

his or her own misconduct in the context of a Fourteenth Amendment deliberate indifference claim). Accordingly, Defendants' use of these authorities did not alter the governing standard, and Plaintiff's assertion that Defendants applied the incorrect standard should be rejected.

***b. Serious Medical Condition***

Plaintiff takes issue with the fact that Defendants referenced the undisputed fact that Schlieper-Clark was not diagnosed with meningitis when the officers encountered him. However, Plaintiff misapprehends the significance of that fact. To reiterate, a medical condition is sufficiently serious it has either "been diagnosed by a physician as mandating treatment or… is so obvious that even a lay person would perceive the need for a doctor's attention." *Roe v. Elyea*, 631 F.3d 843, 857 (7th Cir. 2011). Plaintiff has presented no evidence that the condition was diagnosed by a physician during the relevant timeframe, so only the latter standard applies here.

Plaintiff argues that Schlieper-Clark had a serious medical need based on his "report[s] of a days-long severe headache with neck pain, vomiting, and progressive decline, who ends the night unresponsive on the floor." (Pl. Resp. at 4). Again, the reasonableness of all the officers must be based on the facts and circumstances known to them. *Davis*, 107 F.4th at 781. The burden is on the detainee to "show that the defendant actually received 'all the information about a potential health or safety risk.'" *Id.* at 780-81, *quoting Kemp*, 27 F.4th at 496.

As an initial matter, Plaintiff's characterization of the symptoms is unsupported by any evidence. Plaintiff does not include any citations to the record in support of her assertion that Schlieper-Clark vomited at any point, and that is also not reflected in Plaintiff's own material facts. Similarly, there is no evidence that the headache was days-long or severe. Thus, this Court should disregard that factor when determining whether there was a serious medical need.

Even assuming *arguendo* that those symptoms were present, Plaintiff has not demonstrated that the officers themselves were alerted to the fact that he had a serious medical need. As outlined more fully in Defendants' Motion for Summary Judgment, many of the officers had no information regarding Schlieper-Clark's symptoms at all. (Def. Mot. for Summ. J., at 17-18, 19, 25, 26, 27-28). Notably, the booking officers asked Schlieper-Clark whether he had any medical issues, and he denied having any. (UMF ¶ 17). Under those circumstances, there was nothing to alert many of the Defendants to the symptoms Plaintiff relies on. Even for the officers that knew of the headache, there was nothing to alert them that it was a *serious* medical need. (*See* Def. Mot. for Summ. J. at 19-20).

Plaintiff also suggests in her responses to Defendants' material facts that a mental health and medical referral should have been ordered due to Schlieper-Clark's transgender status. However, Plaintiff incorrectly asserts that a report was not made. Officer Fisher did report Schlieper-Clark's transgender status to his supervisor and to the mental health evaluators. (Ex. 19, Fisher Dep., at 19:5-11, 33:8-12). Officer Fisher placed the questionnaire in the medical paperwork tray, which the nurses check throughout the day. (*Id.* at 36:18-37:3). He also believed that another officer called medical to clear him for incarceration. (Pl. Ex. 47, Audio Interviews at 3:15-30). Thus, Officer Fisher did adhere to the questionnaire's directive. Additionally, the comments to that question indicate that Schlieper-Clark has "been in multiple times." (Ex. 4, Booking Questionnaire, at 2). This suggests that Schlieper-Clark was previously evaluated for that issue previously, and that it was not an emergent issue.

***c. Sergeant Tracy Bergae and Sergeant Earl Grigsby***

Plaintiff does not address the arguments made in favor of Sergeant Bergae or Sergeant Grigsby at all. A non-movant's failure to respond to arguments addressed in a summary judgment

motion results in a waiver. *Betco Corp., Ltd. v. Peacock*, 876 F.3d 306, 309 (7th Cir. 2017) (underdeveloped or conclusory arguments in response to motion for summary judgment constitutes waiver); *Walton v. U.S. Steel Corp.*, 497 F. App'x 651, 655 (7th Cir. 2012) (non-movant waived argument "by failing to raise it in response to summary judgment"). As a result, summary judgment should be granted in favor of both Sergeant Bergae and Sergeant Grigsby.

***d. Booking Officers (Officers Corey Hillen, Brad Meyer, Dave Fisher, and Thomas Ansell) and Escorting Officers (Officers Jarred Kirby, Sgt. Tracey Powell, and Superintendent William Smith)***

With regard to the booking and escorting officers, Plaintiff's response is undeveloped, unsupported, and unspecific. She merely states that she disputes the reasonableness of the officer's response. (Pl. Resp. at 6). Both the courts and opposing parties are "entitled to have issues clearly defined with pertinent authority cited and cohesive arguments presented." *See Velocity Investments, LLC v. Alston*, 397 Ill. App. 3d 296, 297 (2d Dist. 2010). "'It is a well-settled rule that a party opposing a summary judgment motion must inform the trial judge of the reasons, legal or factual, why summary judgment should not be entered,' and present their arguments to the Court before it enters final judgment." *De v. City of Chicago*, 912 F.Supp.2d 709, 733 (N.D. Ill. Dec. 14, 2012). What Plaintiff is attempting to do in this case is "foist the burden of argument and research" to both this Court and to the Defendants. *Velocity Investments*, 397 Ill.App.3d at 297. This is improper and is a basis for this court to reject Plaintiff's arguments. Indeed, courts often find undeveloped arguments to be waived. *Est. of Mooreland v. Dieter*, 395 F.3d 747, 759 (7th Cir. 2005); *see also De,* 912 F.Supp.2d at 733; *Graham v. Coca-Cola Consolidated*, 2021 WL 7710797, at *1 (C.D. Ill. Mar. 5, 2021); *Art Akiane LLC v. Art & Soulworks LLC*, 2021 WL 5163288, at *9 (N.D. Ill. Nov. 5, 2021) (noting "[p]erfunctory and undeveloped arguments are waived, as are arguments unsupported by legal authority."). Here, too, because Plaintiff has failed to set forth any

evidence demonstrating a genuine issue of material fact, this Court should grant summary judgment for Defendants.

***e. Officer Chris Unthank***

Plaintiff does not respond to Defendant's arguments that Officer Unthank was unaware that Schlieper-Clark's complaints of a headache was an objectively serious medical condition. (Pl. Resp. at 5). Instead, Plaintiff only asserts (without additional explanation) that a jury could find that Officer Unthank's report to his supervisor may not be a reasonable response. (*Id.*). However, Plaintiff makes no attempt to address any of the cases cited to by Defendants. Those cases establish that a complaint of a headache or neck pain, standing alone, does not require immediate medical attention. Further Plaintiff does not address *Est. of Wallmow v. Oneida County*, 99 F.4th 385, 393 (7th Cir. 2024), which holds that a correctional officer acts reasonably when informing his colleagues about his health concerns. Plaintiff notably does not dispute that Officer Unthank did inform his supervisor about the relatively minor complaints. Based on the lack of arguments by Plaintiff, this Court should reject her argument.

***f. Britney Hicks***

In their Motion for Summary Judgment, Defendants pointed out that Britney Hicks was not a member of the supervising agency, as she was a probation officer. Plaintiff does not address this at all. Instead, Plaintiff suggests that her response was unreasonable but does not address what she should have done in the absence of authority to call for medical staff herself. Plaintiff provides no authority to suggest that a person unaffiliated with a detaining agency may be held liable for that agency's alleged unreasonable response. As a result, summary judgment is proper as to Defendant Hicks, as well.

***g. Sergeant Colleen Kerouac***

Plaintiff argues that Sergeant Kerouac's actions were unreasonable because there was no evidence that Schlieper-Clark was under the care of a medical professional. Again, Plaintiff does not address Defendants' arguments that Schlieper-Clark's headache and neck pain were not an objectively serious medical condition requiring immediate attention. The failure to meet this prong of the analysis alone merits summary judgment for Sergeant Kerouac. *see Miranda*, 900 F.3d at 353-54 (recognizing that the plaintiff must prove both an objectively serious medical condition and that each defendant acted objectively unreasonably under the circumstances).

Plaintiff focuses on the fact that there was no evidence that Schlieper-Clark was not under the care of a medical practitioner at the time, despite Sergeant Kerouac's belief to the contrary. Plaintiff takes the exact opposite position in her response to the Medical Defendants' Motion for Summary Judgment. (*See* Doc. 207). In that motion, Plaintiff argues that although Schlieper-Clark was not seen by the Medical Defendants, his presence in the medical unit in close proximity to and supervised by the medical staff rendered him under their care. (*Id.*). Thus, even if Sergeant Kerouac's deference to the medical staff at the time was mistaken, it cannot be considered unreasonable in light of Schlieper-Clark's later placement in the medical unit. As a result, this Court should also grant summary judgment in her favor as to this prong.

***h. Officer Christina Wheeler***

In their Motion for Summary Judgment, Defendants argued that Officer Wheeler acted objectively reasonably when considering the totality of circumstances. Nothing about her brief snapshots of Schlieper-Clark's behavior suggested anything alarming. (Def. Mot. for Summ. J. at 26-27). Additionally, Defendants again pointed out that he was under the supervision of the medical staff in the medical wing. (*Id.*). In response, Plaintiff does not dispute that Officer

Wheeler's observations were brief and that it was common for detainees to lie on the floor. (Pl. Resp. at 4-5).

Plaintiff argues that the jury should determine whether this was objectively reasonable. However, Plaintiff does not meaningfully address Officer Wheeler's deference to the medical professional. Plaintiff argues that this fact should be disregarded because no medical professional ever assessed Schlieper-Clark. (Pl. Resp. at 5). Again, this completely contradicts Plaintiff's arguments in response to the Medical Defendants. (*See* Doc. 207). Plaintiff's statement of material facts also supports Officer's Wheeler's deference to the nurses' more continuous observation. Plaintiff herself noted that Schlieper-Clark's presence in the medical unit obligated the nurses to observe and assess him, and that the nurses repeatedly walked past his cell throughout the night. (Doc. 206 at 1-2, 5). Additionally, Schlieper-Clark's cell was directly observable from the medical station, brightly lit, and equipped with unobstructed windows.

Under these conditions and based on Plaintiff's own arguments, Officer Wheeler's response was objectively reasonable.

Plaintiff's reference to Sergeant Howie's testimony does not undermine this point. To be clear, Sergeant Howie stated that a check is completed if the individual in the cell is "alert, talking, sleeping, breathing and then you hit the you hit the [*sic*] scan point in each designated area of that block or area." (Dep. of Howie at 11:19-22). He also noted that Schlieper-Clark was breathing, which satisfies the requirements of the cell check. (*Id.* at 14:12). He stated that he personally would choose to speak to an individual if they are on the floor. (*Id.* at 12:21-13:13).This does not demonstrate, as Plaintiff suggests, that Officer Wheeler did not follow established protocol.

Additionally, Sergeant Howie's testimony underscores why an objectively reasonable officer may not have been aware of the medical emergency. Specifically, when he asked Schlieper-

Clark to put pants on, he believed first that Schlieper-Clark was asleep, and then saw a hand movement in response waving him away. (*Id.* at 32:18-39:4). Significantly, he also noted that there are a variety of non-medical reasons why inmates lay on the floor without pants. (*Id.* at 33:10-34:1). It was only after the third time he asked that he went into the cell and discovered the medical emergency. (*Id.*).

Thus, based on the totality of circumstances, Plaintiff has not shown that there is a genuine dispute as to the material facts. Therefore, summary judgment is also appropriate as to Officer Wheeler.

**II. Plaintiff has failed to bring a *Monell* claim or other Federal Claim against the County or Sheriff in his official capacity.**

Plaintiff argues her Third Amended Complaint, Count I is brought both as a *Monell* claim and individually against all Defendants. Plaintiff is mistaken. Plaintiff initially attempted to plead official capacity and *Monell* claims against Sangamon County in her July 24, 2023, First Amended Complaint. ECF No. 47. The Sangamon County Defendants moved to dismiss Plaintiff's First Amended Complaint on August 7, 2023. ECF No. 55. Thereafter, on February 12, 2024, the Court granted in-part the County Defendants' Motion to Dismiss. ECF No. 88. The Court agreed with the County Defendants and found that Plaintiff had failed to state a *Monell* claim. *Id*. The Court's dismissal was without prejudice but Plaintiff's Third Amended Complaint does not contain a *Monell* claim.

Plaintiff's third amended complaint did not re-plead a *Monell* claim simply because Plaintiff mentions the word "policy" in three paragraphs. "[A]n official capacity suit is another way of pleading an action against an entity of which the officer is an agent." *Ford v. Wexford Health Sources, Inc.*, No. 12 C 4558, 2013 WL 474494, at *8 (N.D. Ill. Feb. 7, 2013) (quoting *Sow v. Fortville Police Dep't*, 636 F.3d 293, 300 (7th Cir. 2011)). Put differently, an official capacity

suit is "tantamount to a claim against the government entity itself." *Klebanowski v. Sheahan*, 540 F.3d 633, 637 (7th Cir. 2008). As the Supreme Court held in *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978), a municipal entity is not vicariously liable for the constitutional torts of its employees. Instead, a municipal entity may be liable only for "conduct that is properly attributable to the municipality itself." *First Midwest Bank v. City of Chicago*, 988 F.3d 978, 986 (7th Cir. 2021).

Count I is titled as claims under 42 U.S.C. §1983 and brought against the "Custodial Defendants" and the "Medical Defendants." Plaintiff defines the "Custodial Defendants" in Paragraph 39 of the Third Amended Complaint and the Sheriff, in his official capacity, is not identified as a "Custodial Defendant." Further, Plaintiff cannot mix causes of action. As discussed, a *Monell* claim is a separate cause of action against a municipality for its liability. Further, Rule 10(b) requires that "each claim founded on a separate transaction or occurrence" be "stated in a separate count" if "doing so would promote clarity." Fed. R. Civ. P. 10(b). *See also Alioto v. Town of Lisbon,* 651 F. 3d 715, 721 (7th Cir. 2011)(a court "may require that allegations be grouped into logical counts for claims that are 'founded on' separate transactions or occurrences").

Defendants did not move for summary judgment related to any *Monell* claim because no such claim exists here.

**III. The County Defendants are entitled to qualified immunity as to Plaintiff's Fourteenth Amendment Claim.**

The County Defendants further argued that they were entitled to qualified immunity because Plaintiff cannot establish either that there was a constitutional violation or that the alleged violated rights were so clear that a reasonable official would understand that what he is doing violates that right. (Def. Mot. for Summ. J. at 28-29). In response, Plaintiff only relies on the fact that *Miranda* established the relevant standard. (Pl. Resp. at 8). But Plaintiff misconstrues her

burden of demonstrating that the law was clearly established. The Court's review of existing law must focus on "particularized" facts and concrete legal principles to clarify the law in relation to Defendant's conduct at the time the conduct occurred. *Anderson v. Creighton*, 483 U.S. 635 (1987). A legal principle framed at a "high level of generality" does not meet this standard. *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011).

*Miranda*, the only case cited to by Plaintiff, does not support the inference that the law was clearly established. That case involved an inmate who suffered from starvation and dehydration over the course of nearly two weeks during her hunger strike. *Miranda*, 900 F.3d at 341-42. Importantly, she was also under observation in the medical unit. *Id.* The Court held that the jail staff were entitled to rely on the professional judgments of the medical staff, and that they were shielded from liability. *Id.* at 343-44.

*Miranda* involves complete distinct facts from this case and ultimately did not find that the jail personnel were liable for the alleged deliberate indifference. As a result, this case does not aid Plaintiff in satisfying her burden of proving that the law was clearly established under these particularized facts. In the absence of a clearly established law, the County Defendants are entitled to qualified immunity.

## CONCLUSION

WHEREFORE for the above and foregoing reasons, SANGAMON COUNTY, PAULA CROUCH, WILLIAM SMITH, CHRISTINA WHEELER, COREY HILLEN, JARRED KIRBY, BRITNEY HICKS, CHRIS UNTHANK, COLLEEN KEROUAC, TRACY BERGAE, BRAD MEYER, DAVE FISHER, TOM ANSELL, TAMMY POWELL, and EARL GRIGSBY respectfully request this Honorable Court grant them summary judgment on all of Plaintiff's claims.

Respectfully submitted by,

BROWN, HAY & STEPHENS, LLP

/s/Dylan P. Grady
Dylan P. Grady, #6309120
205 S. Fifth Street, Suite 1000
Springfield, Illinois 62701
Telephone: (217) 544-8491
Facsimile: (217) 544-9609
dgrady@bhslaw.com
Attorneys for County Defendants

**CERTIFICATE OF SERVICE**

I hereby certify that on July 21, 2026 I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Thomas R. Applewhite
909 Olive Street, Suite 1110
St. Louis, MO 63101
Tom.applewhite@da-lawfirm.com

Peter Jennetten
James D. VanRheeden
Quinn Johnston
227 N E Jefferson Avenue
Peoria, IL 60602-1211
pjennetten@quinnjohnston.com
jvanrheeden@quinnjohnston.com

Robert Hogue
Senior Assistant Corporation Counsel
City of Springfield
Room 313 Municipal Center East
800 East Monroe Street
Springfield, IL 62701-1689
Robert.Hogue@springfield.il.us

Under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned certifies that the statements set forth in this instrument are true and correct, except as to matters therein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that he verily believes the same to be true.

s/ Dylan P. Grady