E-FILED
Tuesday, 25 August, 2026 09:30:30 PM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

STARLA SMITH, AS ADMINISTRATOR )
OF THE ESTATE OF DYLAN )
SCHLIEPER-CLARK AND ON BEHALF )
OF HIS NEXT OF KIN, )
)
Plaintiff, )
)
v. ) Case No. 3:23-cv-03137
)
COUNTY OF SANGAMON, et al., )
)
Defendants. )

**RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION TO BAR EXPERT**

NOW COME Defendants, SANGAMON COUNTY, PAULA CROUCH[1], WILLIAM SMITH, CHRISTINA WHEELER, COREY HILLEN, JARRED KIRBY, BRITNEY HICKS, CHRIS UNTHANK, COLLEEN KEROUAC, TRACY BERGAE, BRAD MEYER, DAVE FISHER, TOM ANSELL, TAMMY POWELL, and EARL GRIGSBY (hereinafter, the "County Defendants"), by and through their attorneys, Brown, Hay & Stephens, LLP and for their Response in Opposition to Plaintiff's Motion to Bar Expert, state as follows:

**ARGUMENT**

In her combined Motion to Bar, in part, the Opinions of Dr. Emil Dameff and Motion to Confirm Plaintiff's Right to Examine Him, Plaintiff asks the Court for three forms of unwarranted relief. First, she seeks to exclude Dr. Dameff's opinions concerning the Sangamon County

[1] Under Rule 25(d), any official capacity claim against a public officer is not abated simply because that person "ceases to hold office while the action is pending." Fed. R. Civ. P. 25(d). Instead, "[t]he officer's successor is automatically substituted as a party." *Id. See Aleman v. Milwaukee Cnty.*, 35 F. Supp. 2d 710, 717 (E.D. Wis. 1999) (substituting the "current Milwaukee County sheriff" pursuant to Rule 25(d) after concluding that the originally named person no longer held the office of Sheriff).

Defendants' response to Dylan Schlieper-Clark's condition by attacking his qualifications—while ignoring his extensive hands-on experience in officer training. Second, she seeks permission to essentially recast Dr. Dameff as an expert for her own case and to elicit opinions against the Healthcare Defendants, which falls outside the purpose for which he was retained. Third, despite having already used the full seven hours ordinarily permitted for a deposition, Plaintiff requests additional examination time. Because none of these requests is warranted, the Court should deny the motion in its entirety.

**A. Dr. Dameff is both a qualified and reliable expert, and his opinions regarding the Correctional Officers' conduct should be deemed admissible.**

Dr. Emil Dameff is qualified to offer the challenged opinions, and his methodology is reliable under Rule 702. His decades of hands-on correctional-medicine experience—including training correctional officers to recognize medical deterioration, observing cell checks, and applying correctional policies in leadership roles—provides a sufficient foundation for his opinions about when officers should escalate an inmate's care. Because those opinions are also relevant and reliably grounded in his specialized experience, they should be admitted.

Dr. Dameff has spent more than three decades focusing his practice on correctional medicine. (Pl. Ex. B at 1). In addition to being a healthcare professional, he has personally trained correctional officers to recognize medical deterioration, escalate unsafe conditions, and determine when an inmate requires immediate medical attention or supervisory intervention. (Pl. Ex. A at 23:18-25:6). He has also accompanied correctional officers during numerous cell checks. (*Id.* at 23:18-25:6). In fact, his responsibilities expressly included "direct training of officers and retraining of officers" in jails and prisons. (*Id.* at 26:11-18). This practical experience with correctional officers—not merely his status as a healthcare professional—provides the foundation for his opinions concerning correctional officers' response to an inmate's deteriorating condition.

In assessing whether Dr. Dameff's expert opinions are admissible, his full range of experience matters. Federal Rule of Evidence 702 governs whether expert testimony may be admitted. A witness may offer expert opinions if the proponent shows that the testimony will help the jury, is based on sufficient facts or data, reflects reliable principles and methods, and results from a reliable application of those methods to the facts. *Anderson v. Raymond Corp.*, 61 F.4th 505, 508 (7th Cir. 2023). "In other words, the district court must evaluate: (1) the proffered expert's *qualifications*; (2) the *reliability* of the expert's methodology; and (3) the *relevance* of the expert's testimony." *Gopalratnam v. Hewlett-Packard Company*, 877 F.3d 771, 779 (7th Cir. 2017). Whether the proposed expert seeks to base his testimony on professional studies or entirely on personal experience, the expert must employ the same level of intellectual rigor that characterizes the practice of an expert in the relevant field. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999).

Dr. Dameff satisfies each requirement of Rule 702. Plaintiff does not dispute the relevance of his testimony. (*See* Pl. Mot., Doc. 224; Pl. Mem., Doc. 225). The dispute therefore concerns only qualification and reliability, and both favor admission: Dr. Dameff's extensive, hands-on experience in correctional settings qualifies him to offer the challenged opinions, and his methodology reliably applies that experience under Rule 702 and the governing authorities.

**1. Qualification**

Dr. Dameff's full range of practical experience is central to the admissibility inquiry. The qualification prong tasks courts with evaluating the "knowledge, skill, experience, training, or education" of the expert. Fed. R. Evid. 702. "[A] court should consider a proposed expert's full range of practical experience as well as academic or technical training when determining whether that expert is qualified to render an opinion in a given area." *Smith v. Ford Motor Co.*, 215 F.3d

713, 718 (7th Cir. 2000). "Whether a witness is qualified as an expert can only be determined by comparing the area in which the witness has superior knowledge, skill, experience, or education with the subject matter of the witness's testimony." *Gayton v. McCoy*, 593 F.3d 610, 616 (7th Cir. 2010) (internal quotation marks omitted).

Indeed, Rule 702 expressly permits expert testimony grounded in experience. *Smith v. Ford Motor Co.*, 215 F.3d 713, 718 (7th Cir. 2000). Indeed, "no one denies that an expert might draw a conclusion from a set of observations based on extensive and specialized experience." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 156 (1999). Nor must a qualified witness possess the narrow specialization Plaintiff demands. Rather, courts recognize that "an adequately qualified witness need not specialize in the field in which the opinion is offered." *State Farm Fire & Cas. Co. v. Electrolux Home Products, Inc.*, 980 F. Supp. 2d 1031, 1046 (N.D. Ind. 2013), *citing Norwest Bank, N.A. v. K-Mart Corp.*, 1997 WL 33479072, at *2 (N.D. Ind. Jan. 29, 1997), *and* Matthew Bender & Co., Inc., FEDERAL RULES OF EVIDENCE MANUAL § 702.02 (2012) ("[C]ourts have not required a party to show that the witness is an outstanding expert, or to show that the witness is well-known or respected in the field; these are generally questions of weight."). The controlling inquiry is, therefore, "not whether an expert witness is qualified in general, but whether his 'qualifications provide a foundation for [him] to answer a specific question.'" *Gayton v. McCoy*, 593 F.3d 610, 617 (7th Cir. 2010) (alterations in original), *quoting Berry v. City of Detroit*, 25 F.3d 1342, 1351 (6th Cir. 1994).

For example, in *Mitchum v. City of Indianapolis*, 534 F.Supp.3d 1001, 1007 (S.D. Ind. 2021), the district court held that two witnesses were qualified as experts in law-enforcement canine training based on practical rather than formal educational experience. The first, retired law-enforcement canine trainer Kyle Heyen, remained qualified despite having been retired for several

years and not having attended any continuing-education courses. *Id.* The second, Tim Hartsock, was qualified based on 20 years of experience training civilian and law-enforcement dogs. *Id.* The court rejected the argument that Hartsock lacked qualification merely because he was not a law-enforcement officer, had not handled apprehensions with law-enforcement dogs, and had never tracked or trailed suspects for a police department. *Id.* Instead, his extensive experience training law-enforcement dogs and participating in canine tracks supplied the necessary foundation. *Id.*

Plaintiff's reliance on *Ollison v. Gossett*, 136 F.4th 729 (7th Cir. 2025), is misplaced because the expert there lacked the very experience Dr. Dameff possesses. In that case, the physician was deemed to be unqualified to render an opinion as to the care the warden provided. *Id.* at 743. However, in explaining its reasoning, the Seventh Circuit explained that she was not qualified to do so due to "her lack of experience in prison administration." *Id.* The physician also did not review the relevant grievance policies in advance of her testimony. *Id.* Contrary to Plaintiff's assertion, *Ollison* therefore does not establish that physicians are categorically unqualified to express opinions on the conduct of correctional staff. Instead, it confirms that qualification turns on whether the witness has experience and knowledge tied to the specific opinions offered.

Unlike the physician in *Ollison*, Dr. Dameff has extensive experience directly relevant to his opinions concerning the Correctional Officers. And like the experts in *Mitchum*, he acquired that specialized knowledge through sustained, hands-on work. Specifically, he trained correctional officers in dozens of facilities, observed officers conducting cell checks, and served in leadership roles in correctional settings. Unlike the physician in *Ollison*, Dr. Dameff is also familiar with the policies and guidelines governing correctional officers in Sangamon County and nationally, and he addressed those authorities during his deposition. (See, e.g., Pl. Ex. A at 166:25-173:12, 178:16-

181:11, 199:20-200:24; Pl. Ex. B at 3, 9-12, 23-24). Although he did not train as a correctional officer or draft a security-check policy (*see* Pl. Mem., Doc. 225, at 13), Rule 702 does not require those exact credentials. His practical experience gives him specialized knowledge beyond that of an average layperson and provides a foundation for the specific opinions he offers.

The other two cases relied on by Plaintiff, *Haley v. Gross*, 86 F.3d 630 (7th Cir. 1996), and *Jiminez v. City of Chicago*, 732 F.3d 710 (7th Cir. 2013), also do not support his argument. The issues in both cases concerned whether the Court impermissibly permitted those experts to testify as to legal standards, rather than professional standards. Neither case involved a challenge to those experts' qualifications, so neither case is relevant here. However, to the extent that Plaintiff objects to certain phrases used by Dr. Dameff, the authority cited to by Plaintiff supports the notion that "testimony regarding relevant professional standards can give a jury a baseline to help evaluate whether a defendant's deviations from those standards" amounted to a constitutional violation. *Jiminez*, 732 F.3d at 721-22. The Seventh Circuit has rejected the argument that such testimony amounted to an improper legal conclusion. *Id.* But even if this Court does take issue with the phrase "objectively apparent medical emergency," that does not demand barring all of Dr. Dameff's opinions which use that phrase. Instead, that issue could easily be cured through other means, such as clarifying during Dr. Dameff's testimony that he is referring solely to a professional standard, giving a limiting instruction, or by instructing Dr. Dameff to use alternative language.

Finally, Plaintiff questions Dr. Dameff's application of his knowledge to the facts of this case. But, "[t]he question of whether the expert is credible or whether his or her theories are correct given the circumstances of a particular case is a factual one that is left for the jury to determine after opposing counsel has been provided the opportunity to cross-examine the expert regarding his conclusions and the facts on which they are based." *Smith v. Ford Motor Co.*, 215 F.3d 713,

719 (7th Cir. 2000). The trial court's function at this stage is determining whether the Rule 702 requirements have been met. *Id.* Therefore, Plaintiff's concern should be disregarded at this stage, as Plaintiff will have the opportunity to cross-examine Dr. Dameff.

Accordingly, Dr. Dameff's extensive correctional-medicine experience, direct training of correctional officers, observation of cell checks, familiarity with governing policies and guidelines, and leadership in correctional settings provide a sufficient foundation for his opinions. He is therefore qualified under Rule 702 to explain the factors correctional officers should consider when deciding whether to escalate an inmate's care to a medical professional.

**2. Reliability**

Plaintiff's reliability challenge rests on a critical error: it demands a laboratory-style, testable method for opinions derived from specialized correctional-medicine experience. Rule 702 imposes no such one-size-fits-all requirement. Dr. Dameff used a transparent and reproducible professional framework—identifying observable signs of medical deterioration, comparing the officers' documented conduct with correctional policies and training, and determining whether those signs required escalation. Plaintiff further argues that Dr. Dameff's methods were unreliable because he only evaluated the Correctional Officers, rather than the rest of the named defendants. Finally, Plaintiff specifically challenges three of Dr. Dameff's opinions.

Rule 702 asks whether an expert relied on sufficient facts or data, used reliable principles and methods, and reliably applied those principles and methods to the facts. Fed. R. Evid. 702(b)–(d). The inquiry focuses "on the expert's methodology, not his ultimate conclusions." *Kopplin v. Wisconsin Cent. Ltd.*, 914 F.3d 1099, 1104 (7th Cir. 2019). The Seventh Circuit has also endorsed additional considerations bearing on the reliability of the methodology, including whether the expert accounted for alternative explanations, avoided unjustified extrapolation, exercised the

same care used in ordinary professional work, and worked within a field capable of producing reliable results for the opinion offered. *Gopalratnam*, 877 F.3d at 779-80 (citations omitted). However, the Court has also cautioned that "this list is neither exhaustive nor mandatory." *C.W. ex rel. Wood v. Textron, Inc.*, 807 F.3d 827, 835 (7th Cir. 2015).

Because there are many different kinds of experts and expertise, the test for reliability is flexible, and no single factor is dispositive. *Gopalratnam*, 877 F.3d at 780. Courts have recognized the difficulty of applying the *Daubert* factors to social sciences, which often rely on personal knowledge or experiences. *See Kumho*, 526 U.S. at 150-51. The Supreme Court acknowledged that, although the fundamental task of the trial court remains the same no matter what sort of specialized information is proffered, the *Daubert* factors set forth above should not be considered a definitive check list suitable for the evaluation of all kinds of evidentiary submissions involving specialized knowledge. *See id.* The committee comments also explain,

> "Nothing in this amendment is intended to suggest that experience alone—or experience in conjunction with other knowledge, skill, training or education—may not provide a sufficient foundation for expert testimony. To the contrary, the text of Rule 702 expressly contemplates that an expert may be qualified on the basis of experience. In certain fields, experience is the predominant, if not sole, basis for a great deal of reliable expert testimony."

Fed. R. Evid. 702, 2000 advisory committee's note. The question, therefore, is not whether Dr. Dameff's framework can be tested like a scientific hypothesis; it is whether he explained how his correctional experience led him from the record facts to his opinions.

The Seventh Circuit's treatment of experience-based narcotics and firearms testimony illustrates the point. Such opinions do not fit neatly within the traditional *Daubert* factors, yet they remain admissible when experts apply knowledge gained through years of relevant work to explain conduct and circumstances outside an ordinary juror's experience. *United States v. Conn*, 297 F.3d 548, 556 (7th Cir. 2002). There, the investigators did not conduct experiments or write peer-

reviewed articles. Instead, the narcotics investigators "applied the knowledge gained through years of experience and, essentially, described for the jury what they knew about narcotics dealers." *Id.* Reliability followed from the disciplined use of relevant experience—not from forcing that experience into an inapposite scientific model.

The same principles should be applied to Dr. Dameff. Drawing on more than three decades in correctional medicine, direct officer training, observation of cell checks, leadership experience, and familiarity with governing policies, he identified observable custody-level triggers of medical deterioration and assessed whether the officers responded appropriately based on their training and procedures. Relating to his methodology, he explained that correctional officers are not trained to identify complex diseases, but they are required to perform other functions, such as observation, notification of supervisors or medical staff, communication, and emergency escalation. (Pl. Ex. B at 3-4). He assessed whether the specific officer, in a specific role and time window, would have received or observed an "observable custody-level trigger" which would have required them to take action. (*Id.*). He later provided examples of the term "observable custody-level trigger" and explained that the term related to "real-time correctional observation." (*Id.* at 4). Using materials from the record relevant to the Correctional Officers and the applicable professional standards, he then assessed whether the officers carried out their assigned functions appropriately and professionally based on their own observations. (*Id.*).

His framework is not an *ipse dixit* conclusion. Rather, it identifies the operative facts, explains why they matter in a correctional setting, specifies the professional duties they implicate, and connects the facts to the need for escalation based on the relevant professional standards. It also confines each opinion to what a particular officer could observe or know at the time, thereby

avoiding hindsight and unjustified extrapolation. Those features make the reasoning transparent, repeatable, and capable of meaningful adversarial testing.

Plaintiff criticizes this methodology because Dr. Dameff used a non-exhaustive list of examples to explain the phrase "observable custody-level trigger," rather than a single rigid definition or checklist. (Pl. Mem., Doc. 225, at 8). But experience-based expert analysis often works the same way. A narcotics expert, for example, may identify recurring indicators of trafficking—such as packaging, transaction patterns, coded language, or the quantity of drugs—without claiming that every dealer uses the same *modus operandi* or that any one indicator is always present. The expert's method is reliable not because it mechanically applies an exhaustive checklist, but because it uses specialized experience to evaluate the significance of observable facts in context.

Likewise, inmates experiencing medical deterioration will not display identical symptoms, and no fixed list can anticipate every warning sign. Dr. Dameff's non-exhaustive examples therefore do not render his framework unreliable. Instead, the flexibility illustrates how his experience guides a contextual assessment of whether observable signs should have prompted officers to notify medical staff, contact a supervisor, or escalate the response.

Plaintiff further suggests that an expert opinion is not necessary because Dr. Dameff treats the officers as laypeople rather than as medical experts. (Pl. Mem., Doc. 225, at 8). However, "[i]t is part of the normal role of the expert not merely to describe patterns of conduct in the abstract, but to connect actions in a specific case to those patterns." *United States v. Brown*, 7 F.3d 648, 654 (7th Cir. 1993) (internal quotations omitted). The purpose of the expert testimony here is to assist the jury in interpreting the significance of the evidence by connecting the Correctional Officers' observations to their training and experience. This is particularly important here because the jury

is tasked with evaluating whether the officers were objectively reasonable, which is evaluated "from the perspective of a *reasonable officer on the scene*, including what the officer knew at the time, not ... [based on] hindsight." *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015) (emphasis added); *see also Davis v. Rook*, 107 F.4th 777, 780 (7th Cir. 2024) ("[T]he defendant's knowledge of the factual circumstances informs whether a reasonable officer under the same circumstances would have developed subjective or personal awareness of the risk of harm to the plaintiff."). Notably, the standard is based on the perspective of a reasonable officer, not a reasonable layperson. Because of this, it is necessary to have an expert who can contextualize the observations within the standards and training applicable to correctional officers in order to assist the jury in determining what an objectively reasonable correctional officer would have done.

Plaintiff's complaint that Dr. Dameff did not evaluate the nursing staff likewise identifies no methodological gap. (Pl. Mem., Doc. 225, at 5–6). He was retained by the Sangamon County Defendants to evaluate correctional officers, not separately represented medical personnel. The medical contractor's policies and the nurses' deposition transcripts governed actors and duties outside that assignment, and Plaintiff does not identify any omitted nursing material that would alter what a correctional officer observed, knew, or was required to do. Rule 702 requires sufficient facts for the opinions offered; it does not require an expert to analyze every defendant or review material irrelevant to the defined subject of the testimony. The focused scope of Dr. Dameff's review therefore strengthens, rather than undermines, the fit between his methodology and his opinions.

Plaintiff's opinion-specific attacks fare no better. Opinion 7 was not a bare endorsement of Officer Wheeler's judgment. Dr. Dameff principally relied on Officer Howie's testimony and applied the same role-, time-, and observation-specific framework described above. Plaintiff's

disagreement with that factual assessment does not show that the framework changed or was applied arbitrarily.

The challenges to Opinions 7 through 10 similarly concern evidentiary interpretation: Plaintiff disputes Dr. Dameff's review of the video, emphasizes a contrary internal investigation, and asserts that he relied on faulty factual premises. But Plaintiff does not show that he abandoned his stated method, ignored an indispensable source, or drew a conclusion beyond what that method permits. Competing interpretations of the video and testimony can be explored through cross-examination and contrary evidence, but they do not establish that the method itself is unreliable. *See Walker v. Soo Line R. Co.*, 208 F.3d 581, 587 (7th Cir. 2000) (stating that when addressing whether expert testimony is reliable the district court should not consider the "factual underpinnings" of the testimony but should determine whether "[i]t was appropriate for [the expert] to rely on the test that he administered and upon the sources of information which he employed"); *Smith*, 215 F.3d at 718-19 (noting that the correctness of the opinions is a question of weight, not admissibility).

Opinion 11 is no different. Dr. Dameff did not disclaim reliance on the governing policies or suggest that he had never reviewed them; he explained only that he would need to consult the documents to quote or describe their precise terms. An expert's refusal to improvise policy language from memory is not unreliability. It reflects appropriate care and provides a straightforward subject for examination using the policies themselves.

Taken together, the record shows Dr. Dameff applied a defined professional framework to officer-specific facts, used sources suited to the opinions he was retained to offer, confined his conclusions to real-time correctional observations, and explained the reasoning linking those observations to the need for escalation. Plaintiff may contest the facts and conclusions before the

jury, but she has not identified a failure of principles, method, or application under Rule 702. The Court should therefore find his challenged opinions reliable and deny Plaintiff's request to bar them.

**B. This Court should not permit Plaintiff to call Dr. Dameff as her own expert regarding his unproffered opinions about the nursing staff and should not permit Plaintiff to have additional time to depose Dr. Dameff about those opinions.**

Next, Plaintiff asks for additional time to depose Dr. Dameff so that counsel may further question him about the nursing staff. The Court should deny that request because Plaintiff has not shown that additional time is needed for a fair examination. The proposed subject was available during the original deposition, Plaintiff already questioned Dr. Dameff about it at length, no one impeded the examination, and the proposed follow-up extends beyond the opinions Dr. Dameff disclosed.

Rule 30(d)(1) presumptively limits a deposition to one day of seven hours. Fed. R. Civ. P. 30(d)(1). A court may allow additional time only when it is needed to fairly examine the deponent or when the deponent, another person, or another circumstance impeded or delayed the examination, subject to Rule 26(b)(1) and (2). *Id.* The party seeking more time bears the burden of establishing good cause. *Mother & Father v. Cassidy*, 338 F.3d 704, 711 (7th Cir. 2003).

The seven-hour limit imposed by Rule 30(d)(1) encourages efficiency in depositions. While parties may wish to cover a wide breadth of topics in a given deposition, they are necessarily required to prioritize their questions in order to remain within the time limits set by the Federal Rules. *See* Fed. R. Civ. P. 30(d)(1). A request for additional time therefore must identify the unfinished examination, explain why it could not reasonably have been completed within the allotted time, and specify the additional time required. A generalized wish to develop further areas of inquiry is insufficient. *Apollo v. Stasinopoulos*, 2021 WL 1414090, at *2. Therefore, one of the

factors this Court should consider is whether the desired information could have been gathered during the first seven hours of the deposition. *Id.*

Plaintiff cannot make that showing. Counsel questioned Dr. Dameff about the nursing staff across approximately forty transcript pages, and Dr. Dameff answered the questions he was able to answer. (*See* Pl. Ex. A, at 167:13-207:20). preserved objections to that line of inquiry, they expressly permitted Dr. Dameff to respond if he knew the answer. (*Id.* at 163:17–24). Nor did any objection or conduct terminate the deposition prematurely. Even after the parties noted that the seven-hour limit was approaching, Plaintiff continued questioning and Plaintiff's counsel himself concluded the examination. (*Id.* at 203:19–207:21). The record thus shows neither obstruction nor external circumstance that prevented a fair examination.

Plaintiff also fails to identify how much additional time is needed or what material questions remain unanswered. *See Apollo*, 2021 WL 1414090, at *4. That omission is especially consequential because Plaintiff's Counsel controlled the allocation of the original seven hours. A substantial portion of the deposition was devoted to playing and narrating surveillance footage rather than posing substantive questions. (*See* Pl. Ex. A, at 71–127). Counsel could have used that time to pursue the nursing topics now invoked as grounds for reopening the deposition. Rule 30 does not require a second session merely because a party, in hindsight, would allocate its time differently. *See*, *e.g.*, *McNeil v. New York State Off. of Alcoholism & Substance Abuse Servs.*, 2019 WL 2647572, at *2 (E.D.N.Y. 2019) ("... numerous pages of the transcript reflected that much time was wasted on questions that might better have been spent on the topics defendants now argue were not sufficiently addressed.").

Additionally, Plaintiff's proposed line of questioning is outside the scope of Dr. Dameff's expert report and not relevant to his disclosed opinions. Dr. Dameff's report focuses on the

correctional officers and was limited to their observations of the custody-level triggers. (Pl. Ex. B). Although Plaintiff may call Dr. Dameff to testify, even Plaintiff's own authorities suggest that his testimony must still be confined to the disclosed opinions. *S.E.C. v. Koenig*, 557 F.3d 736, 744 (7th Cir. 2009) (noting that the opposing party could call an expert if his disclosed conclusions were helpful). Yet, that would be the exclusive focus of Plaintiff's additional questioning. Plaintiff identifies no authority requiring an opposing expert to study new materials, formulate new opinions, or expand the scope of his engagement so that Plaintiff's counsel may explore a different theory after the deposition has ended. Reopening the deposition for that purpose would not complete a fair examination; it would create a new one.

In short, Plaintiff had a full seven-hour opportunity, used part of it to question Dr. Dameff about the nursing staff, encountered no impediment that cut the examination short, and now seeks unspecified additional time to pursue matters beyond his disclosed opinions. Because those facts do not establish that more time is needed for a fair examination, Plaintiff cannot demonstrate good cause under Rule 30(d)(1), and the request should be denied.

**CONCLUSION**

WHEREFORE for the above and foregoing reasons, SANGAMON COUNTY, PAULA CROUCH, WILLIAM SMITH, CHRISTINA WHEELER, COREY HILLEN, JARRED KIRBY, BRITNEY HICKS, CHRIS UNTHANK, COLLEEN KEROUAC, TRACY BERGAE, BRAD MEYER, DAVE FISHER, TOM ANSELL, TAMMY POWELL, and EARL GRIGSBY respectfully request this Honorable Court: deny Plaintiff's Motion to Bar Expert Witness, deny Plaintiff's request for additional time to complete the deposition, and for any relief this Court deems just and equitable.

**CERTIFICATE OF COMPLIANCE**

Pursuant to Local Rule 7.1(B)(4)(b), the undersigned certifies that this memorandum complies with the type volume limitation. Excluding the caption and the certificates, this memorandum contains approximately 4,857 words, which is fewer than the 7,000 words permitted.

Respectfully submitted by,

BROWN, HAY & STEPHENS, LLP

/s/Dylan P. Grady
Dylan P. Grady, #6309120
Natalia Galica, #6335903
205 S. Fifth Street, Suite 1000
Springfield, Illinois 62701
Telephone: (217) 544-8491
Facsimile: (217) 544-9609
dgrady@bhslaw.com
ngalica@bhslaw.com
Attorneys for County Defendants

**CERTIFICATE OF SERVICE**

I hereby certify that on August 25, 2026 I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Thomas R. Applewhite
909 Olive Street, Suite 1110
St. Louis, MO 63101
Tom.applewhite@da-lawfirm.com

Peter Jennetten
James D. VanRheeden
Quinn Johnston
227 N E Jefferson Avenue
Peoria, IL 60602-1211
pjennetten@quinnjohnston.com
jvanrheeden@quinnjohnston.com

Robert Hogue
Senior Assistant Corporation Counsel
City of Springfield
Room 313 Municipal Center East
800 East Monroe Street
Springfield, IL 62701-1689
Robert.Hogue@springfield.il.us

Under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned certifies that the statements set forth in this instrument are true and correct, except as to matters therein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that he verily believes the same to be true.

s/ Dylan P. Grady